# EXHIBIT C

1  RICHARD E. MCCARTHY [SBN 106050]
   rmccarthy@swsslaw.com
2  CURTIS G. CARLL [SBN 248470]
   ccarll@swsslaw.com
3  SOLOMON WARD SEIDENWURM & SMITH, LLP
   401 B Street, Suite 1200
4  San Diego, California 92101
   Telephone: (619) 231-0303
5  Facsimile: (619) 231-4755

6  Attorneys for Plaintiff DPR CONSTRUCTION

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**07/10/2014** at 02:21:27 PM

Clerk of the Superior Court
By Lee McAlister,Deputy Clerk

7

8                    **SUPERIOR COURT OF CALIFORNIA**

9                         **COUNTY OF SAN DIEGO**

10

11  DPR CONSTRUCTION, a general partnership,          CASE NO.   37-2014-00022796-CU-BC-CTL

12                    Plaintiff,                       **COMPLAINT FOR:**

13  v.
                                                       1.  **BREACH OF CONTRACT;**
14                                                     2.  ***QUANTUM MERUIT*; AND**
    SHIRE REGENERATIVE MEDICINE, INC.,                3.  **DECLARATORY RELIEF**
15  a Delaware corporation, and DOES 1 through
    10,                                                **Jury Trial Demanded**
16

17                    Defendant.

18

19       Plaintiff DPR Construction ("DPR") alleges against Defendants Shire Regenerative

20  Medicine, Inc. ("Shire") and Does 1 through 10:

21                          **SUMMARY OF ACTION**

22       1.       DPR is a general contractor with offices in San Diego, California.  Shire is a wholly

23  owned subsidiary of Shire Plc, pharmaceutical company based in Dublin, Ireland.  In June 2012,

24  Shire hired DPR to build a campus in an industrial park near the Miramar air station.  DPR

25  mobilized and began construction on-site in October 2012 with a target completion date of

26  December 2014.  DPR was engaged on-site for approximately 24 months—and was approximately

27  one-third complete with construction having performed $42 million of work—when Shire

28  terminated the project for its own convenience.  DPR and its subcontractors had committed over

---

P:00877224-6:09140.159                        COMPLAINT

1   350 people to the project, virtually all of whom were immediately out of work.  DPR asked Shire

2   to pay DPR its reasonable anticipated overhead and profit it would have received if Shire had not

3   terminated the project 15-months early—the payment due to DPR under the parties' contract.

4   Shire refused.  DPR sues to enforce its rights under its contract with Shire.

5                                                    **PARTIES**

6          2.      DPR is a general contractor.  DPR is, and at all relevant times was, a general

7   partnership, with offices in San Diego, California.  DPR is, and was, a duly licensed contractor

8   under the laws of the State of California doing business under California State License No.

9   599846.

10         3.      Shire is a wholly owned subsidiary of Shire Plc, a global biopharmaceutical

11   company headquartered in Ireland.  DPR alleges on information and belief that Shire is, and was, a

12   Delaware corporation doing business in the County of San Diego, California.  DPR further alleges

13   on information and belief that Shire's principal place of business during construction was in San

14   Diego, California.

15         4.      DPR is presently unaware of the true names or capacities of the defendants sued as

16   Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names.  DPR

17   will seek leave to amend this Complaint to allege the true names and capacities of Does 1 through

18   10 when it learns them.

19         5.      DPR alleges on information and belief that Does 1 through 10 are in some way

20   responsible for the events and damages, along with the other defendants, alleged in this

21   Complaint.  Unless specifically indicated otherwise, each reference to any named defendant or to

22   "Defendants" or "defendants" includes by reference all Doe defendants.

23         6.      DPR alleges on information and belief that at all relevant times each defendant,

24   including Does 1 through 10, was the agent, employee, partner, member, officer, parent,

25   subsidiary, fiduciary or co-conspirator of the remaining defendants, and in acting or failing to act

26   as alleged, each defendant acted within the course and scope of its agency, employment,

27   partnership, membership or conspiracy, and with the knowledge and consent and under the

28   direction and control of one or more of the remaining defendants.

P:00877224-6:09140.159                              -2-
                                                  COMPLAINT

**JURISDICTION AND VENUE**

7.    Jurisdiction is proper in California because Shire does business in California and the actions giving rise to this dispute took place here.  Via contract, Shire consented to jurisdiction in California.

8.    Venue is proper in the County of San Diego because the actions giving rise to this dispute took place in California.  Via contract, Shire consented to venue in San Diego County.

**FACTS**

9.    In December 2012, DPR and Shire entered a written agreement (the "Agreement") for DPR to construct Shire's new multi-building campus improvements (the "Project") in San Diego.

10.    The Agreement included:

    a.    the Standard Form of Agreement Between Owner and Contractor for Integrated Project Delivery [AIA Document A195 – 2008] ("Standard Form"); and

    b.    General Conditions of the Contract for Integrated Project Delivery [AIA Document A295 – 2008] ("General Conditions").

11.    A copy of the Agreement is attached to this Complaint as **Exhibit 1** ("Standard Form") and **Exhibit 2** ("General Conditions"), and is incorporated by reference.

12.    Under the terms of the Agreement, DPR agreed to the provide labor, equipment, and materials for the Project, and Shire agreed to pay for that labor, equipment, and materials.

13.    DPR and Shire agreed—both through the Agreement and their conduct—that if Shire terminated the Project after DPR spent significant time and resources in construction, DPR would receive reasonable overhead and profits on Project work that would have been performed if not for Shire's early termination, in addition to costs and fees through the date of termination, and all expenses associated with termination.  DPR would not have otherwise entered the Agreement.

14.    DPR began pre-construction on the Project in June 2012, and construction operations began in October 2012.  The projected completion date was December 2014.

15.    Based on discussions and correspondence between DPR and Shire, the guaranteed maximum price was established at $131 million.

16.     In October 2013, Shire terminated the Agreement and ordered DPR to cease all work on the Project.

17.     When Shire terminated the Agreement, DPR had spent about 16 months on the Project, performed about $42 million of work, and committed over 350 individuals to work on the Project.

18.     In terminating the Agreement, Shire invoked section 7.1.5 of the Standard Form, which governs terminations for convenience prior to the establishment of a guaranteed maximum price.  Section 7.1.5 of the Standard Form references section 12.13.1 of the General Conditions.

19.     Based on Shire's invocation of Section 7.1.5 of the Standard Form and section 12.13.1 of the General Conditions for its termination, Shire refused to pay DPR the reasonable overhead and profit that DPR would have earned had the Projected been completed.

20.     Following termination, DPR cited to Section 7.2.4.3 of the Standard Form, which governs terminations of the Project by the owner for convenience after the establishment of a guaranteed maximum price.  Section 7.2.4.3 of the Standard Form entitles DPR to "receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed."

21.     DPR fulfilled its obligations under the Agreement through the date Shire terminated the Project.

22.     DPR demanded payment from Shire for approximately $3,700,000.00 due under the terms of the Agreement.

23.     Shire refused to pay DPR its demanded sum.

## FIRST CAUSE OF ACTION

### (Breach of Contract—Against All Defendants)

24.     DPR incorporates by reference paragraphs 1 through 23 above.

25.     DPR and Shire entered into a contract reflected in Exhibits 1 and 2 referred to as the Agreement.

26.     DPR performed all its duties, obligations, and responsibilities under the Agreement, except for those which have been excused due to Shire's material breaches and/or conduct by third

1  parties that prevented DPR's performance.

2      27.    Shire materially breached the Agreement by failing to pay DPR after terminating

3  the Agreement for convenience after the establishment of a guaranteed maximum price.

4      28.    As a direct and proximate result of Shire's material breaches of the Agreement,

5  DPR has been damaged in at least $3,700,000.00, plus interest and costs, according to proof.

6                          **SECOND CAUSE OF ACTION**

7                   (*Quantum Meruit*—Against All Defendants)

8      29.    DPR incorporates by reference paragraphs 1 through 28 above.

9      30.    DPR performed contractor services and provided materials to the Project at Shire's

10  request.  Shire knew DPR was providing these services and materials and promised to pay their

11  reasonable value, including compensating DPR for lost overhead and reasonable profits, if Shire

12  terminated the Project early.

13      31.    Shire accepted, used, and enjoyed the services and materials provided by DPR.

14  Shire implicitly agreed to pay for the reasonable value of services and materials provided by DPR.

15      32.    DPR demanded payment from Shire for the reasonable value of the contracting

16  services and materials it provided.  Shire has refused, and continues to refuse, DPR's demand for

17  payment.

18      33.    The fair and reasonable value of DPR's unpaid contracting services and materials is

19  at least $3,700,000.00, plus interest and costs, according to proof.

20                          **THIRD CAUSE OF ACTION**

21              (Declaratory Relief under C.C.P. section 1060—Against Shire)

22      34.    DPR incorporates by reference paragraphs 1 through 34 above.

23      35.    DPR and Shire are parties to an enforceable contract, the Agreement (Exhibits 1–

24  2).

25      36.    An actual controversy regarding the legal rights and duties of DPR and Shire has

26  arisen regarding payment owed to DPR based on Shire's early termination for convenience of the

27  Agreement.

28      37.    DPR seeks a declaration by the Court of the parties' rights and duties under the

1    Agreement.

2                                    **PRAYER FOR RELIEF**

3            WHEREFORE, DPR prays for judgment against defendants :

4    **On the First and Second Causes of Action:**

5            For compensatory damages in at least $3,700,000.00 to be proven at trial.

6    **On the Third Cause of Action:**

7            A declaration from this Court that under the terms of the Agreement, Shire owes DPR

8    (a) payment for the work performed by DPR; (b) all costs incurred because of Shire's early

9    termination for convenience of the Project, and (c) reasonable overhead and profit on the work not

10   executed but contemplated under the Agreement.

11   **On All Causes of Action:**

12           1.      For costs of suit;

13           2.      For pre-judgment interest at the maximum allowable legal rate; and

14           3.      For such other and further relief as the Court deems just and proper.

15                                    **JURY TRIAL DEMANDED**

16           Plaintiff DPR Construction demands a trial by jury on all appropriate causes of action,

17   issues and questions of fact.

18

19   DATED: July 10, 2014               SOLOMON WARD SEIDENWURM & SMITH, LLP

20

21                                      By: _____
                                             RICHARD E. MCCARTHY
22                                           CURTIS G. CARLL
                                             Attorneys for Plaintiff
23                                           DPR CONSTRUCTION

24

25

26

27

28

1

**INDEX TO EXHIBITS**

2

| Ex. | Description | Page(s) |
|---|---|---|
| 1. | Standard Form of Agreement Between Owner and Contractor for Integrated Project Delivery [AIA Document A195 – 2008] | 1-20 |
| 2. | General Conditions of the Contract for Integrated Project Delivery [AIA Document A295 – 2008] | 21-100 |

EXECUTED

 **AIA**® Document A195™ – 2008

## Standard Form of Agreement Between Owner and Contractor for Integrated Project Delivery

AGREEMENT made as of the first day of October in the year 2012.

BETWEEN the Owner:

Shire Regenerative Medicine, Inc.
11095 Torreyana Road
San Diego, CA 92121
Attn: Marcus Webb

and the Contractor:

DPR Construction, A General Partnership
5010 Shoreham Place
San Diego, CA 92122
Attn: Frank Jones
CA License No. 953749

for the following Project:

Shire Regenerative Campus – Phase 1
at the following Project Site:
Lot 5 and Lot 9 of Fenton Technology Park
Summers Ridge Rd.
San Diego, CA 92121

Detailed Project Description:

The first phase of construction of Owner's new multi-building campus improvements to the Project Site may include up to 339,000 gross square feet of building improvements, comprised of (a) an approximately 98,000 gross square feet four-story office building on Lot 5 of the Project Site and (b) a three-story industrial buildings on Lot 9 of the Project Site, comprising approximately 241,000 gross square feet of manufacturing, warehouse, distribution, lab and central utility space (and approximately 39,000 gross square feet of space maintained in shell condition). The Project also entails 28 acres of site improvements, including a tunnel under the existing city street (Summers Ridge Road) between Lot 9 and Lot 5 of the Project Site.

The Architect:

Ferguson Pape Baldwin Architects
4499 Ruffin Rd., Suite 300
San Diego, CA 92123

The Engineer:

Clark, Richardson and Biskup Consulting Engineers, Inc.
2701 Loker Ave. West, Suite 130
Carlsbad, CA 92010

ADDITIONS AND DELETIONS:
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document is not intended for use in competitive bidding.

AIA Document A295™–2008, General Conditions of the Agreement for Integrated Project Delivery, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

Init.

/

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                    (1246122867)

1

Exhibit 1
Page 1

The Ground Lessor:

BMR-Summers Ridge LP,
17190 Bernardo Center Drive
San Diego, CA 92128

The Owner and Contractor agree as follows

TABLE OF ARTICLES

1    THE WORK OF THIS CONTRACT

2    OWNER'S RESPONSIBILITIES

3    COPYRIGHTS AND LICENSES

4    COMPENSATION

5    PAYMENTS

6    DISPUTE RESOLUTION

7    TERMINATION OR SUSPENSION

8    MISCELLANEOUS PROVISIONS

9    SPECIAL TERMS AND CONDITIONS

10   SCOPE OF THE AGREEMENT

## ARTICLE 1   THE WORK OF THIS CONTRACT

§ 1.1 The Contractor shall fully execute the Work described in the GMP Documents, except as specifically indicated in the GMP Documents to be the responsibility of others. The GMP Documents are defined in Article 1 of AIA Document A295™–2008, General Conditions Document of the Contract for Integrated Project Delivery, which is incorporated herein by reference (the "**Project General Conditions**"). The "Work" of this Contract consists of the Pre-GMP Services and the Work of Construction (as such terms are hereinafter defined).

Contractor acknowledges that it is currently performing the Pre-GMP Services (as defined in Section 4.1.1. below). Contractor's Work of Construction under this Agreement is based on its involvement in the Integrated Project Delivery design process, consistent with the development of the Preliminary Design Program as defined in Section 1.3.1 of the Project General Conditions (the "**Pre-GMP Services**"), which shall be performed in accordance with the applicable provisions of the General Conditions. The "**Work of Construction**" of this Agreement consists of all construction work required for the Pre-Validation Delivery (as hereinafter defined) of the Project described in the program for design and development set forth in the Basis of Design Rev. , prepared by Architect and Engineer, dated June 20, 2012 (the "**Campus Program**"), subject to such changes and additions as the Owner may request prior to or following the establishment of the Guaranteed Maximum Price (subject to the terms and conditions of Section 1.3 below, and as incorporated into the Drawings and/or Specifications by Architect, as approved by Owner, in accordance with the General Conditions). "**Pre-Validation Delivery**" shall mean delivery of the Project in good operating condition, with all testing and inspections completed to confirm that the Project has been completed and operational in accordance with the applicable requirements of the Reference Specifications.

The scope of the Work to be performed by Contractor shall include all work incidental and customary to the Pre-GMP Services and the Work of Construction, including by way of example but not by way of limitation, physical connection, staging, scaffolding, block-outs and temporary and permanent supports. The scope of Work shall also include coordination and scheduling of all utility services; coordination of offsite services and work, as necessary;

Init.

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                          (1246122867)

2

Exhibit 1
Page 2

facilitation of Architect's procurement of the primary building permit; and application for and procurement of all Subcontractor permits which may be required in addition to the primary building permit. The Contractor shall provide to the Owner, as part of the Contract Sum for the Work of Construction, three (3) copies of a complete project closeout manual which shall describe all critical components of the Work of Construction, as well as manufacturers' guidelines and specifications for all systems and equipment installed as part of the Work of Construction, air balancing reports, equipment and appliance warranties, and operations and maintenance manuals.

§ **1.2** The Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of the Project General Conditions.

§ **1.2.1 INDEMNIFICATION** To the fullest extent permitted by law (including, without limitation, the applicable provisions of Section 2782 of the California Civil Code) the Contractor shall indemnify and hold harmless the Owner, Ground Lessor, Architect, Engineer, and their respective consultants, agents, employees and contractors, from and against all claims, demands, cause of action, damages, losses, injuries, liabilities and expenses, including but not limited to attorneys' fees, arising out of or resulting from (a) injury to persons and property, or death of any person, at the Project Site by the Contractor for incorporation into the Project during Contractor's performance of the Work, to the extent attributable to the negligence or willful acts of the Contractor or anyone for whom the Contractor is legally responsible (except for the Work itself to the extent covered by any builder's risk property insurance maintained by the Owner, or an OCIP maintained by Owner or a CCIP maintained by Contractor in lieu thereof, but without limiting the Contractor's liability for any commercially-reasonable deductible amount associated with such insurance coverage[+], not to exceed $25,000 per occurrence), (b) the breach of any warranty of Contractor under the GMP Documents, express or implied, (c) the failure of Contractor to comply with any law, ordinance, rule, regulation or order applicable to the performance of the Work or Contractor's control over the Project Site during the Construction Phase, including without limitation laws relating to use, storage or disposal of Hazardous Materials that are brought onto the site or used by Contractor, (d) Contractor's breach of this Agreement or any of Contractor's obligations under the GMP Documents, or (e) which are otherwise attributable to acts or omissions of the Contractor, its Subcontractors, Sub-subcontractors, suppliers or anyone directly or indirectly employed by any of them or anyone for whose acts they may be liable, but only if caused by the negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder (provided that the foregoing exception shall not affect the Contractor's indemnity obligations with respect to any other person or entity indemnified by the Contractor pursuant to this Section 1.2.1). Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in this Section 1.2. The obligations of the Contractor under this Paragraph shall not extend to the liability of the Architect, the Architect's consultants, Engineer and Engineer's consultants and agents and employees of any of them arising out of (1) the preparation or approval of maps, drawings, electronic documents, omissions, reports, surveys, change orders, construction change directives, designs or specifications, or (2) the giving of or failure to give directions or instructions by the Architect, the Architect's consultants, Engineer and Engineer's consultants and agents and employees of any of them , to the extent such giving or failure to give is the cause of any injury or damage. Contractor's indemnification shall extend to such claims, demands, causes of action or liabilities asserted after completion of the Work, as well as during the Contractor's performance of the Work, and shall not be limited by any contracts with any labor organization, including, without limitation, any limitations on the amount or type of damages, compensation or benefits payable by or for Contractor or any Subcontractor.

§ **1.2.2** In claims against any person or entity indemnified under this Section 1.2 by an employee of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 1.2.1 and 1.2.2 shall not be limited by a limitation on amount or type of damages, compensation or benefits payable under workers' compensation acts, disability benefit acts or other employee benefit acts.

§ **1.3 ADDITIONAL SERVICES PRIOR TO THE ESTABLISHMENT OF THE GUARANTEED MAXIMUM PRICE**
§ **1.3.1** Prior to the establishment of the Guaranteed Maximum Price, the Contractor may provide Additional Services (in addition to the Pre-GMP Services) after execution of this Agreement without invalidating this Agreement, subject to Contractor's and Owner's compliance with the terms and conditions of Section 9.21 of the Project General

**Init.**

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                          (1246122867)

3

Exhibit 1
Page 3

Conditions. Except for services required due to the fault of the Contractor, any Services provided in accordance with this Section 1.3 shall entitle the Contractor to compensation pursuant to Section 4.1.2.

§ **1.3.2** Upon recognizing the need to perform the following Additional Services not included in the Pre-GMP Services, the Contractor shall notify the Owner with reasonable promptness and explain the facts and circumstances giving rise to the need. The Contractor shall not proceed to provide the following **"Additional Services"** of this Agreement until the Contractor receives the Owner's written authorization:

    .1    A material change in the scope of the Project from the scope of the Project as described in the Preliminary Design Program, including, but not limited to, a material change in the size, quality, complexity, the Owner's schedule or Budget for the Work;

    .2    Services necessitated by the Owner's request for extensive environmentally responsible design alternatives, such as unique system designs, in-depth material research, energy modeling, or sustainability certification programs;

    .3    Changing or editing previously prepared Instruments of Service necessitated by the enactment or revision of codes, laws or regulations or official interpretations;

    .4    Services necessitated by decisions of the Owner not rendered in a timely manner in accordance with the Milestones of the Preliminary Design Program or any other time limits set forth in the GMP Documents, or any other failure of performance on the part of the Owner if not timely cured in accordance with the applicable GMP Documents; or

*(Paragraph deleted)*

    .5    Preparation for, and attendance at a dispute resolution proceeding or legal proceeding, except where the Contractor is party thereto.

§ **1.4 OWNER'S LIQUIDATED DAMAGES FOR CONTRACTOR'S FAILURE TO TIMELY COMPLETE CONSTRUCTION**
§ **1.4.1** Contractor acknowledges and agrees that (a) it is of vital importance to Client that Contractor achieve Substantial Completion of the Project by the scheduled date of Substantial Completion in the Project Schedule (as incorporated into this Agreement concurrent with the GMP Amendment as defined in Section 4.2.1), as the same may be modified from time to time by any Change Orders and other Modifications, and subject to any suspension of the Work by the Owner in accordance with Article 7 of the Owner-Contractor Agreement and any Contractor Delay Requests approved by the Owner in accordance with Section 9.22.3.1, and (b) the Guaranteed Maximum Price shall reflect the requirement for timely satisfaction of the Substantial Completion conditions by the Contractor.

§ **1.4.2** Therefore, in the event that the Contractor fails to achieve Substantial Completion of the Project within 30 days following the scheduled date of Substantial Completion as set forth in the Project Schedule, as such scheduled date may be modified from time to time by any Change Orders and other Modifications, any suspension of the Work by the Owner in accordance with Article 7 of the Owner-Contractor Agreement, or any Contractor Delay Requests approved by the Owner in accordance with Section 9.22.3.1 (with the date 30 days after the scheduled date of Substantial Completion hereinafter referred to as the **"Outside Completion Date"**), there shall be deducted from the remainder of the Contract Sum payable to the Contractor (with any amount in excess thereof (due and payable by the Contractor to the Owner within 30 days following the delayed date of Substantial Completion), a sum calculated at the rates below per day (for the number of days occurring between the Outside Completion Date and the date thereafter on which the conditions of Substantial Completion of the Work of Construction are satisfied), (such sum hereinafter the **"Daily LD Amount"**).  Contractor and Owner agree that Owner's actual damages would be difficult to fully quantify and that such Daily LD Amount as liquidated damages for Contractor's failure to timely perform its obligations under the GMP Documents is a fair and reasonable estimate of the Owner's damages for such delay beyond the Outside Completion Date.

First seven (7) calendar days:                          $5,000 / calendar day
Subsequent seven (7) calendar days:           $10,000 / calendar day
Subsequent seven (7) calendar days:           $15,000 / calendar day
Subsequent seven (7) calendar days:           $20,000 / calendar day
Subsequent seven (7) calendar days:           $25,000 / calendar day
Subsequent seven (7) calendar days:           $30,000 / calendar day
Subsequent seven (7) calendar days:           $35,000 / calendar day
All further delays through to Substantial completion:    $40,000 / calendar day

Init.

*I*

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                  (1246122867)

4

Exhibit 1
Page 4

**§ 1.4.3** The Daily LD Amount and the foregoing liquidated damages provisions are not intended as the Owner's exclusive remedy for unauthorized delays for which the Contractor is liable under the Contract Documents, and notwithstanding the foregoing, the Owner shall have all rights and remedies otherwise available under the Contract Documents for such delays, including, without limitation, the Owner's right to terminate the Contract with Contractor for any of the reasons set forth in Section 12.13.2 of the Project General Conditions, the Owner's right to pursue Claims for the specific performance of the Contractor's obligations under the Contract Documents, or to require the Contractor to incur overtime and other Extraordinary Measures in accordance with (and as such term is defined in) the Owner-Contractor Agreement (provided that the cost of Extraordinary Measures shall be limited to the Daily LD Amount accruing for the Contractor's reasonably estimated period of delay of Substantial Completion beyond the Outside Completion Date as reflected in the Contractor's progress report provided to the Owner from time to time in accordance with Section 9.3.2 of the Project General Conditions).

**§ 1.4.4** In no event shall Contractor's aggregate Daily LD Amount pursuant to this Section1.4 (and the costs and expenses incurred by the Contractor for any of the Extraordinary Measures that may be required by the Owner pursuant to Section 4.2.4 exceed, in the aggregate, the aggregate amount of the Contractor's Fee (including both any fixed and incentive portions of said Fee), as such amounts are included in the Contract Sum for the Work of Construction.

## ARTICLE 2   OWNER'S RESPONSIBILITIES
The Owner's responsibilities are as set forth in the accompanying A295–2008.

## ARTICLE 3   COPYRIGHTS AND LICENSES
**§ 3.1** The ownership of the Instruments of Service shall be established and maintained pursuant to this Agreement in accordance with Section 1.5 of the Project General Conditions. If the Owner and Contractor intend to transmit Instruments of Service or any other information or documentation in digital form, they shall endeavor to establish necessary protocols governing such transmissions.

**§ 3.2** All Instruments of Service prepared by the Contractor and the Contractor's Subcontractors pursuant to this Agreement as part of the Pre-GMP Services or as part of the Work of Construction included in the Services or Work compensated by Owner pursuant to the GMP Documents are produced for the benefit of Company as a "work made for hire" by the Contractor and the Contractor's Subcontractors, ownership of which is held by the Company free and clear of any Intellectual Property Rights (as hereinafter defined) of the Contractor or any other design professional engaged by Contactor in performing the Pre-GMP Services or pursuant to the Work of Construction. shall be deemed works made for hire by the authors and owners of their respective Instruments of Service, including the Drawings and Specifications, and the Owner shall be hereby granted and shall retain all common law, statutory and other reserved rights, including copyrights (the **"Intellectual Property Rights"**) in the Instruments of Services developed pursuant to the Services of this Agreement. Submission or distribution of Instruments of Service to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the reserved Intellectual Property Rights of the Owner.

Notwithstanding anything to the contrary in this section or elsewhere in the Contract Documents, but subject to the rights of the Owner and the Ground Lessor in any Proprietary Materials incorporated into the Work as set forth in Section 9.17 of the General Conditions, which shall supersede the rights of the Contractor and its Subcontractors under this Section 3.2, to the extent that the Contractor and its subcontractors possesses certain pre-existing inventions, processes, know-how, trade secrets, computer technical expertise, software programs and other intellectual property (collectively, **"Contractor Property"**), which has been developed by Contractor and or its subcontractor, either; (i) prior to the effective date of this Agreement; or (ii) after the effective date of this Agreement but not as a part of the Work of the Contract Documents , such Contractor Property is owned and controlled by Contractor and or its subcontractors. Contractor Property or any improvements thereto which are used, improved, modified or further developed solely by Contractor or its subcontractors during the performance of this Agreement, which are not the work product of the Contract Documents, shall be and shall remain the sole property of Contractor and its subcontractors. To the extent such Contractor Property is contained in any Instrument of Service, deliverable, work product or other materials or services developed and provided to the Owner pursuant to the Contract Documents, the terms and conditions of Section 9.17 of the General Conditions shall be applicable thereto as Proprietary Materials in which Owner and the Ground Lessor are granted a perpetual, royalty-free, fully paid, irrevocable nonexclusive license

Init.

/

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                              (1246122867)

Exhibit 1
Page 5

coupled with their respective interests in the Project and the Project Site as more full set forth in the General Conditions.

§ 3.3 Upon execution of this Agreement, the Owner grants to the Contractor a nonexclusive license to use the Owner's Instruments of Service solely and exclusively for the Project. The Owner hereby grants similar nonexclusive licenses to use the Owner's Instruments of Service to the Contractor's Subcontractors consistent with this Agreement. The license granted under this section permits the Owner to authorize the Architect and the Architect's consultants, as well as the Owner's consultants and separate contractors, to reproduce applicable portions of the Instruments of Service solely and exclusively for use in performing services for the Project. If the Owner rightfully terminates this Agreement for cause as provided in Section 7.1.4, the license granted in this Section 3.3 shall terminate.

*(Paragraph deleted)*
§ 3.4 In the event the Owner uses the Instruments of Service without retaining the author of the Instruments of Service, the Owner releases the applicable Architect, Engineer, Contractor and Subcontractor(s) and other consultants, as the authors of the Instruments of Service from all claims and causes of action arising from such uses. The Owner, to the extent permitted by law, further agrees to indemnify and hold harmless the authors of the Instrument of Service from all costs and expenses, including the cost of defense, related to claims and causes of action asserted by any third person or entity to the extent such costs and expenses arise from the Owner's use of the Instruments of Service in violation of the rights in the Instruments of Service granted to Owner pursuant to the Contract Documents.

§ 3.5 Except for the licenses granted in this Article 3, no other license or right shall be deemed granted or implied under this Agreement.

## ARTICLE 4    COMPENSATION AND PERFORMANCE OF SERVICES
### § 4.1 SERVICES PROVIDED PRIOR TO ESTABLISHMENT OF THE GUARANTEED MAXIMUM PRICE
§ 4.1.1 For the Contractor's performance of services set forth in the Project General Conditions prior to the establishment of the Guaranteed Maximum Price (Pre-GMP Services), the Owner shall pay the Contractor as
*(Paragraphs deleted)*
follows but not to exceed the Owner-approved maximum compensation of Contractor for such Services, without Owner's prior written approval, as the amount is set forth in Exhibit G – Preconstruction-GMP Estimate.

§ 4.1.2 For Additional Services that may arise prior to the establishment of the Guaranteed Maximum Price, including those under Section 1.3, the Owner shall compensate the Contractor as
*(Paragraphs deleted)*
follows but not to exceed the Owner-approved maximum compensation of Contractor for such Services, without Owner's prior written approval, as the amount is set forth in Exhibit G – Preconstruction-GMP Estimate .

§ 4.1.3 Compensation to Contractor for all Services included in Article 4 shall include a Contractor's Fee markup as provided for in Exhibit I attached.

§ 4.1.4 The hourly billing rates for services of the Contractor, if any, for the Pre-GMP Services and the allowances associated with the Work are set forth as provided for in Exhibit H attached . The rates shall be adjusted in accordance with the Contractor's
*(Paragraphs deleted)*
normal review practices, per Exhibit H.
*(Table deleted)*
### § 4.1.5 COMPENSATION FOR REIMBURSABLE EXPENSES
§ 4.1.5.1 Reimbursable Expenses of the Contractor and the Contractor's Sub-contractors for certain costs incurred by them as part of the Pre-GMP Services are in addition to compensation for the Contractor's Pre-GMP Services and include expenses incurred by the Contractor and the Contractor's Subcontractors directly related to the Project, as follows:

 .1 Subject to Owner's prior written approval in each instance, that portion of the reasonable expenses of the Contractor's personnel incurred while traveling in discharge of duties connected with the Work;
 .2 Fees paid for securing approval of authorities having jurisdiction over the Project;
 .3 Printing, reproductions, plots, standard form documents;
 .4 Postage, handling and delivery;

Init.

**AIA Document A195™ – 2008.** Copyright © 2008 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 07:20:26 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                  (1246122867)

6

Exhibit 1
Page 6

.5    Expense of overtime work requiring higher than regular rates, if and to the extent authorized in advance by the Owner;

*(Paragraph deleted)*

.6    All taxes levied on professional services (if any are requested by Owner to be provided by Contractor, and excluding general income taxes) and on reimbursable expenses; and

*(Paragraph deleted)*

.7    Site office expenses approved by Owner on the Site Offices Budget attached hereto as Exhibit G - Pre-GMP Estimate  to the extent not included in the costs of the Work of Construction.

**§ 4.1.5.2** For Reimbursable Expenses the compensation shall be the actual expenses incurred by the Contractor and the Contractor's Subcontractors with a Contractor's Fee markup as provided for in Exhibit I attached and Project Site office expenses incurred by the Contractor as Reimbursable Expenses. If Contractor is being reimbursed for any Reimbursable Expenses, Contractor shall keep detailed written records or accounts of such expenses, in a form satisfactory to Owner and submit those records and accounts to Owner promptly following the end of the month in which such expenses are incurred, as part of the Contactor's Application for Payment for such Reimbursable Expenses.

**§ 4.2 SERVICES PROVIDED AFTER ESTABLISHMENT OF THE GMP**

**§ 4.2.1** For the Contractor's performance of the Work after establishment of the Guaranteed Maximum Price, the Owner shall pay to the Contractor the Contract Sum in current funds in accordance with the payment procedures set forth in Section 9.23 of the General Conditions. The Contract Sum consists of the Contractor's Fee plus the Cost of the Work as that term is defined in the A195–2008 Guaranteed Maximum Price Amendment to the Standard Form Agreement Between the Owner and Contractor for Integrated Project Delivery (**"GMP Amendment"**), the form of which is attached as Exhibit A. The Contractor's Fee is provided for in Exhibit I attached.

**See Exhibit A – Guaranteed Maximum Price Amendment – To be executed upon agreement of GMP.**

*(Paragraphs deleted)*

**§ 4.2.2 COMPENSATION LIMITED TO GUARANTEED MAXIMUM PRICE**

Following the Owner and Contractor's acceptance of a Guaranteed Maximum Price pursuant to Section 8.10 of the Project General Conditions, the Owner and Contractor shall execute the GMP Amendment amending this Agreement and setting forth the agreed upon Guaranteed Maximum Price with the information and assumptions upon which it is based. Upon the execution of the GMP Amendment, the Contractor guarantees that the Contract Sum shall not to exceed the Guaranteed Maximum Price, as it is amended from time to time. To the extent the Cost of the Work exceeds the Guaranteed Maximum Price, the Contractor shall bear such costs in excess of the Guaranteed Maximum Price without reimbursement or additional compensation from the Owner. The Guaranteed Maximum Price shall be subject to the terms and conditions of Sections 4.2.3 and 4.2.4 below.

*(Paragraphs deleted)*

**§ 4.2.3 COMPENSATION SUBJECT TO TIMELY PERFORMANCE**

Contractor shall adhere to the Project Schedule established in accordance with Section 1.4.1as it may be adjusted from time to time as provided in the Project General Conditions:

.1    Contractor shall submit to Owner for acceptance, any proposed adjustments in the Project Schedule that will not result in changing the Owner-approved scheduled date of Substantial Completion of the Work (as established in the Project Schedule incorporated herein at the time of the GMP Amendment), provided that such adjustments to the Project Schedule will otherwise comply with any provisions of the Project General Conditions applicable thereto; and

.2    Any Contractor proposed adjustments in the Project Schedule that will change the scheduled date of Substantial Completion shall be submitted as a Delay Request in accordance with the requirements of 9.22.3 of the Project General Conditions or by a Change Order.

**§ 4.2.4 EXTRAORDINARY MEASURES**

If, in the opinion of the Owner, the Contractor has fallen behind the Project Schedule, the Contractor shall submit, within ten (10) business days of request from the Owner, its proposal demonstrating the manner in which the desired rate of progress may be increased and shall take such steps, at the Contractor's own cost in the case of unexcused

Init.

**/**

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:    (1246122867)

7

Exhibit 1
Page 7

delays, as may be necessary to meet the Project Schedule. It shall be the responsibility of the Contractor to maintain the Project Schedule so as not to delay the progress of the Work or the scheduled work of separate contractors. If the Owner determines at any time that the performance of the Work has not progressed or reached the level of completion required by the Contract Documents, the Owner shall have the right to order the Contractor to take corrective measures necessary to expedite the progress of construction, including, without limitation: (i) working additional shifts or overtime, (ii) supplying additional workers, equipment, and facilities, and (iii) other similar measures (hereinafter referred to as "**Extraordinary Measures**"). Such Extraordinary Measures shall continue until the progress of the Work complies with the stage of completion required by the Contract Documents, or is sufficient to ensure that Substantial Completion of the Project will be achieved in accordance with the Project Schedule. The Owner's right to require Extraordinary Measures is solely for the purpose of ensuring the Contractor's compliance with the construction schedule. The Contractor shall not be entitled to an adjustment in the Guaranteed Maximum Price in connection with Extraordinary Measures required by the Owner under or pursuant to this Section 4.2.4 unless the need for such Extraordinary Measures arises from Delay Requests permitted under Section 9.22.3 of the Project General Conditions. In no event shall there be an adjustment in the Guaranteed Maximum Price based upon any Extraordinary Measures implemented by the Contractor unless the Owner has authorized such Extraordinary Measures in writing. The Owner may exercise the rights furnished the Owner pursuant to this Section 4.2.4 as frequently as the Owner deems necessary to ensure that the Contractor's performance of the Work will comply with any milestone dates or completion dates set forth in the Contract Documents.

**§ 4.2.5 OWNER CONTINGENCY**
"Owner Contingency" shall be a budget line item carried by Owner, outside of the GMP (and such amount shall be excluded from the calculation of Contractor's Fee and Insurance) for the cost of the Work. This Owner Contingency shall be reserved for the exclusive use of the Owner to provide advanced budgeting of unknown and unplanned changes and discrepancies to the scope of Work of this Contract as described in Article 6 of this Agreement. This Owner Contingency is separate and distinct from any other contingency included in the GMP. Owner represents to Contractor that it has adequately provided for the Owner Contingency amount.

**§ 4.2.6 CONTRACTOR CONTINGENCY**
"Contractor Contingency" if any, shall be a contract budget line item carried as part of the GMP and specifically identified as-"Contractor Contingency," or simply "Contingency" in the GMP Amendment. The "Contractor Contingency" shall be reserved for use of the Contractor to provide for Contractor's omissions of specified Owner requirements, Contractor's errors in pricing or scheduling the Work, and other unknown and/or unplanned or unforeseen activities which are the Contractor's responsibility under this Contract. Funds in the Contractor's Contingency allowance shall be allocated to other budget line items at the time the need for such funds becomes known; and Contractor shall report the use or expenditure of such funds to the Owner periodically. The Contractor Contingency is not to be allocated or used for Changes in the Work described in Section 9.21 of the Project General Conditions. Contractor Contingency shall be used prior to any other available balances. Any unused Contractor Contingency (along with Contractor's Fee and Insurance calculated thereon) shall be returned to the Owner upon Owner's delivery of the Final Payment (or offset against the Final Payment, if the Owner shall so elect). Contractor shall not seek any increase in the GMP, (a) on account of any labor dispute within Contractor's control involving Contractor or Subcontractors arising during the period when the Work is to be performed, (b) by reason of the sole breach, fault, neglect, bankruptcy or insolvency by Contractor or any Subcontractor, or (c) as a result of the existence of any job site condition which should obviously have been discovered or foreseen by Contractor or its Subcontractors through the exercise of reasonable diligence. In the event that there is unused Contractor Contingency, it shall be allocated between the Owner and the Contractor provided for in Exhibit I attached.

**§ 4.3 CLAIMS FOR CONSEQUENTIAL DAMAGES**

**§ 4.3.1** The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract to the extent the amount of such damages incurred by any party with respect to the Work exceeds the Contractor's Fee, except to the extent such damages are attributable to the gross negligence or willful misconduct of the other party (in which case this mutual waiver shall not be enforceable by the culpable party). This mutual waiver includes

    .1    damages incurred by the Owner for rental expenses, for losses of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and

**AIA Document A195™ – 2008.** Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:26 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
**User Notes:**    (1246122867)

    .2    damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work;

provided, however, that the foregoing mutual waiver shall not limit any Claims for consequential damages incurred by either party that are subject to (i) the coverage of the insurance policies required to be maintained by the other party pursuant to this Agreement, or (ii) indemnification by any third party pursuant to a separate agreement or subcontract associated with the applicable Project or Project Site. This mutual waiver is applicable, without limitation, to all consequential damages due to the termination of this Contract by either party in accordance with the termination rights afforded to either of them herein . Nothing contained in this Section 4.3.1 shall be deemed to preclude an award of Daily LD Amounts, when applicable, in accordance with the requirements of Section 1.4.

§ 4.3.2 Notwithstanding anything to the contrary herein contained, the Contractor acknowledges that the Owner is willing to agree to waive any consequential damages incurred by Owner as a result of Contractor's breach of this Agreement, as long as the Contractor complies with its obligations to implement Extraordinary Measures in accordance with Section 4.2.4, even if there is a dispute between the parties as to whether the Contractor will be compensated for the cost of Extraordinary Measures.  The Owner acknowledges that, in the event of such a dispute, the Contractor must receive funding for the cost of the Extraordinary Measures as such costs are incurred, even if it is ultimately determined that the Contractor was not entitled to be paid for such costs (i.e., so that the Contractor would be required to refund such costs to the Owner).  Therefore, the parties agree that if the Owner requests that the Contractor implement Extraordinary Measures pursuant to Section 4.2.4, and if there is a dispute between the Owner and the Contractor as to whether the Contractor is entitled to be paid for such Extraordinary Measures:

    1.    The Owner shall fund such costs, as part of the normal requisition process, as such costs are incurred, and the Owner may fund such costs under a reservation of rights; and

    2.    The Contractor agrees to accept the Owner's direction to implement any such Extraordinary Measures even if the Owner has reserved its rights to assert a future claim against the Contractor for such Extraordinary Measures. In such circumstances, if it is determined that the delay in the performance of the Work arose from the fault or negligence of the Contractor then the Contractor shall be liable to the Owner for the actual costs of the Extraordinary Measures after first utilizing any remaining Contingency funds available to pay for the Extraordinary Measures.  After such Contingency funds have been utilized, the Contractor shall pay for such Extraordinary Measures as liquated damages but in no event shall the aggregate amount of any liquated damages exceed the entirety of the Contractor's Fee, including both any fixed and incentive portions of said Fee.

## ARTICLE 5   PAYMENTS
### § 5.1 PAYMENTS FOR PRE-GMP SERVICES
§ 5.1.1 All payments for the Pre-GMP Services shall be made in accordance with Exhibit G – Preconstruction-GMP Estimate  within thirty (30) days following the Owner's receipt of a written invoice from the Contractor for those Pre-GMP Services performed pursuant to this Agreement from time to time during the Contractor's performance of the Pre-GMP Services.

§ 5.1.2 Amounts payable by the Owner for the Pre-GMP Services for any undisputed invoice amounts and unpaid for more than forty five (45) days after the date of the Owner's receipt of invoice  shall bear interest at the rate entered below, or in the absence thereof at the legal rate prevailing from time to time at the principal place of business of the Contractor.

For any payment made after 45 days from the payment due date, late payment interest may be added to the amount due.  Interest shall accrue and be calculated on a daily basis at 2% per annum above the then prevailing Federal Funds Rate (the US Federal Funds Target Rate as quoted on Bloomberg page FDTR<Index> on the due date of the payment), and shall be calculated from the date payment was due to the date payment is debited from Shire's bank account.

Owner shall notify Contractor of any disputed values within ten (10) days of Owner's receipt of invoice.  The parties will then work together to establish a mutually agreeable solution as provided for in Section 9.23.5 of the Project General Conditions.

The fact that the Contractor is charging interest in accordance with this provision shall not constitute waiver by

Init.

/

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:26 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                         (1246122867)

9

Exhibit 1
Page 9

Contractor of any other rights or remedies provided for herein by reason of Owner's default in making such payments, including specifically, but not limited to, Contractor's rights to terminate this Contract for nonpayment.

§ 5.1.3 Records of Reimbursable Expenses in support of the invoices for Pre-GMP Services for any such services performed on the basis of hourly rates shall be available to the Owner at mutually convenient times.

§ 5.2
PROGRESS PAYMENTS FOR CONSTRUCTION SERVICES AFTER GUARANTEED MAXIMUM PRICE ESTABLISHED
§ 5.2.1 Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided in Section 9.23 of the General Conditions.

§ 5.2.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month. The Contractor shall, during the last week of each month, meet with the Owner (and/or other parties designated in writing by the Owner) to review and approve an itemized draft Application for Payment. The approved draft will then be formalized into a final Application for Payment, and submitted to the Owner for payment.

§ 5.2.2.1 Some of Contractor's Sub-contractors may request special terms of payment which will be presented to the Owner for consideration and approval, which shall be subject to the Owner's sole and absolute discretion. When approved, a Change Order will be issued to indicate those Sub-contractors involved and the agreed upon terms.

§ 5.2.3 Application for Payment received by the Owner for amounts payable to Contractor or the Contractor's Sub-Contractors in accordance with Section 9.23 of the Project General Conditions shall be paid by the Owner in accordance with Section 9.23 of the Project General Conditions.

Payment Method: Application for Payment received by the Owner for amounts payable to Contractor shall be paid for by either check or wire transfer of funds to Contractor.

For wire transfers, all payments to Contractor hereunder shall be made in US dollars by wire transfer to such bank account as Contractor may from time to time designate by notice in writing to Shire by the following designated authorities of Contractor, whose specimen signatures are provided on Exhibit J hereto. Until otherwise designated by notice, any payments due to Contractor under this Article 5 shall be paid, if by wire transfer, to:

> Harris Bank
> 111 West Monroe Street
> Chicago, IL  60603
> Contact: Claudia Gamboa (312) 461-5499
>
> **For the account of:**
> DPR Construction, a GP-General Acct
> Account No. 239-451-8
> Routing No. 071000288
> Have the bank notify Carla Lewis (407) 838-2100 ext. 7524
> Job Name: SHORE – SHire's Operation for Regenerative Expansion
> DPR Job No. D1-A12025-00

§ 5.2.4 With each Application for Payment by the Contractor shall  include labor transaction reports, petty cash accounts, receipted invoices or invoices with check vouchers attached, and (a) duly completed and executed unconditional lien releases from all its Subcontractors listed in the Application for Payment associated with the immediately preceding progress payment that Contractor has been paid for, in accordance with California Civil Code Section 8134, for the Contractor, (b) duly completed and executed unconditional lien releases, in accordance with California Civil Code section 8134, for its Subcontractors of any tier and material suppliers who have received payment from Contractor approximately thirty days prior to the immediately preceding progress payment, and, (c) duly completed and executed conditional lien releases for the present Application for Payment in accordance with California Civil Code section 8132, for  its Subcontractors of any tier and material suppliers listed therein. Contractor agrees to act in good faith to accommodate a written request by Owner for additional documentation that Owner may require to satisfy Owner's obligations to Owner's Landlord concerning the disbursement of a tenant improvement allowance under Owner's lease. The Owner's Representative shall promptly review the Application for Payment and

Init.

/

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                 (1246122867)

Exhibit 1
Page 10

forward it to the Owner for payment.

§ 5.2.5 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the GMP Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Contractor's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Owner may require. This schedule, unless objected to by the Owner, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 5.2.6 Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Contractor on account of that portion of the Work for which the Contractor has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

§ 5.2.7 The amount of each progress payment to Contractor for the Work of Construction shall be computed as follows:

    .1    Take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 9.21.3.9 of the Project General Conditions;

    .2    Add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

    .3    Add the Contractor's Fee. The Contractor's Fee shall be computed upon the Cost of the Work at the rate stated in Section 4.2.1;

    .4    Subtract retainage of ten percent ( 10 %) on the amount completed and stored to date plus the Contractor's Fee associated therewith, except that (1) retainage shall not be withheld on Contractor's General Conditions costs, the discounted component of the Work performed by any Subcontractor at a discount, items of Work self-performed by Contractor, or where payment is made by Contractor on a net basis as reimbursement for third party expenses without mark-up by Contractor, such as engineering services, temporary services, purchase order items, refundable deposits, or where a lesser retention is required by law, (2) such retainage relating to any Component Subcontractor (as hereinafter defined) shall be released upon completion of its construction services for the Major Project Component(s) to which such Subcontractor's services are limited, and (3) if Contractor retains more than ten percent (10 %) from disbursements to be made to a Subcontractor, the payment by Owner shall be subject to a retainage in an equal amount;

    .5    Subtract the aggregate of previous payments made by the Owner;

    .6    Subtract the shortfall, if any, indicated by the Contractor in the documentation required by Section 5.2.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's auditors in such documentation; and

    .7    Subtract amounts, if any, for which the Owner has withheld or nullified a Certificate for Payment as provided in Section 9.23.5 of the Project General Conditions.

§ 5.2.8 The Owner and the Contractor shall agree upon a mutually acceptable procedure for review and approval of payments to Subcontractors. The retainage requirements for Subcontractors may be reduced where full retainage is no longer warranted as mutually agreed by Owner and Contractor; provided that in support of Contractor's "Close As You Go" policy with certain Component Subcontractors (as hereinafter defined), providing for full payment of Subcontractors whose involvement in the Work is limited to one or more Major Project Components (and not the entire Project) upon completion of that/those Major Project Component(s) to which their construction services is/are limited, the Owner shall release retainage to such Subcontractors (the 'Component Subcontractors") when their work has been completed in accordance with the Contract Documents and accepted by the Contractor and Owner.  The Contractor shall promptly pay each Subcontractor upon receipt of payment from Owner, out of the amount paid to the Contractor on account of such Subcontractor's work, the amount to which said Subcontractor is entitled, reflecting the percentage actually retained, if any, from payments to the Contractor on account of such Subcontractor's work.  The

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                                                        (1246122867)

Contractor shall, by an appropriate agreement with each Subcontractor, require each Subcontractor to make payments to their sub-Subcontractors in similar manner.  As a condition to Owner's obligation to make any future progress payment to Contractor, Contractor shall provide to Owner a statutory form of unconditional waiver and release of mechanic's lien claims upon progress payment from all Subcontractors in the amounts paid to them.  Contractor's failure to deliver such lien releases within thirty (30) days after a progress payment is made shall result in Owner's right to make such payments directly to Subcontractors and offset such payments against future amounts payable to Contractor under this Agreement.  With regard to partial lien waivers to be submitted by parties other than Contractor, Owner agrees not to withhold payment provided same are received within thirty (30) days after the date of Contractor's Application for Payment for such Work; and provided further that there is no lien or mechanic's notice of intention of record or lien claim against Owner or the premises which has not been fully bonded or otherwise removed from the record, and all other conditions precedent to payment have been met.  Except with the Owner's prior approval and except for final close as you go payments to the Component Subcontractors, all payments made by Contractor to Subcontractors shall be subject to the retainage amount of ten percent (10%).  In the event the Contractor retains more than ten percent (10%) from disbursements to be made to any Subcontractor, the applicable Application for Payment shall indicate such excess retention.  Contractor shall take all necessary actions to assure that Contactor can deliver to Owner a "lien free" project evidenced by final unconditional releases from all Subcontractors used on the Project based on receipt of the Owner's Progress and Final Payments.

§ 5.2.9 In taking action on the Contractor's Applications for Payment, the Owner shall be entitled to rely on the accuracy and completeness of the information furnished by the Contractor and shall not be deemed to represent that the Owner has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Section 5.2.4 or other supporting data; that the Owner has made exhaustive or continuous on-site inspections; or that the Owner has made examinations to ascertain how or for what purposes the Contractor has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's auditors acting in the sole interest of the Owner.

## § 5.3 FINAL PAYMENT
§ 5.3.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

 .1 the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 9.25.2.2 of the Project General Conditions, and to satisfy other requirements, if any, which extend beyond final payment;

 .2 the Contractor has submitted a final accounting for the Cost of the Work and a final Application for Payment; and

 .3 a final Certificate for Payment has been issued by the Owner;

 .4 a certification by the Contractor identifying all Subcontractors with whom the Contractor has entered into subcontracts, and the amount owed to each Subcontractor;

 .5 the Owner has received Conditional Lien Releases upon Final Payment in the form of California Civil Code section 8136 from all Subcontractors in amounts not to exceed the unpaid balance of the Contract Sum;

 .6 Contractor submits written documentation to Owner evidencing that any permits required for the Work are closed out and any governmental inspections have been satisfactorily completed; and

 .7 the final set of "as built" drawings and all other deliverables to be provided as part of the Project manual for completed Project pursuant to the Specifications have been delivered to Owner, including, without limitation, documentation of all equipment testing satisfying the requirements of the applicable manufacturer and/or vendor.

If Owner disputes the final completion of the Work, the parties shall meet in an effort to resolve such dispute.  In the event the parties fail or are unable to resolve such dispute within ten (10) days after the date that Owner notifies Contractor of such dispute, either party may submit such dispute to the dispute resolution methods set forth in the Project General Conditions.

§ 5.3.2 The Owner will review and report in writing on the Contractor's final accounting within 30 days after delivery of the final accounting to the Owner by the Contractor. Based upon such Cost of the Work as the Owner reports to be substantiated by the Contractor's final accounting, and provided the other conditions of Section 5.3.1 have been met, the Owner will, within seven days after receipt of the written report, either issue a final Certificate for Payment with a copy to the Contractor, or notify the Contractor the reasons for withholding a certificate as provided in Section

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                      (1246122867)

Init.

/

**12**

Exhibit 1
Page 12

9.23.5.1 of the Project General Conditions. The time periods stated in this Section 5.3.2 supersede those stated in Section 9.23.4.1 of the Project General Conditions.

**§ 5.3.3** If the Owner reports the Cost of the Work as substantiated by the Contractor's final accounting to be less than claimed by the Contractor, the Contractor shall be entitled to request mediation of the disputed amount without seeking an initial decision pursuant to Section 13.2 of the Project General Conditions. A request for mediation shall be made by the Contractor within 30 days after the Contractor's receipt of a copy of the Owner's final Certificate for Payment. Failure to request mediation within this 30-day period shall result in the substantiated amount reported by the Owner becoming binding on the Contractor. Pending a final resolution of the disputed amount by arbitration, the Owner shall pay the Contractor the amount certified in the Owner's final Certificate for Payment.

**§ 5.3.4** Subject to the dispute rights of Owner set forth in the General Conditions, and Contractor's prior satisfaction of all other conditions to Owner's making of the final payment as set forth in the Contract Documents, no later than thirty-five (35) days after satisfaction of such conditions for final payment by the Owner, any unpaid balance of the Contract Sum, including, without limitation, the entire retainage amount not previously funded to the Contractor or any of the Subcontractors, will be paid to the Contractor ("**Final Payment**"), and within -thirty 30) days following Contractor's receipt of such Final Payment, Contractor shall deliver to Owner:

    **1.**      all as-built plans and warranties; and

    **2.**      Contractor's unconditional release and unconditional releases from all Subcontractors.

**§ 5.3.5** If, subsequent to Final Payment and at the Owner's request, the Contractor incurs reimbursable costs to correct any defective or nonconforming Work that is not included in the Contractor's warranty obligations under the Contract Documents, the Owner shall reimburse the Contractor such costs and the Contractor's Fee applicable thereto on the same basis as if such costs had been incurred prior to Final Payment, but not in excess of the Guaranteed Maximum Price.

**ARTICLE 6   DISPUTE RESOLUTION**
**§ 6.1 PRIOR TO ESTABLISHMENT OF THE GUARANTEED MAXIMUM PRICE**
The Owner and Contractor shall resolve any claim or cause of action arising out of or relating to the Contractor's Pre-GMP Services pursuant to the mediation and arbitration provisions set forth in Sections 13.3 and 13.4 of the Project General Conditions.

**§ 6.2 AFTER ESTABLISHMENT OF THE GUARANTEED MAXIMUM PRICE**
**§ 6.2.1** Any Claim arising out of or relating to the Project after establishment of the Guaranteed Maximum Price shall be subject to the terms and conditions set forth in Article 13 of the Project General Conditions in its entirety. The Initial Decision Maker(s) for the purposes of such Claims shall be determined in accordance with Sections 1.3.12 and 13.2.1 of the Project General Conditions.

*(Paragraphs deleted)*
**ARTICLE 7   TERMINATION OR SUSPENSION**
**§ 7.1 TERMINATION OR SUSPENSION PRIOR TO ESTABLISHMENT OF THE GUARANTEED MAXIMUM PRICE**
**§ 7.1.1** If the Owner fails to make payments to the Contractor for Pre-GMP Services in accordance with this Agreement, and after fifteen additional days' written notice has been provided to the Owner, Contractor may stop the Work until payment of the amount owing has been received or such failure shall be considered substantial nonperformance and cause for termination or, at the Contractor's option, cause for suspension of performance of services under this Agreement. If the Contractor elects to suspend services, the Contractor shall give seven days' written notice to the Owner before suspending services. In the event of a suspension of services, the Contractor shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services. Before resuming services, the Contractor shall be paid all sums due prior to suspension and any expenses incurred in the interruption and resumption of the Contractor's services. The Contractor's compensation for the remaining Pre-GMP Phase services and the time schedules shall be equitably adjusted.

**§ 7.1.2** The Owner shall have the right to suspend the Project for any of the causes of termination set forth in Section 12.13.2 of the General Conditions, without liability to Contractor for such suspension. If the Owner suspends the Project for any other reason, the Contractor shall be compensated for Pre-GMP Services performed prior to notice of such suspension, and when the Project is resumed, the Contractor shall be compensated for expenses incurred in the

**Init.**

**/**

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:26 on 11/28/2012 under Order No.3410326020_1 which expires on 01/20/2013, and is not for resale.
User Notes: (1246122867)

**13**

Exhibit 1
Page 13

interruption and resumption of the Contractor's services. The Contractor's compensation for the remaining Pre-GMP Services and the time schedules shall be equitably adjusted.

§ 7.1.3 If the Owner suspends the Project for more than 90 cumulative days for reasons other than those faults of the Contractor set forth in Section 12.13.2 of the General Conditions, the Contractor may terminate this Agreement by giving not less than seven days' written notice.

§ 7.1.4 Either party may terminate this Agreement upon not less than seven days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

§ 7.1.5 The Owner may terminate this Agreement upon not less than seven days' written notice to the Contractor for the Owner's convenience and without cause in accordance with the terms and conditions of Section 12.13.1 of the Project General Conditions.

*(Paragraphs deleted)*
### § 7.2 TERMINATION OR SUSPENSION AFTER ESTABLISHMENT OF THE GUARANTEED MAXIMUM PRICE

### § 7.2.1 TERMINATION BY THE CONTRACTOR
§ 7.2.1.1 The Contractor may terminate the Contract if the Work is stopped for a period of 30 consecutive days through no act or fault of the Contractor or a Subcontractor, sub-Subcontractor or their agents or employees or any other persons or entities performing portions of the Work under direct or indirect contract with the Contractor, for any of the following reasons:

  .1   Issuance of an order of a court or other public authority having jurisdiction that requires all Work to be stopped;
  .2   An act of government, such as a declaration of national emergency that requires all Work to be stopped;
  .3   Because the Owner has not issued a Certificate for Payment pursuant to Section 9.23.4.1 of the Project General Conditions and has not notified the Contractor of the reason for withholding certification as provided in Section 9.23.5.1 of the Project General Conditions, or because Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents;
  .4   Because of certain Concealed or Unknown Conditions as provided in Section 9.7.4 of the General Conditions; or
  .5   The Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Section 2.2.2 of the Project General Conditions.

§ 7.2.1.2 The Contractor may terminate the Contract if, through no act or fault of the Contractor or a Subcontractor, sub-Subcontractor or their agents or employees or any other persons or entities under direct or indirect contract with the Contractor, the Owner causes repeated suspensions, delays or interruptions of the entire Work by the Owner as described in Section 7.2.3 constitute in the aggregate more than 100% of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less.

§ 7.2.1.3 If one of the reasons described in Section 7.2.1.1 or 7.2.1.2 exists, the Contractor may, upon seven days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed, including reasonable overhead and profit, costs incurred by reason of such termination, and damages.

§ 7.2.1.4 If the Work is stopped for a period of 60 consecutive days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons under contract with the Contractor because the Owner has repeatedly failed to fulfill the Owner's obligations as set forth herein and A295–2008 with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate this Agreement and recover from the Owner as provided in Section 7.2.1.3.

### § 7.2.2 TERMINATION BY THE OWNER FOR CAUSE
§ 7.2.2.1 In addition to the causes for Owner's termination of the IPD Agreements set forth in Section 12.13.2 of the General Conditions, the Owner may terminate the Contract if the Contractor

  .1   repeatedly refuses or fails to supply enough properly skilled workers or proper materials;
  .2   fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;

Init.

/

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                      (1246122867)

Exhibit 1
Page 14

.3    repeatedly disregards applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of a public authority; or

.4    otherwise is guilty of substantial breach of a provision of the GMP Documents.

**§ 7.2.2.2** When any of the above reasons exist, the Owner may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor and may, subject to any prior rights of the surety:

.1    Exclude the Contractor from the site and take possession of all materials, equipment and tools purchased for incorporation into the Work;

.2    Accept assignment of subcontracts; and

.3    Finish the Work by whatever reasonable method the Owner may deem expedient. Upon written request of the Contractor, the Owner shall furnish to the Contractor a detailed accounting of the costs incurred by the Owner in finishing the Work.

**§ 7.2.2.3** When the Owner terminates the Contract for one of the reasons stated in Section 7.2.2.1 or in Section 12.13.2 of the Project General Conditions, the Contractor shall not be entitled to receive further payment until the Work is finished. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 7, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

**§ 7.2.2.4** If the unpaid balance of the Contract Sum exceeds costs of finishing the Work, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or Owner, as the case may be, shall be certified by the Initial Decision Maker, upon application, and this obligation for payment shall survive termination of the Contract.

**§ 7.2.2.4.1** If the Owner terminates the Contract for cause, the amount, if any, to be paid to the Contractor under Section 7.2.2.4 shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

.1    Take the Cost of the Work incurred by the Contractor to the date of termination;

.2    Add the Contractor's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 4.2.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion; and

.3    Subtract the aggregate of previous payments made by the Owner.

**§ 7.2.2.5** If the Contractor should be adjudged a bankrupt, or if Contractor should make a general assignment for the benefit of Contractor's creditors, or if a receiver should be appointed on account of Contractor's insolvency, or if Contractor should persistently or repeatedly refuse or should fail, except in cases for which extension of time is provided, to supply enough properly skilled workers or proper materials, or if Contractor should fail to make prompt payment for materials or labor or persistently disregard laws, ordinances, or the instructions of Owner, or should Contractor take any action that causes a labor dispute which disrupts the performance of the Work at the Project Site for a period of longer than ten (10) working days during the Construction Period be guilty of a substantial violation of any provision of this Contract, or provided that the cause of such failure is not attributable to an Owner's default of its payment obligations to the Contractor should Contractor's actions or failure to make any payments or disbursements on a timely basis result in the filing of a lien or other encumbrance on the premises or on any other property of Owner or the Ground Lessor by any of its Subcontractor's, which is not removed or bonded within ten (10) days after notice to Contractor by Owner, then Owner, may, without prejudice to any other right or remedy, terminate the employment of the Contractor and take possession of the property and premises and of all materials, tools and appliances thereon and finish the Work by whatever method Owner may deem expedient. In such case, the Contractor shall not be entitled to receive any further payment until the Work is fully finished. If the unpaid balance of the Cost of the Work and Contractor's Fee shall exceed the expense of finishing the Work including compensation for additional architectural, legal, managerial and administrative services, such excess shall be paid to the Contractor. If such expense shall exceed such unpaid balance, the Contractor shall pay within ten (10) days of demand for payment the difference to Owner.

**Init.**

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:      (1246122867)

**15**

Exhibit 1
Page 15

**§ 7.2.3 SUSPENSION BY THE OWNER FOR CONVENIENCE**
**§ 7.2.3.1** The Owner may, without cause, order the Contractor in writing to suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine.

**§ 7.2.3.2** The Contract Sum and Contract Time shall be adjusted for increases in the cost and time caused by suspension, delay or interruption as described in Section 7.2.3.1. Adjustment of the Contract Sum shall include profit. No adjustment shall be made to the extent

.1   that performance is, was or would have been so suspended, delayed or interrupted by another cause for which the Contractor is responsible; or

.2   that an equitable adjustment is made or denied under another provision of the Contract.

**§ 7.2.4 TERMINATION BY THE OWNER FOR CONVENIENCE**
**§ 7.2.4.1** The Owner may, at any time, terminate the Contract (without terminating the other IPD Agreements with the other parties thereto, and with the Owner's right to take assignment of all subcontracts and purchase orders from Contractor) for the Owner's convenience and without cause in accordance with the terms and conditions of Section 12.13.1 of the Project General Conditions.

**§ 7.2.4.2** Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall

.1   cease operations as directed by the Owner in the notice;

.2   take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

.3   except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

**§ 7.2.4.3** In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

*(Paragraph deleted)*
**ARTICLE 8   MISCELLANEOUS PROVISIONS**
**§ 8.1** This Agreement shall be governed by the law of the place where the Project is located, subject to the Federal Arbitration Act as applicable.

**§ 8.2** Terms in this Agreement shall have the same meaning as those in the Project General Conditions. Where reference is made in this Agreement or any other GMP Document to a provision of the Project General Conditions, the reference refers to that provision as amended by any modifications to AIA Document A295-2008 agreed to by Owner and Contractor, or as otherwise amended or supplemented by Owner and Contractor pursuant to any other provisions of the GMP Documents.

**§ 8.3** The Owner and Contractor, respectively, bind themselves, their agents, successors, assigns and legal representatives to this Agreement. Neither the Owner nor the Contractor shall assign this Agreement without the written consent of the other, except that the Owner may assign this Agreement to the Ground Lessor's interest in the Project Site, or a lender providing financing for the Project, provided that in each case, such assignee shall agree to assume the Owner's rights, and all of the Owner's obligations accruing under this Agreement after the effective date of such assignment.

**§ 8.4** Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Contractor. Nor is either party entering into this Agreement in reliance upon any representations made by or agreement with any third party. Contractor bases its decision to enter into this Agreement and the other GMP Documents on its own observation of the Project Site and its review of the Campus Program and the Preliminary Design Documents (as defined in the General Conditions) and any other information it has obtained from Owner, Architect or others and reviewed to its own satisfaction. No verbal agreement or conversation with any agent or representative of Owner, either before or after the execution of this Agreement, shall affect or modify any of the terms, conditions or obligations contained herein. Contractor is not relying on any

Init.

/

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                          (1246122867)

representation made by any agent or representative of Owner, Architect or Engineer other than as expressly set forth in the GMP Documents.

§ 8.5 If the Contractor or Owner receives information specifically designated by the other party as "confidential" or "business proprietary," the receiving party shall keep such information strictly confidential and shall not disclose it to any other person except to (1) its employees, (2) those who need to know the content of such information in order to perform services or construction solely and exclusively for the Project, or (3) its consultants and contractors whose contracts include similar restrictions on the use of confidential information.

## ARTICLE 9   SPECIAL TERMS AND CONDITIONS
Special terms and conditions that modify this Agreement are as follows:

§ 9.1 License. California contractors are required by law to be licensed and regulated by the Contractor's State license Board. Any questions concerning the Contractor may be referred to the Registrar of the Board whose address is: P. O. Box 26000, Sacramento, CA 95826. Contractor shall maintain in good standing, for the duration of the Work its Contractor's license issued by the California State License Board. Contractor shall ensure that all Subcontractors performing any portion of the Work are appropriately licensed by the Contractor's State License Board to perform the applicable construction work or service, and that their licenses are maintained in good standing for the duration of the Work. The Contractor shall promptly notify Owner if the Contractor's license or the license of any of its Subcontractors or Sub-subcontractors engaged in the Work is suspended or revoked.

§ 9.2 Representatives. Neither the Owner's nor the Contractor's representative shall be changed without ten (10) days' written notice to the other party. All notices or other communications required or permitted hereunder shall be in writing, and shall be (i) personally delivered, in which event they shall be deemed received on the date of delivery, or (ii) sent by certified mail, postage prepaid, return receipt requested, or by a professional courier company which provides a receipt evidencing delivery, in which event they shall be deemed received on the date of delivery as evidenced by the receipt.

§ 9.3 Governmental Inspections. Where the Work of Construction must be inspected or approved by any public agency or entity other than Owner, Contractor shall promptly notify the appropriate official bodies or departments when the Work, or any portion thereof, is ready for inspection, and Contractor shall perform all work necessary to obtain approvals from the appropriate entity or authority, without any adjustment to the Contract Sum except as expressly provided in the GMP Documents or as otherwise provided in the General Conditions.

§ 9.4 Project Site Safety and Security. The Contractor shall comply with the Owner's Site Safety Program attached to the General Conditions as Appendix1. Additionally, the Contractor's standard substance abuse policy requires mandatory testing for employees where there is reasonable suspicion that exists and as a post-incident requirement. Contractor is able to expand this program as a mandate for all employees working on the SRM site or within the facility as a reimbursable expense.

§9.5 Contractor's Key Personnel. The Contractor's **"Project Team"** shall mean , collectively, those persons who are primarily responsible for managing the Work of Construction as material consideration for the Owner's agreement to engage Contractor Architect pursuant to this Agreement and to pay the compensation pursuant to such engagement, as identified on Exhibit D to this Agreement (each a **"Member"**). No Member of the Project Team identified on Exhibit D shall be removed from the management of the Work of Construction of the Project, except in the event of Owner's prior written approval, Member's death, illness, discharge for cause or resignation, or similar circumstances beyond the Contractor's reasonable control. If any member of the Project Team becomes unavailable to manage the Work of Construction due to such circumstances beyond the Contractor's reasonable control, then the Contractor shall promptly recommend a qualified replacement for the Member so removed for the Owner's approval prior to appoint such replacement as a Member of the Project Team, which approval shall not be unreasonably withheld by the Owner (and the Owner shall be provided with complete information regarding the education, training and experience of the person recommended by the Contractor as the intended replacement Member of the Project Team, including a current resume and portfolio of his or her qualifications and experience). If Owner (a) is dissatisfied with a proposed replacement for any Member of the Project team, or with the performance of any of Member of the Project Team or any other personnel assigned to the Project by the Contractor or by any of the Subcontractors, and (b) gives written notice thereof to the Contractor, the Contractor shall make all reasonable efforts to promptly replace the person(s) to whom objection has been made within fifteen (15) business days of Contractor's receipt of such written notice, provided that the Owner shall not exercise such right to demand replacement of any Member of the Project Team or other personnel engaged in the management of the Work of Construction by the Contractor without reasonable cause.

Init.

/

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                 (1246122867)

**17**

Exhibit 1
Page 17

In the event of any breach by the Contractor of its obligations under this Section 9.5, including, without limitation, the unauthorized discharge or termination of any Member as a member of the Project Team (including any replacement Member approved by the Owner), the parties agree that the Owner will suffer actual damages that will be difficult to fully quantify and which are not intended to be limited by Section 4.3. The Owner and the Contractor have therefore agreed that in the event of the Contractor's unauthorized discharge or termination of any Member as a member of the Project Team during the term of this Agreement (including any replacement Member approved by the Owner), the Contractor shall pay to the Owner, as a fair and reasonable estimate of the Owner's loss and damages for such breach, and as liquidated damages, within 30 days following the occurrence of such unauthorized termination of a Project Team Member, a lump sum in the amount of Fifty Thousand Dollars ($50,000.00) per occurrence.

**ARTICLE 10   SCOPE OF THE AGREEMENT**

**§ 10.1** This Agreement represents the entire and integrated agreement between the Owner and the Contractor and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Contractor.

**§ 10.2** The following documents comprise the Agreement:

.1    This AIA Document A195–2008, Standard Form of Agreement Between Owner and Contractor for Integrated Project Delivery;

.2    The Project General Conditions;

.3    AIA Document E202™-2008, Building Information Modeling Protocol Exhibit–

.4    Other documents:

Exhibit A – Guaranteed Maximum Price Amendment
Exhibit B –Contractor's Project Management Services
Exhibit C –Intentionally Omitted
Exhibit D –Key Personnel and Project Organization Chart
Exhibit E – List of Contract Documents
Exhibit F – Preliminary Project Schedule
Exhibit G – Preconstruction GMP Estimate
Exhibit H - Contractor's Schedule of Rates
Exhibit I – Fee (Fixed and Incentive), Shared Savings and Incentive Program Details
Exhibit J - Specimen Signatures for Contractor's Authorized Signatories

**Init.**

**/**

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
**User Notes:**                                                                                               (1246122867)

**18**

Exhibit 1
Page 18

This Agreement entered into as of the day and year first written above.

OWNER *(Signature)*                          CONTRACTOR *(Signature)* PETER A. SAWAJI

Shire Regenerative Medicine, Inc.            DPR Construction, A General Partnership
a Delaware corporation                       a California general partnership
*(Printed name and title)*                   *(Printed name and title)*

Jeff Jonas, President

AIA Document A195™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                  (1246122867)

19

Exhibit 1
Page 19

## *Certification of Document's Authenticity*
*AIA® Document D401™ – 2003*

I, Katy Martinez, hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 07:20:28 on 11/28/2012 under Order No. 3410328020_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A195™ – 2008, Standard Form of Agreement Between Owner and Contractor for Integrated Project Delivery, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____
(Signed)

_____
(Title)

_____
(Dated)

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 07:20:28 on 11/28/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                              (1246122867)

**1**

Exhibit 1
Page 20



# AIA® Document A295™ – 2008

## *General Conditions of the Contract for Integrated Project Delivery*

for the following PROJECT:

Shire Regenerative Medicine Campus – Phase 1
Lot 5 and Lot 9 of Fenton Technology Park
Located at Summers Ridge Rd.
San Diego, CA  92121

**THE OWNER:**

Shire Regenerative Medicine, Inc.
11095 Torreyana Road
San Diego, CA  92121
Attn: Marcus Webb

**THE ARCHITECT:**

Ferguson Baldwin Pape Architects, Inc.
4499 Ruffin Road, Suite 300
San Diego, CA 92123
CA License No.

**THE ENGINEER:**

Clark, Richardson and Biskup Consulting Engineers, Inc.
A Missouri corporation
2701 Loker Ave. West, Suite 130
Carlsbad, CA 92010
Attn:  Douglas C. Conrath
CA License No. C1976131

**THE CONTRACTOR:**

DPR Construction, A General Partnership
5010 Shoreham Place
San Diego, CA 92122
CA License No. 953749

**THE GROUND LESSOR:**

BMR-Summers Ridge LP,
17190 Bernardo Center Drive
San Diego, CA 92128
Attn:  Vice President, Real Estate Counsel

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

Init.

*/*

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                          (1999859025)

1

Exhibit 2
Page 21

TABLE OF ARTICLES

1       GENERAL PROVISIONS

2       OWNER

3       ARCHITECT

4       CONTRACTOR

5       PROGRAMMING/CONCEPT DESIGN PHASE

6       SCHEMATIC DESIGN PHASE

7       DESIGN DEVELOPMENT PHASE

8       CONSTRUCTION DOCUMENTS PHASE

9       CONSTRUCTION PHASE

10      CLOSEOUT PHASE

11      INSURANCE AND BONDS

12      MISCELLANEOUS PROVISIONS

13      CLAIMS AND DISPUTES

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                (1998859025)

2

Exhibit 2
Page 22

**INDEX**
(Numbers and Topics in Bold are Section Headings)

**Acceptance of Nonconforming Work**
9.23.6.6, 9.23.8.3, **9.25.3**
Acceptance of Work
9.23.6.6, 9.23.8.3, 9.25.3, 10.1.4, 10.2.1, 10.2.3,
**Access to Work**
**9.16,** 9.20.2.1, 9.25.1
Accident Prevention
9.24
Acts and Omissions
9.2, 9.3.4, 9.12.8, 9.18, 9.22.3.1, 9.23.5.1, 9.24.2.5,
9.24.2.8, 9.26.4.1, 12.3.2, 12.6, 13.2
Additional Costs, Claims for
9.7.4, 9.7.5, 9.20.1.1, 9.21.3.7.5, 9.24.3, 13.1.4
**Additional Inspections and Testing**
9.23.4.2, 9.25.2.1, 10.1.5, **12.4**
Additional Insured
11.1.4
**Additional Time, Claims for**
9.2.4, 9.7.4, 9.7.5, 9.10.2, 9.22.3.2, **13.1.5**
**Administration of the Contract, Architect's**
9.1.2, 9.23.4, 9.23.5, **9.26**
Aesthetic Effect
9.26.4.4
**After Substantial Completion (Correction of Work)**
**9.25.2.2**
**Allowances**
**9.8,** 9.21.3.8
All-risk Insurance
11.3.1, 11.3.1.1
**Applications for Payment**
9.21.3.9, 9.23.2, **9.23.3,** 9.23.4, 9.23.5.1, 9.23.6.3,
9.23.7, 10.2, 11.1.3
Approvals
2.1.1, 2.2.4, 4.2.6, 9.1.2, 9.10.2, 9.12.8, 9.12.9,
9.23.3.2, 9.25.2.7, 9.26.5.1, 9.26.5.2, 12.4.1
**Arbitration**
9.22.3.1, 11.3.10, 13.3.2, **13.4**
**ARCHITECT**
**3**
**Architect**, Definition of
**3.1.1**
Architect, Extent of Authority
1.3.12, 1.4.1.1, 3.1, 9.12.7, 9.19.2, 9.20.3, 9.21.1.2,
9.21.3.7, 9.21.4, 9.23.2, 9.23.3.1, 9.23.4, 9.23.5,
9.23.6.3, 9.25.1, 9.25.2.1, 9.25.2.7, 9.26, 10.1, 10.2.1,
10.2.3, 12.4.1, 12.4.2, 13.1.3, 13.2.1
Architect, Limitations of Authority and Responsibility
1.4.1.1, 2.1.1, 3.1.2, 3.2.3, 4.2.6, 9.12.4, 9.12.8,
9.19.2.1, 9.21.4, 9.23.4.2, 9.23.5.3, 9.23.6.4, 9.26.1,
9.26.2, 9.26.4.1, 9.26.4.2, 9.26.4.4, 9.26.5.2, 13.1.3,
13.2

Architect's Additional Services and Expenses
3.2.3, 9.25.2.2.1, 9.25.2.7, 11.3.1.1, 12.4.2, 12.4.3
**Architect's Administration of the Contract**
9.1.2, 9.7.4, 9.23.4, 9.23.5, **9.26,** 13.2
Architect's Approvals
1.4.1.1, 9.1.2, 9.5, 9.10.2, 9.25.2.7, 9.26.5.2
Architect's Authority to Reject Work
9.5, 9.25.1.2, 9.25.2.1, 9.26.4.2
Architect's Copyright
1.3.6, 1.5
Architect's Decisions
1.3.12, 1.4.1.1, 9.7.4, 9.20.3, 9.21.3.7, 9.21.3.9,
9.22.1.2, 9.22.3.1, 9.23.2, 9.23.4.1, 9.23.5, 9.23.8.1,
9.26.4.2, 9.26.4.3, 9.26.4.4, 9.26.5.2, 9.26.5.4, 10.1.6,
12.4.2, 13.2, 13.3
**Architect's General Services**
**3.2**
Architect's Inspections
9.7.4, 9.23.4.2, 9.23.8.2, 9.26.4.1, 10.1.1, 10.1.5,
10.2.1, 12.4
Architect's Instructions
9.2.4, 9.3.1, 9.26.4.2, 9.26.5.2, 12.4.2
Architect's Interpretations
1.3.14.4, 9.26.4.3, 9.26.4.4
Architect's Relationship with Contractor
1.3.9, 1.3.12, 1.4.1.1, 1.5, 3.1.2, 3.1.3, 9.1.2, 9.2.2,
9.2.3, 9.2.4, 9.3.1, 9.4.2, 9.5, 9.7.4, 9.7.5, 9.9.2, 9.9.3,
9.10, 9.11, 9.12, 9.16, 9.18, 9.19.2, 9.20.2.2, 9.21,
9.22.3, 9.23.2, 9.23.3, 9.23.4, 9.23.5, 9.23.7, 9.23.8,
9.24.2.6, 9.24.3, 9.25, 9.26, 10.1, 11.3.7, 12.3.2, 12.4,
13.2
Architect's Relationship with Subcontractors
1.3.9, 1.3.12, 9.23.6.3, 9.23.6.4, 9.26.4.1, 9.26.4.2,
11.3.7
Architect's Representations
9.23.4.2, 9.23.5.1, 10.2.1
Architect's Site Visits
9.7.4, 9.23.4.2, 9.23.5.1, 9.23.8.2, 9.26.4.1, 10.1.1,
10.2.1, 12.4
**Architectural Services**
1.3.2, 1.3.6
Asbestos
9.24.3.1
Attorneys' Fees
9.18.1, 9.24.3.3, 10.2.2
Award of Separate Contracts
9.20.1.1, 9.20.1.2
**Award of Subcontracts and Other Contracts for
Portions of the Work**
**9.19.2**
**Basic Definitions**
**1.3**
**Before or After Substantial Completion (Correction
of Work)**
**9.25.2.1**

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes: (1999859025)

Init.

**3**

Exhibit 2
Page 23

**Bidding Requirements**
11.4.1
Binding Dispute Resolution
9.23.7, 11.3.9, 11.3.10, 13.1, 13.2.5, 13.2.6.1, 13.3.1,
13.3.2, 13.4.1
**Boiler and Machinery Insurance**
**11.3.2**
Bonds, Lien
9.21.3.7.4, 10.2.2, 10.2.3
**Bonds, Performance, and Payment**
9.21.3.7.4, 9.23.6.7, 10.2.3, 11.3.9, **11.4**
**Building Information Model**
**1.3.5**, 1.3.8, 1.4.2, 1.5.1, 1.5.2, 5.5, 7.1, 8.2
Building Permit
9.7.1
**Capitalization**
**1.4.4**
Certificate of Substantial Completion
10.1.5, 10.1.6, 10.1.9
**Certificates for Payment**
9.23.3.3, **9.23.4**, 9.23.5, 9.23.6.1, 9.23.6.6, 9.23.7,
10.1.1, 10.2.1, 10.2.3, 13.1.3
Certificates of Inspection, Testing or Approval
12.4.4
Certificates of Insurance
10.2.2., 11.1.3
**Change Orders**
1.3.8, 9.4.2, 9.7.4, 9.8.2.3, 9.11, 9.12.8, 9.19.2.3,
9.21.1.2, 9.21.1.3, **9.21.2**, 9.21.3.2, 9.21.3.6, 9.21.3.9,
9.21.3.10, 9.22.3.1, 9.23.3.1.1, 9.24.3.2, 9.25.1.2,
9.25.2.7, 10.2.3, 11.3.1.2, 11.3.4, 11.3.9, 13.1.3
**Change Orders**, Definition of
**9.21.2.1**
**CHANGES IN THE WORK**
2.2.2, 9.11, **9.21**, 9.21.2.1, 9.21.3.1, 9.21.4, 9.22.3.1,
9.23.3.1.1, 11.3.9
Claims, Definition of
**13.1.1**
**CLAIMS AND DISPUTES**
9.2.4, 9.20.1.1, 9.20.3, 9.21.3.9, 9.23.3.3, 9.24.3.3,
10.2.4, **13**, 13.4
Claims and Timely Assertion of Claims
13.4.1
**Claims for Additional Cost**
9.2.4, 9.7.4, 9.20.1.1, 9.21.3.9, 9.24.3.2, **13.1.4**
**Claims for Additional Time**
9.2.4, 9.7.4, 9.20.1.1, 9.22.3.2, 9.24.3.2, **13.1.5**
**Claims for Consequential Damages**
**13.1.6**
**Cleaning Up**
9.15, 9.20.3
Concealed or Unknown Conditions, Claims for
9.7.4
Claims for Damages
9.2.4, 9.18, 9.20.1.1, 9.22.3.3, 9.23.5.1, 9.23.6.7,
9.24.3.3, 11.1.1, 11.3.5, 11.3.7, 13.1.6

Claims Subject to Arbitration
13.3.1, 13.4.1
**CLOSEOUT PHASE**
**10**
Commencement of the Work, Conditions Relating to
2.2.2, 8.6, 9.2.2, 9.4.1, 9.7.1, 9.10.1, 9.12.6, 9.19.2.1,
9.19.2.3, 9.20.2.2, 9.22.2.2, 9.22.3.1, 11.1, 11.3.1,
11.3.6, 11.4.1, 13.1.4
**Commencement of the Work**, Definition of
**8.6**
Communications Facilitating Contract Administration
3.22, 9.9.1
Completion, Conditions Relating to
9.4.1, 9.11, 9.15, 9.22.2, 9.23.4.2, 9.23.8.1, 9.26.4.1,
9.25.2, 10.1, 10.2, 12.6
**Completion, Substantial**
9.22.1.1, 9.22.1.2, 9.22.2.3, 9.23.4.2, 9.23.8.1, 9.25.2,
10.1.1, 10.1.2, 10.2.3, 12.6
Compliance with Laws
1.5.2, 3.1.1, 4.2.6, 9.2.3, 9.6, 9.7, 9.13, 9.23.6.4,
9.24.2.2, 11.1, 11.3, 12.3, 12.4.1, 12.4.2, 12.5, 13.2.8,
13.4.2, 13.4.3
Concealed or Unknown Conditions
9.7.4, 9.22.3.1, 9.24.3
*(Paragraph deleted)*
Conditions of the Contract
1.3.8, 9.20.1.1, 9.20.1.4
Consent, Written
3.1.2, 9.4.2, 9.7.4, 9.12.8, 9.14.2, 9.23.3.2, 9.23.8.1,
10.1.9, 10.2.2, 10.2.3, 11.3.1, 12.1, 12.3.2, 13.4.4.2
**Consolidation or Joinder**
**13.4.4**
**CONSTRUCTION BY OWNER OR BY
SEPARATE CONTRACTORS**
1.3.2, **9.20**
**Construction Change Directive**, Definition of
**9.21.3.1**
**Construction Change Directives**
1.3.8, 9.4.2, 9.12.8, 9.21.1.1, 9.21.1.2, 9.21.1.3,
**9.21.3**, 9.23.3.1.1
**Construction Documents, The**
1.3.3, 1.3.4, 1.3.10
**CONSTRUCTION DOCUMENTS PHASE**
**8**
**Construction Drawings**
1.3.3, 1.3.8
**CONSTRUCTION PHASE**
**9**
**Construction Schedule**
7.10
Construction Schedules, Contractor's
9.
**Construction Specifications**
1.3.4, 1.3.8
10, 9.12.1, 9.12.2, 9.20.1.3, 13.1.5.2

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                         (1999859025)

Init.

/

4

Exhibit 2
Page 24

**Contingent Assignment of Subcontracts**
9.19.4
**Continuing Contract Performance**
13.1.3
**Contract**, Definition of
**1.3.9**
Contract Administration
9.1.2, 9.23.4, 9.23.5, **9.26**
Contract Award and Execution, Conditions Relating to
9.7.1, 9.10, 9.19.2, 9.20.1, 11.1.3, 11.3.6, 11.4.1
**Contract Documents, The**
See Guaranteed Maximum Price Documents, The
Contract Sum
9.7.4, 9.8, 9.19.2.3, 9.21.2, 9.21.3, 9.21.4, **9.23.1**,
9.23.4.2, 9.23.5.1.4, 9.23.6.7, 9.23.7, 9.24.3.2, 11.3.1,
13.1.4, 13.2.5
**Contract Sum**, Definition of
**9.23.1**
Contract Time
9.7.4, 9.7.5, 9.10.2, 9.19.2.3, 9.21.2.1.3, 9.21.3.1,
9.21.3.5, 9.21.4, 9.22.1.1, 9.22.2.1, 9.22.3.1, 9.23.5.1,
9.23.7, 9.24.3.2, 9.25.1.1, 13.1.5.1, 13.2.5
Contract Time, Definition of
**9.22.1.1**
**CONTRACTOR**
**4**
Contractor, Definition of
**4.1**, 9.20.1.2
**Contractor Property**, Definition of
**1.5.1**
**Contractor's Construction Schedules**
**9.10**, 9.12.1, 9.12.2, 9.20.1.3, 13.1.5.2
Contractor's Employees
9.3.4, 9.4.3, 9.8.1, 9.9, 9.18.2, 9.24.2, 9.24.3, 9.26.4.1,
9.26.4.2, 11.1.1, 11.3.7
Contractor's Estimates
4.2.3, 4.2.4, 4.2.5
**Contractor's Liability Insurance**
**11.1**
Contractor's Relationship with Separate Contractors
and Owner's Forces
9.12.5, 9.14.2, 9.20, 9.25.1.2, 9.25.2.4, 11.3.7
Contractor's Relationship with Subcontractors
1.4.2, 9.3.4, 9.18.1, 9.18.2, 9.19, 9.23.6.2, 9.23.6.7,
10.2.2, 11.3.1.2, 11.3.7, 11.3.8
Contractor's Relationship with the Architect
1.3.9, 1.5, 3.1.3, 9.1.2, 9.2.2, 9.2.3, 9.2.4, 9.3.1, 9.4.2,
9.5, 9.7.4, 9.10, 9.11, 9.12, 9.16, 9.18, 9.19.2,
9.20.2.2, 9.21, 9.22.3.1, 9.23.2, 9.23.3, 9.23.4, 9.23.5,
9.23.7, 9.23.8, 9.24.2.6, 9.24.3, 9.25, 9.26, 10.1,
11.3.7, 12.4, 13.1.2, 13.2.1
Contractor's Representations
9.2.1, 9.2.2, 9.5, 9.12.6, 9.20.2.2, 9.22.2.1, 9.23.3.3,
10.1.4
Contractor's Responsibility for Those Performing the
Work
9.3.4, 9.18, 9.19.3, 9.20.1.3, 9.20.2, 9.23.5.1, 9.24.2.8

Contractor's Review of Contract Documents
9.2
Contractor's Right to Stop the Work
9.23.7
Contractor's Right to Terminate the Contract
13.1.6
Contractor's Submittals
9.10, 9.11, 9.12.4, 9.19.2.1, 9.19.2.3, 9.23.2, 9.23.3,
9.23.8.1, 9.26.5.2, 10.1.4, 10.1.5, 10.2.2, 10.2.3,
11.1.3, 11.4.2
Contractor's Superintendent
9.9, 9.24.2.6
Contractor's Supervision and Construction Procedures
1.4.2, 4.2.6, 9.3, 9.4, 9.20.1.3, 9.20.2.4, 9.21.1.3,
9.21.3.5, 9.21.3.7, 9.22.2, 9.24, 9.25, 9.26.2, 9.26.4.1,
9.26.5.2, 13.1.3
Contractual Liability Insurance
11.1.1.8, 11.2
**Coordination**
**1.6**, 9.3.1, 9.10, 9.12.6, 9.20.1.3, 9.20.2.1
Copies Furnished of Drawings and Specifications
1.5, 9.11
**Copyrights**
1.5, **9.17**
**Correction of Work**
9.7.3, 9.23.4.2, 9.23.8.1, 9.25.1.2, **9.25.2**, 9.25.2.6,
9.25.2.7, 10.1.4, 10.1.5
**Correlation and Intent of the GMP Documents**
1.4, 9.2.1
Cost, Definition of
**9.21.3.7**
Costs
9.2.4, 9.7.3, 9.8.2, 9.15.2, 9.19.4.2, 9.20.1.1, 9.20.2.3,
9.21.3.3.3, 9.21.3.7, 9.21.3.8, 9.21.3.9, 9.24.3.2,
9.24.3.6, 9.25.1.2, 9.25.2.1, 9.25.2.4, 9.25.2.7, 10.2.2,
11.3, 12.4
*(Paragraphs deleted)*
**Cutting and Patching**
**9.14**, 9.20.2.5
Damage to Construction of Owner or Separate
Contractors
9.14.2, 9.20.2.4, 9.24.2.1.2, 9.24.2.5, 9.24.4, 9.25.2.4,
11.1.1, 11.3
Damage to the Work
9.14.2, 9.23.8.1, 9.24.2.1.2, 9.24.2.5, 9.24.4, 9.25.2.4,
11.3.1
Damages, Claims for
9.2.4, 9.18, 9.20.1.1, 9.22.3.3, 9.23.5.1, 9.23.6.7,
9.24.3.3, 11.1.1, 11.3.5, 11.3.7, 13.1.6
Damages for Delay
9.20.1.1, 9.22.3.3, 9.23.5.1.6, 9.23.7, 9.24.3.2
Date of Commencement of the Work
8.6
**Date of Substantial Completion**, Definition of
**9.22.1.2**
**Day**, Definition of
**9.22.1.3**

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
**User Notes:**                                                                                                  (1999859025)

5

Exhibit 2
Page 25

Decisions of the Architect
9.7.4, 9.20.3, 9.21.3.7, 9.21.3.9, 9.22.1.2, 9.22.3.1,
9.23.2, 9.23.4, 9.23.5.1, 9.23.8.1, 9.26.4.2, 9.26.4.3,
9.26.4.4, 9.26.5.2, 10.1.6, 12.4.2, 13.1, 13.2
**Decisions to Withhold Certification**
9.23.4.1, **9.23.5**, 9.23.7
Defective or Nonconforming Work, Acceptance,
Rejection and Correction of
9.5, 9.20.2.5, 9.23.5.1, 9.23.5.2, 9.23.6.6, 9.23.8.3,
9.25.2.1, 9.25.2.6, 9.25.2.7, 9.26.4.2, 10.1.4, 10.2.4
**Defective Work**, Definition of
**9.5**
Definitions
1.3, 2.1.1, 3.1.1, 4.1.1, 9.5, 9.12.1, 9.12.2, 9.12.3,
9.19.1, 9.20.1.2, 9.21.2.1, 9.21.3.1, 9.22.1, 9.23.1,
10.1.2, 13.1.1,
**Delays and Extensions of Time**
9.2, 9.7.4, 9.19.2.3, 9.21.2.1, 9.21.3.1, 9.21.4, **9.22.3**,
9.23.5.1, 9.23.7, 9.24.3.2, 9.24.4, 13.1.5, 13.2.5
**Design Development Documents**
**7.1**
**DESIGN DEVELOPMENT PHASE**
**7**
Disputes
9.20.3, 9.21.3.9, 13.1, 13.2
**Documents and Samples at the Site**
**9.11**
**Drawings**, Definition of
**1.3.3**
Drawings and Specifications, Use and Ownership of
9.11
Effective Date of Insurance
9.22.2.2, 11.1.2
**Emergencies**
**9.24.4**, 13.1.4
Employees, Contractor's
9.3.4, 9.4.3, 9.8.1, 9.9, 9.18.2, 9.24.2, 9.24.3.3,
9.26.4.1, 9.26.4.2, 11.1.1, 11.3.7
**ENGINEER**
**3A**
**Engineer**, Definition of
**3.1.1A**
Engineer, Extent of Authority
1.3.12, 1.4.1.1, 3.1A, 9.12.7, 9.19.2, 9.20.3, 9.21.1.2,
9.21.3.7, 9.21.4, 9.23.2, 9.23.3.1, 9.23.4, 9.23.5,
9.23.6.3, 9.25.1, 9.25.2.1, 9.25.2.7, 9.26, 10.1, 10.2.1,
10.2.3, 12.4.1, 12.4.2, 13.1.3, 13.2.1
Engineer, Limitations of Authority and Responsibility
2.1.1, 3.1.2A, 3.2.3A, 4.2.6, 9.12.4, 9.12.8, 9.19.2.1,
9.21.4, 9.23.4.2, 9.23.5.3, 9.23.6.4, 9.26.1, 9.26.2,
9.26.4.1, 9.26.4.2, 9.26.4.4, 9.26.5.2, 13.1.3, 13.2
Engineer's Additional Services and Expenses
3.2.3A, 9.25.2.2.1, 9.25.2.7, 11.3.1.1, 12.4.2, 12.4.3
**Engineer's Administration of the Contract**
9.1.2, 9.7.4, 9.23.4, 9.23.5, **9.26**, 13.2
Engineer's Approvals
9.1.2, 9.5, 9.10.2, 9.25.2.7, 9.26.5.2

Engineer's Authority to Reject Work
9.5, 9.25.1.2, 9.25.2.1, 9.26.4.2
Engineer's Copyright
1.3.6, 1.5
Engineer's Decisions
1.3.12, 1.4.1.1, 9.7.4, 9.20.3, 9.21.3.7, 9.21.3.9,
9.22.1.2, 9.22.3.1, 9.23.2, 9.23.4.1, 9.23.5, 9.23.8.1,
9.26.4.2, 9.26.4.3, 9.26.4.4, 9.26.5.2, 9.26.5.4, 10.1.6,
12.4.2, 13.2, 13.3
**Engineer's General Services**
**3.2A**
Engineer's Inspections
9.7.4, 9.23.4.2, 9.23.8.2, 9.26.4.1, 10.1.1, 10.1.5,
10.2.1, 12.4
Engineer's Instructions
9.2.4, 9.3.1, 9.26.4.2, 9.26.5.2, 12.4.2
Engineer's Interpretations
1.3.14.4, 9.26.4.3, 9.26.4.4
Engineer's Relationship with Contractor
1.3.9, 1.3.12, 1.4.1.1, 1.5, 3.1.2A, 3.1.3A, 9.1.2, 9.2.2,
9.2.3, 9.2.4, 9.3.1, 9.4.2, 9.5, 9.7.4, 9.7.5, 9.9.2, 9.9.3,
9.10, 9.11, 9.12, 9.16, 9.18, 9.19.2, 9.20.2.2, 9.21,
9.22.3, 9.23.2, 9.23.3, 9.23.4, 9.23.5, 9.23.7, 9.23.8,
9.24.2.6, 9.24.3, 9.25, 9.26, 10.1, 11.3.7, 12.3.2, 12.4,
13.2
Engineer's Relationship with Subcontractors
1.3.9, 1.3.12, 9.23.6.3, 9.23.6.4, 9.26.4.1, 9.26.4.2,
11.3.7
Engineer's Representations
9.23.4.2, 9.23.5.1, 10.2.1
Engineer's Site Visits
9.7.4, 9.23.4.2, 9.23.5.1, 9.23.8.2, 9.26.4.1, 10.1.1,
10.2.1, 12.4
Equipment, Labor, Materials or
1.3.1, 1.3.4, 9.4, 9.5, 9.8.2, 9.8.3, 9.12, 9.13, 9.15.1,
9.19.2.1, 9.20.2.1, 9.21.3.7, 9.23.3.2, 9.23.3.3,
9.23.5.1.3, 9.24.2.1, 9.24.2.4, 9.26.4.2, 9.26.5.2,
10.2.2
**Evaluations of the Work**
**9.26.4**
Execution and Progress of the Work
1.3.1, 1.4.1, 1.4.2, 2.2.5, 4.1, 9.3.1, 9.4.1, 9.5, 9.7.1,
9.10.1, 9.12, 9.14, 9.20.2.2, 9.21.1.3, 9.21.3.5, 9.22.2,
9.23.5.1, 9.23.8.1, 9.24.2, 9.24.3, 9.25.2, 9.26, 13.1.3
Extensions of Time
9.2.4, 9.7.4, 9.19.2.3, 9.21.2.1, 9.21.3, 9.21.4,
9.23.5.1, 9.23.7, 9.24.3.2, 9.24.4, 13.1.5, 13.2.5
**Failure of Payment**
9.23.5.1.3, **9.23.7**, 10.2.2, 12.5
Faulty Work
(*See* Defective or Nonconforming Work)
Field Modifications
1.3.3, 1.3.4, 1.4.1.1

**Final Completion and Final Payment**
9.25.3, 9.26.1, 10.1.1, 10.1.4, **10.2**, 11.1.2, 11.1.3,
11.3.1, 11.3.5

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:56:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                              (1999859025)

Init.

*l*

Exhibit 2
Page 26

Financial Arrangements, Owner's
2.2.2, 12.1.2
Fire and Extended Coverage Insurance
11.3.1.1
**General Consultation Responsibilities (of
Contractor)**
**4.2**
**GENERAL PROVISIONS**
**1**
**Ground Lease**
**1.3.2**
**Guaranteed Maximum Price, The**
**1.3.7**
**Guaranteed Maximum Price Documents, The**
**1.3.8,** 1.4, 9.19.3
Guarantees (*See* Warranty)
**Hazardous Materials**
9.24.2.4, **9.24.3**
Identification of Subcontractors and Suppliers
9.19.2.1
*(Paragraphs deleted)*
**Indemnification**
9.17, **9.18,** 9.24.3, 9.24.3.5, 9.24.3.6, 10.2.2, 11.3.1.2,
11.3.7
**Information and Services Required of the Owner**
2.1.5, **2.2,** 4.2.6, 9.2.2, 9.12.4, 9.20.1.3, 9.20.1.4,
9.20.2.5, 9.23.6.1, 9.23.6.4, 9.23.8.2, 9.24.3.3, 10.2.3,
11.2, 11.4, 12.4.1, 12.4.2, 13.1.3
**Initial Decision**
**13.2**
**Initial Decision Maker,** Definition of
**1.3.12**
Initial Decision Maker, Decisions
13.2.1, 13.2.2, 13.2.3, 13.2.4, 13.2.5
Initial Decision Maker, Extent of Authority
13.1.3, 13.2.1, 13.2.2, 13.2.3, 13.2.4, 13.2.5
**Initial Information**
**1.2**
**Injury or Damage to Person or Property**
**9.24.2.8,** 9.24.4
Inspections
9.1.2, 9.3.5, 9.7.1, 9.23.4.2, 9.23.8.2, 9.25.2.1,
9.26.4.1, 9.26.4.2, 10.1.1, 10.1.5, 10.2.1, 12.4
Instructions to the Contractor
9.2.4, 9.3.1, 9.8.1, 9.19.2.1, 9.21, 9.22.2.2, 9.25,
12.4.2
**Instruments of Service,** Definition of
**1.3.6**
**Insurance**
9.8.4, 9.18.1, 9.20.1.1, 9.21.3.7, 9.23.3.2, 9.23.8.1,
10.2.2, 11
**Insurance, Boiler and Machinery**
**11.3.2**
**Insurance, Contractor's Liability**
**11.1**
Insurance, Effective Date of
9.22.2.2, 11.1.2

Insurance, Loss of Use
**11.3.3**
**Insurance, Owner's Liability**
**11.2**
**Insurance, Property**
9.24.2.5, **11.3**
Insurance, Stored Materials
9.23.3.2, 11.4.1.4
**INSURANCE AND BONDS**
**11**
Insurance Companies, Consent to Partial Occupancy
9.23.8.1, 11.4.1.5
Insurance Companies, Settlement with
11.4.10
**Integrated Project Delivery**
**1.3.13**
Intent of the Contract Documents
1.4.1, 9.21.4, 9.26.5.2, 9.26.4.4
**Interest**
**12.5**
**Interpretation**
1.4.3, **1.4.5,** 3.1.1, 9.19.1, 9.20.1.2, 13.1.1
Interpretations, Written
9.26.4.3, 9.26.4.4, 13.1.4
Judgment on Final Award
13.4.2
**Labor and Materials, Equipment**
1.3.1, 1.3.4, 9.1.2, **9.4,** 9.5, 9.8.3, 9.12, 9.15.1,
9.19.2.1, 9.20.2.1, 9.21.3.7, 9.23.3.2, 9.23.3.3,
9.23.5.1.3, 9.24.2.1, 9.24.2.4, 9.26.4.2, 9.26.5.2,
10.1.4, 10.2.2
Labor Disputes
9.22.3.1
Laws and Regulations
1.5, 3.1.1, 3.2.4, 3.2.5, 4.2.1, 4.2.2, 4.2.6, 9.2.3, 9.6,
9.7, 9.13, 9.23.6.4, 9.23.8.1, 9.24.2.2, 11.1.1, 11.3,
12.3, 12.4.1, 12.4.2, 12.5, 13.2.8, 13.4
Liens
2.1.5, 9.23.3.3, 10.2.2, 10.2.4, 13.2.8
Limitations, Statutes of
9.25.2.5, 12.6, 13.4.1.1
Limitations of Liability
4.2.6, 9.2.2, 9.5, 9.17, 18.1, 9.20.2.2, 9.23.4.2,
9.23.6.4, 9.23.6.7, 9.24.2.5, 9.24.3.3, 9.25.2.5,
9.25.2.6, 9.26.4.2, 9.26.4.4, 9.26.5.2, 11.1.2, 11.2,
11.3.7, 12.3.2
Limitations of Time
2.1.5, 2.2, 9.2.2, 9.10, 9.11, 9.12.5, 9.15.1, 9.19.2,
9.19.3, 9.19.4.1, 9.20.2.4, 9.21.3, 9.21.4, 9.22.2,
9.23.2, 9.23.3.1, 9.23.3.3, 9.23.4.1, 9.23.5, 9.23.6,
9.23.7, 9.23.8, 9.25.2, 9.25.2.7, 9.26.5.2, 10.1, 10.2,
11.1.3, 11.3.1.5, 11.3.6, 11.3.10, 12.4, 12.6
**Loss of Use Insurance**
**11.3.3**
**Major Materials and Equipment**
**6.2,** 6.2.2

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by
U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in
severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at
13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                           (1999859025)

Exhibit 2
Page 27

**Major Project Components**
**1.3.12**, 1.4.1.1
Material Suppliers
1.5, 9.12.1, 9.19.2.1, 9.23.3, 9.23.4.2, 9.23.6, 9.26.4.2,
10.2.5
**Materials, Hazardous**
9.24.2.4, **9.24.3**
Materials, Labor, Equipment and
1.3.1, 1.3.4, 1.5, 9.4.1, 9.5, 9.8.3, 9.12, 9.13, 9.15.1,
9.19.2.1, 9.20.2.1, 9.21.3.7, 9.23.3.2, 9.23.3.3,
9.23.5.1.3, 9.24.2.1.2, 9.24.2.4, 9.26.4.2, 9.26.5.2,
10.1.4, 10.2.2
Means, Methods, Techniques, Sequences and
Procedures of Construction
4.2.6, 9.3.1, 9.23.4.2, 9.26.2, 9.26.5.2,
Mechanic's Lien
2.1.5, 13.2.8
**Mediation**
9.22.3.1, 9.24.3.5, 9.24.3.6, 13.2.1, 13.2.5, 13.2.6,
**13.3**, 13.4.1
**MEP Services**
1.3.2, **1.3.6**
**Minor Changes in the Work**
1.3.8, 9.12.8, 9.21.1, **9.21.4**
**MISCELLANEOUS PROVISIONS**
**12**
**Modifications**, Definition of
**1.3.8**
Modifications to the Contract
1.3.8, 1.3.9, 3.1.2, 9.11, 9.19.2.3, 9.21, 9.22.3.1,
9.23.7, 9.24.3.2, 9.26.1, 11.3.1
**Mutual Responsibility**
9.20.2
**Nonconforming Work, Acceptance of**
9.23.6.6, 9.23.8.3, **9.25.3**
Nonconforming Work, Rejection and Correction of
9.5, 9.20.2.4, 9.23.5.1, 9.23.8.3, 9.25.2.1, 9.25.2.6,
9.25.2.7, 9.26.4.2, 10.1.4, 10.2.4
Notice
2.2.2, 9.2.4, 9.3.1, 9.7.2, 9.12.9, 9.19.2.1, 9.23.7,
9.24.2.2, 9.25.2.2.1, 9.25.2.6, 9.25.2.7, 10.2, 11.1.3,
11.4.6, 12.2, 12.4.1, 12.4.2, 13.2.8, 13.4.1
**Notice, Written**
4.2.6, 9.3.1, 9.9.2, 9.12.9, 9.19.2.1, 9.23.7, 9.24.2.2,
9.24.3, 9.25.2.2.1, 9.25.2.6, 9.25.2.7, 10.2, 11.1.3,
11.3.6, **12.2**, 13.2.8, 13.4.1
**Notice of Claims**
9.7.4, 9.24.2.8, **13.1.2**, 13.4
Notice of Testing and Inspections
12.4.1, 12.4.2
Observations, Contractor's
9.2, 9.7.4
Occupancy
2.2.4, 9.23.6.6, 10.1, 11.3.1.5
Orders, Written
1.3.8, 7, 9.9.2, 9.22.2.2, 9.25.1, 9.25.2.2.1, 9.25.2.6,
11.3.9, 12.4.2

**OWNER**
**2**
**Owner**, Definition of
**2.1.1**
**Owner, Information and Services Required of the**
2.1.5, **2.2**, 4.2.6, 9.2.2, 9.20.1.3, 9.20.1.4, 9.20.2.5,
9.23.3.2, 9.23.6.1, 9.23.6.4, 9.23.8.2, 9.24.3.3, 10.2.3,
11.2, 11.3, 12.4.1, 12.4.2, 13.1.3
**Owner-Contractor Agreement**
**1.3.8**, 1.5.1
**Owner-Engineer Agreement**
**1.3.8**
Owner's Authority
1.5, 2.1.1, 3.1.2, 3.1.3, 4.2.6, 9.4.2, 9.8.1, 9.14.2,
9.19.2.1, 9.19.2.4, 9.19.4, 9.20.1, 9.20.3, 9.21.2.1,
9.21.3.1, 9.22.2.2, 9.22.3.1, 9.23.3.1, 9.23.3.2,
9.23.5.1, 9.23.6.4, 9.23.8.1, 9.24.3.2, 9.25.2.2,
9.25.2.6, 9.25.2.7, 9.25.3, 10.1.1, 10.2.2, 11.1.3,
11.3.3, 11.3.10, 12.1.2, 13.2.7
**Owner's Budget for the Work**
**1.3.11**
Owner's Financial Capability
2.2.2, 12.1.2
**Owner's Liability Insurance**
**11.2**
**Owner's Loss of Use Insurance**
**11.3.3**
Owner's Relationship with Subcontractors
1.3.9, 9.19.2, 9.19.3, 9.19.4, 9.23.6.4, 10.2.2
**Owner's Right to Carry Out the Work**
**9.25.2.7**
**Owner's Right to Clean Up**
**9.20.3**
**Owner's Right to Perform Construction and to**
**Award Separate Contracts**
**9.20.1**
**Owner's Right to Stop the Work**
**9.25.2.6**
Partial Occupancy or Use
9.23.6.6, **9.23.8**, 11.3.1.5
**Patching, Cutting and**
**9.14**, 9.20.2.5
Patents
9.17
**Payment, Applications for**
9.21.3.7, 9.23.2, **9.23.3**, 9.23.4, 9.23.5, 9.23.6.3,
9.23.7, 10.1.9, 10.2.1
**Payment, Certificates for**
9.23.3.3, **9.23.4**, 9.23.5, 9.23.6.1, 9.23.6.6, 9.23.7,
10.1.1, 10.2.1, 10.2.3, 12.6
**Payment, Failure of**
9.23.5.1.3, **9.23.7**, 10.2.2, 12.5
Payment, Final
9.25.3, 9.26.1, 10.1.1, 10.1.4, 10.2, 11.1.2, 11.1.3,
11.4.1, 11.4.5, 12.6
**Payment Bond, Performance Bond and**
9.21.3.7.4, 9.23.6.7, 10.2.3, **11.4**, 11.4.9

**AIA Document A295™ – 2008.** Copyright © 2008 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by
U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in
severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at
13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
**User Notes:**                                                                                                              (1999859025)

**PAYMENTS**
**9.23**
**Payments, Progress**
9.23.3, **9.23.6**, 10.1.9, 10.2.3, 12.5, 13.1.3
Payments to Subcontractors
9.19.4.2, 9.23.5.1.3, 9.23.6.2, 9.23.6.3, 9.23.6.4,
9.23.6.7, 11.4.8
PCB
9.24.3.1
**Performance Bond and Payment Bond**
9.21.3.7.4, 9.23.6.7, 10.2.3, 11.4.9, **11.4**
**Permits, Fees, Notices and Compliance with Laws**
2.2.2, 3.13, **9.7**, 9.21.3.7.4, 9.24.2.2
**PERSONS AND PROPERTY, PROTECTION OF**
**9.14**
Polychlorinated Biphenyl
9.24.3.1
**Preliminary Design Program**
**1.3.1**, 5.1
**Preliminary Project Schedule**
**1.2.4**, 1.3.12, 5.1, 5.2; Exhibit F
**Product Data**, Definition of
**9.12.2**
**Product Data and Samples, Shop Drawings**
9.11, **9.12**, 9.26.5.2
**PROGRAMMING/CONCEPT DESIGN PHASE**
**5**
**Progress and Completion**
**9.22.2**, 9.23.8.1, 9.26.4.1, 10.1, 13.1.3
**Progress Payments**
9.23.3, **9.23.6**, 10.1.9, 10.2.3, 12.5, 13.1.3
**Project**, Definition of the
**1.3.2**
**Project Completion**
**10.1**
**Project Component Phase**
**1.3.1**
**Project Site**
**1.3.2**
Property Insurance
9.24.2.5, **11.3**
**PROTECTION OF PERSONS AND PROPERTY**
**9.24**
**Purpose**
**1.1**
Regulations and Laws
1.5, 3.1.1, 4.2.6, 9.1.2, 9.2.3, 9.6, 9.7, 9.23.6.4,
9.23.8.1, 9.24.2.2, 11.1, 11.4, 12.3, 12.4.1, 12.4.2,
12.5, 13.2.8, 13.4
Rejection of Work
9.5, 9.25.2.1, 9.26.4.2
Releases and Waivers of Liens
10.2.2
Representations
9.2.1, 9.5, 9.12.6, 9.20.2.2, 9.22.2.1, 9.23.3.3,
9.23.4.2, 9.23.5.1, 10.1.4, 10.2.1

Representatives
2.1.1, 3.1.1, 4.1.1, 9.9, 9.19.1.1, 9.19.1.2, 9.26.1,
9.26.2, 9.26.4.1, 12.1.1
Responsibility for Those Performing the Work
9.3.4, 9.18, 9.19.3, 9.20.1.3, 9.20.2, 9.20.3, 9.23.5.1,
9.24, 9.26.4.1
Retainage
9.23.3.1, 9.23.6.2, 9.23.8.1, 10.1.9, 10.2.2, 10.2.3
**Review of GMP Documents and Field Conditions**
**by Contractor**
1.4.1.1, **9.2**, 9.12.7, 9.20.1.3
Review of Contractor's Submittals by Owner,
Engineer and Architect
9.10.1, 9.10.2, 9.11, 9.12, 9.19.2, 9.20.1.3, 9.23.2,
9.26, 10.1.4
Review of Shop Drawings, Product Data and Samples
by Contractor
9.12
**Rights and Remedies**
1.9.9, 8.3, 9.5, 9.7.4, 9.15.2, 9.19.3, 9.19.4, 9.20.1,
9.20.3, 9.21.3.1, 9.23.5.1, 9.23.7, 9.24.2.5, 9.24.3,
9.25.2.2, 9.25.2.4, 9.25.2.6, 9.25.2.7, 9.26.4.2, **12.3**,
13.4
**Royalties, Patents and Copyrights**
**9.17**
Rules and Notices for Arbitration
13.4.1
**Safety of Persons and Property**
**9.24.2**, 9.24.4
**Safety Precautions and Programs**
9.3.1, 9.19.3, **9.24.1**, 9.24.2, 9.24.4, 9.26.2, 9.26.5.2
**Samples**, Definition of
**9.12.3**
**Samples, Shop Drawings, Product Data and**
9.11, **9.12**, 9.26.5.2
**Samples at the Site, Documents and**
**9.11**
**Schedule of Values**
**9.23.2**, 9.23.3.1
Schedules, Construction
9.10, 9.12.1, 9.12.2, 9.20.1.3, 13.1.5.2
**Schematic Design Documents**
**6.2**, 7.1, 7.2
**SCHEMATIC DESIGN PHASE**
**6**
Separate Contracts and Contractors
1.3.2, 6, 9.12.5, 9.14.2, 9.22.3.1, 9.25.1.2, 9.26.5.2,
11.4.7
**Services**
**1.3.6**
**Services Contracts**
**1.3.6**, 1.3.8
**Shop Drawings**, Definition of
**9.12.1**
**Shop Drawings, Product Data and Samples**
9.11, **9.12**, 9.26.5.2

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                            (1999859025)

Site, Use of
**9.13**, 9.20.1.1, 9.20.2.1
Site Inspections
9.2.2, 9.3.5, 9.7.1, 9.7.4, 9.23.4.2, 9.26, 10.2.1, 12.4
Site Visits, Architect's and Engineer's
9.7.4, 9.23.4.2, 9.23.5.1, 9.23.8.2, 9.26.4.1, 10.1.1,
10.2.1, 12.4
**Software and Data Exchange Protocols**
**1.5.2**
Special Inspections and Testing
9.25.2.1, 9.26.4.2, 12.4
**Specifications**, Definition of the
**1.3.4**
**Specifications, The**
**1.3.4**, 1.3.8, 1.4.2, 1.5, 4.2.6, 9.11, 9.17, 9.26.5.4
Statute of Limitations
12.6, 13.4.1.1
Stopping the Work
9.23.7, 9.24.3, 9.25.2.6
Stored Materials
9.20.2.1, 9.23.3.2, 9.24.2.1.2, 9.24.2.4, 11.4.1.4
**Subcontractor**, Definition of
**9.19.1.1**
**SUBCONTRACTORS**
**9.19**
Subcontractors, Work by
1.4.2, 9.3.4, 9.12.1, 9.19.2.3, 9.19.3, 9.19.4,
9.23.3.1.2, 9.23.6.7, 9.26.4.1
**Subcontractual Relations**
**9.19.3**, 9.19.4, 9.23.3.1.2, 9.23.6, 9.24.2.1, 10.2,
11.4.7, 11.4.8
**Submittals**
9.10, 9.11, 9.12, 9.19.2.1, 9.19.2.3, 9.21.3.7, 9.23.2,
9.23.3, 9.23.8.1, **9.26.5**, 10.1, 10.2.2, 10.2.3, 11.1.3
Submittal Schedule
9.10.2, 9.12.5, 9.26.5.2
**Subrogation, Waivers of**
9.20.1.1, **11.3.7**, 11.4.5
**Substantial Completion**
9.22.1.1, 9.22.1.2, 9.22.2.3, 9.23.4.2, 9.23.8.1, 9.25.2,
**10.1**, 10.2.3, 12.6
**Substantial Completion**, Definition of
**10.1.2**
Substitution of Subcontractors
9.19.2.3, 9.19.2.4
Substitution of Architect
3.1.3
Substitution of Engineer
3.1.3A
Substitutions of Materials
9.4.2, 9.5, 9.21.3.8
**Sub-subcontractor**, Definition of
**9.19.1.2**
Subsurface Conditions
9.7.4
**Successors and Assigns**
**12.1**

Superintendent
**9.9**, 9.24.2.6
**Supervision and Construction Procedures**
1.4.2, 4.2.6, **9.3**, 9.4, 9.20.1.3, 9.20.2.4, 9.21.1.3,
9.21.3.7, 9.22.2, 9.22.3.1, 9.23.4.2, 9.24, 9.25, 9.26.2,
9.26.5.2, 13.1.3
Surety
9.19.4.1.2, 10.1.9, 10.2.2, 10.2.3, 13.2.7
Surety, Consent of
10.2.2, 10.2.3
Surveys
2.2.5
**Suspension of the Work**
9.19.4.2
Suspension or Termination of the Contract
9.19.4.1.1, 11.4.9
**Taxes**
**9.6**, 9.21.3.7.4, 10.1.4.1
Termination, Owner-Contractor
9.19.4.1.1, 13.1.6
Termination of the Architect
3.1.3
Termination of the Engineer
3.1.3A
**Tests and Inspections**
9.1.2, 9.3.5, 9.23.4.2, 9.23.8.2, 9.24.3.2, 9.25.2.1,
9.26.4.1, 9.26.4.2, 10.1.1, 10.1.5, 10.2.1, 11.4.1.1,
**12.4**
**TIME**
**9.22**
**Time, Delays and Extensions of**
7.2.1, 9.2.4, 9.7.4, 9.19.2.3, 9.21.3.1, 9.21.4, **9.22.3**,
9.23.5.1, 9.23.7, 9.24.3.2, 9.24.4, 13.1.5, 13.2.5
Time Limits
2.1.5, 2.2, 9.2.2, 9.10, 9.11, 9.12.5, 9.15.1, 9.19.2,
9.19.3, 9.19.4, 9.20.2.4, 9.21.3, 9.21.4, 9.22.2, 9.23.2,
9.23.3.1, 9.23.3.3, 9.23.4.1, 9.23.5, 9.23.6, 9.23.7,
9.23.8, 9.25.2, 9.26, 10.1, 10.2, 11.1.3, 11.4.1.5,
11.4.6, 11.4.10, 12.4, 12.6, 13.1.2, 13.4
**Time Limits on Claims**
9.7.4, 9.24.2.8, **12.6**, 13.1.2
Title to Work
9.23.3.2, 9.23.3.3
Transmission of Data in Digital Form
1.5.2
**UNCOVERING AND CORRECTION OF WORK**
**9.25**
**Uncovering of Work**
**9.25.1**
Unforeseen Conditions, Concealed or Unknown
9.7.4, 9.22.3.1, 9.24.3
Unit Prices
9.21.3.3.2, 9.21.3.4
**Use of Drawings, Specifications and Other**
**Instruments of Service**
1.3.4, 1.3.6, 1.3.8, **1.5**, 9.2.2, 9.11, 9.17, 9.19.3,
9.26.4.4

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                (1999859025)

Init.

/

**10**

Exhibit 2
Page 30

**Use of Site**
9.1.3, 9.20.1.1, 9.20.2.1
**Values, Schedule of**
**9.23.2**, 9.23.3.1
Waiver of Claims by the Architect and the Engineer
12.3.2
Waiver of Claims by the Contractor
10.2.5, 11.4.7, 12.3.2, 13.1.6
Waiver of Claims by the Owner
9.23.8.3, 9.25.2.2.1, 10.2.3, 10.2.4, 11.4.3, 11.4.5,
11.4.7, 12.3.2, 13.1.6
Waiver of Consequential Damages
13.1.6
Waiver of Liens
10.2.2, 10.2.4
**Waivers of Subrogation**
9.20.1.1, 11.4.5, **11.3.7**
**Warranty**
**9.5**, 9.23.3.3, 9.23.8.1, 9.25.2.2, 10.1.1, 10.1.6, 10.2.4,
12.6.1

Weather Delays
13.1.5.2
**Work**, Definition of
**1.3.1**
Written Consent
1.5, 3.1.2, 9.4.2, 9.7.4, 9.12.8, 9.14.2, 9.23.3.2,
9.23.8.1, 10.1.9, 10.2.2, 10.2.3, 11.4.1, 12.1, 12.3.2,
13.4.4.2
Written Interpretations
9.26.4.3, 9.26.4.4
**Written Notice**
4.2.6, 9.3.1, 9.9, 9.12.9, 9.19.2.1, 9.22.2.2, 9.23.7,
9.24.2.2, 9.24.3, 9.25.2.2, 9.25.2.4, 9.25.2.6, 9.25.2.7,
10.2, 11.1.3, 11.4.6, **12.2**, 13.4.1
Written Orders
1.3.8, 9.9, 9.21, 9.22.2.2, 9.25.1, 9.25.2, 9.25.2.6,
11.4.9, 12.4.2, 13.1.2

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                                                    (1999859025)

**11**

Exhibit 2
Page 31

## ARTICLE 1   GENERAL PROVISIONS
### § 1.1 PURPOSE
The Owner, Architect, Engineer and Contractor have agreed to plan, design, and construct the Project in a collaborative environment following the principles of Integrated Project Delivery and to utilize Building Information Modeling to maximize the use of their knowledge, skills, and services for the benefit of the Project. The Architect, Engineer and Contractor will deliver the Project in the following phases, which may overlap: Programming/Concept Design, Schematic Design, Design Development, Construction Documents, Construction and Closeout.

### § 1.2 INITIAL INFORMATION
The Owner, Architect, Engineer and Contractor may rely on the Initial Information. Each, however, recognizes that such information may materially change and, in that event, the parties shall agree upon appropriate adjustments to the Architect's, Engineer's and Contractor's services and compensation, and the schedule. The Initial Information is as follows:

§ 1.2.1 The Owner's Preliminary Design Program for the Project:

Shire Regenerative Medicine Campus Basis of Design Rev. 4 dated June 20, 2012 as prepared by Architect and Engineer, including Owner's comments and resolution of outstanding issues.

§ 1.2.2 The Project's physical characteristics:
*(Paragraph deleted)*
The first phase of construction of Shire RM's new multi-building campus improvements to the Project Site may include up to  339,000 gross square feet of building improvements, comprised of  (a) an approximately 98,000 gross square feet four story office building on Lot 5 of the Project Site (the **"Phase 1 Office Building"**) and (b) a three story industrial/manufacturing building on Lot 9 of the Project Site (the **"Manufacturing Building,"**), comprising approximately 241,000 gross square feet of manufacturing, warehouse, distribution, lab and central utility space (plus approximately 39,000 gross square feet of space maintained in shell condition). The Project also entails 28 acres of site improvements, including a tunnel under the existing city street (Summers Ridge Road) between Lot 9 and Lot 5 of the Project Site.

§ 1.2.3 The Owner's Budget for the Work:
To be prepared and updated as the Contractor's Estimate and incorporated into the Contract Documents as Exhibit A – Guaranteed Maximum Price Amendment of the Contractor's A195 Agreement,

§ 1.2.4 The Owner's anticipated design and construction
*(Paragraphs deleted)*
schedule is set forth in Exhibit F  - Preliminary Project Schedule, which shall be  updated during the execution of Exhibit A - Guaranteed Maximum Price Amendment and incorporated into the Contract Documents as Exhibit F (the **"Project Schedule"**) of the Contractor's A195 Agreement.

§ 1.2.5 The Owner's requirements for accelerated or fast-track scheduling, or phased construction are set forth below:
As part of the Work of this Contract, the Owner will determine whether it will construct the office building on Lot 5 and the industrial/warehouse building on Lot 9 concurrently or in phases, based on Owner's fast-track scheduling requirements, if any, for any portion of the Project, the cost of phased construction and the anticipated construction schedule associated with the phased construction of the Project.

§ 1.2.6 Other Project information:

N/A

§ 1.2.7 The Owner identifies the following representative in accordance with Section 2.1.1:
    Marcus Webb
    Shire Regenerative Medicine, Inc.
    11095 Torreyana Road
    San Diego, CA  92121

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                    (1999859025)

Exhibit 2
Page 32

§ **1.2.8** The persons or entities, in addition to the Owner's representative, who are required to review submittals to the Owner are as follows:
*(Paragraph deleted)*
As determined by Owner from time to time and as indicated by written notice to Architect, Engineer and Contractor

§ **1.2.9** The Owner will retain the following consultants and Contractors:

*(Paragraphs deleted)*
N/A

§ **1.2.10** The Architect identifies the following representative in accordance with Section 3.1.1:

> Andrew S. Darragh
> Ferguson Pape Baldwin Architects, Inc.
> 4499 Ruffin Rd., Suite 300
> San Diego, CA 92123

§ **1.2.11** The Architect will retain the following consultants:
*(Paragraph deleted)*
   .1     Structural Engineer:

> Hope Engineering
> 1301 Third Avenue, Suite 300
> San Diego, CA  92101

   .2     Mechanical Engineer:

> N/A

   .3     Electrical Engineer:

> N/A

   .4     Other, if any:

> Civil Engineer:
> RBF Consulting
> 9755 Clairemont Mesa Blvd., Suite 100
> San Diego, CA  92124

> Geotechnical Engineer:
> Geocon, Inc.
> 6960 Flanders Drive
> San Diego, CA  92121

> Landscaping Architect:
> Nowell & Associates
> 2605 State Street
> San Diego, CA 92103

§ **1.2.12** The Contractor identifies the following representative in accordance with Section 4.1.1:

> Frank Jones
> DPR Construction
> 5010 Shoreham Place
> San Diego, CA 92122

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                              (1899859025)

13

Exhibit 2
Page 33

§ 1.2.13 The Contractor will retain the following consultants and Subcontractors to assist the Contractor in its performance of the Pre-GMP Services:

*(Paragraph deleted)*

Such other consultants that may be approved by Owner from time to time; provided that such Security Consultant and any other consultant retained by the Contractor shall be approved by the Owner, if at all, in advance of such retention by the Contractor, and only after consultation with the Owner regarding the proposed consultant.

§ 1.2.14 The Engineer identifies the following representative in accordance with Section 3.1.1:

Douglas C. Conrath
Clark, Richardson and Biskup Consulting Engineers, Inc.
2701 Loker Ave. West, Suite 130
Carlsbad, CA 92010

§ 1.2.15 The Engineer will retain the following consultants:

.1   Packaging Engineer:
P. Andrew Malcolm
P. Andrew Malcolm Consulting, Inc.
32 Carte Place
Pleasant Hill CA 94523

.2   Other, if any:
(i)   a Building Wind/Wake Consultant; (ii) a Voice, Data and A/V Consultant, and (iii) such other consultants and such other consultants that may be approved by Owner from time to time; provided that such Building Wind/Wake Consultant, Voice, Data and A/V Consultant and any other consultant retained by the Engineer (other than the Packaging Engineer) shall be approved by the Owner, if at all, in advance of such retention by the Engineer, and only after consultation with the Owner regarding the proposed consultant.

## § 1.3 BASIC DEFINITIONS
### § 1.3.1 THE WORK
The term "Work" means the construction and services required of the Contractor by the Guaranteed Maximum Price Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The term **"Preliminary Design Program"** means the program for design and development of the Project as set forth in Shire Regenerative Medicine Campus Basis of Design Rev. 4 dated June 20, 2012, as prepared by Architect and Engineer, including Owner comments and resolution of outstanding issues (as the same may be revised from time to time by Owner, Architect and Engineer). The term **"Project Component Phase"** means each physical phase of construction of less than the entire Project (specifically, the Office Building and related improvements on Lot 5 of the Project Site, and the Manufacturing Building on Lot 9 of the Project Site, as more particularly described in the Preliminary Design Program), which may include, but are not limited to, the construction of the underground tunnel between Lot 5 and Lot 9 and the site improvements to each of Lot 5 and Lot 9. The term **"Substantial Completion"** as applied to each Project Component Phase shall mean that the Work associated with the construction of the applicable building and all appurtenant improvements associated therewith is sufficiently complete in accordance with the GMP Documents so that the Owner can occupy or utilize such building for its intended use; and as applied to the entire Project, shall mean that the Work associated with the construction of all of the Project Component Phases and any additional Work of the Project is sufficiently complete in accordance with the GMP Documents so that the Owner can occupy or utilize all of the Project improvements for their intended uses.

### § 1.3.2 THE PROJECT
The Project consists of the whole of the Architectural Services, the MEP Services and the Work as that term is defined in Section 1.3.1 above and the professional services related thereto. The term **"Project Site"** means the Owner's ground leasehold premises consisting of all of Lot 5 and Lot 9 of Fenton Technology Park, located on Summers Ridge Road, in San Diego, California 92121. The Project Site is leased by the Owner from the Ground Lessor. The Owner has or will obtain all approvals and authorizations required under its ground lease agreement with Ground Lessor

**Init.**

**/**

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
**User Notes:**                                                                                          (1999859025)

**14**

Exhibit 2
Page 34

("**Ground Lease**") for the Owner's construction of the Project at the Project Site, which approvals are conditioned upon the right of the Owner to assign this Contract, and all of the Owner's rights and interests herein, and in the Project and the Drawings and Specifications and all other Instruments of Service, to the Ground Lessor and/or any mortgagee of Ground Lessor's fee interest in the Project Site, as herein provided.

### § 1.3.3 THE DRAWINGS

The Drawings are the graphic and pictorial portions of the Guaranteed Maximum Price Documents showing the design, location and dimensions of the Work, generally including Models, plans, elevations, sections, details, schedules and diagrams. Upon Owner's approval of the Construction Documents pursuant to Section 8.7, the "**Construction Drawings**" shall consist of the Drawings incorporated therein (as the same may be modified from time to time in accordance with (i) any field modifications approved by the Architect (in consultation with the Engineer, if such field modifications relate to the MEP Services) in accordance with Section 1.4.1.1 below, or (ii) Section 9.21 below), as updated and maintained by the Architect and the Engineer in electronic "CAD" format at the Data Site in accordance with Section 1.5.2 (printed copies of which shall be maintained by Contractor at the Project Site). No field changes or other on-site annotations to the hard copies of the Construction Documents maintained by the Contractor at the Project Site shall be deemed to have been incorporated into the GMP Documents, or considered effective criteria for the Contractor's performance of the Work unless such field changes or annotations to the Project Site documents have been approved by Architect or Engineer (and Owner, if required by the GMP Documents) and have been incorporated into the electronic Construction Documents maintained by Architect and Engineer at the Data Site in accordance with Section 1.5.2.

### § 1.3.4 THE SPECIFICATIONS

The Specifications are that portion of the Guaranteed Maximum Price Documents consisting of the written requirements for materials, equipment, systems, standards and workmanship for the Work, and performance of related services. Upon Owner's approval of the Construction Documents pursuant to Section 8.7, the "**Construction Specifications**" shall consist of the Specifications incorporated therein (as the same may be modified from time to time in accordance with (i) any field modifications approved by the Architect (in consultation with the Engineer, if such field modifications relate to the MEP Services) in accordance with Section 1.4.1.1 below, or (ii) Section 9.21 below), as updated and maintained by the Contractor at the Data Site in accordance with Section 1.5.2 (printed copies of which shall be maintained by Contractor at the Project Site).

### § 1.3.5 BUILDING INFORMATION MODEL

The Building Information Model (Model(s)), is a digital representation of the physical and functional characteristics of the Project. The term "Model" may be used to describe a single model or multiple models used in the aggregate. "Building Information Modeling" (BIM) means the process and technology used to create the Model. . The terms "Model Element" and "Level of Development" (or "LOD") shall have the meanings given to them in the Building Information Modeling Protocol Exhibit to the Owner-Architect Agreement (AIA Document E202™ - 2008 and SRM BIM Execution Plan Rev. 1.1. dated July 27, 2012, as updated from time to time by the Parties acting in good faith).

### § 1.3.6 INSTRUMENTS OF SERVICE

Instruments of Service are representations, in any medium of expression now known or later developed, of the tangible and intangible creative work provided by the Architect, the Engineer and their respective consultants, the Contractor, Subcontractors, or Sub-subcontractors under their respective agreements. Instruments of Service may include, without limitation, studies, surveys, Models, sketches, drawings, specifications, and other similar materials. The Instruments of Service are not included in the GMP Documents unless and until incorporated into the Construction Documents as provided in these General Conditions. All Instruments of Service shall be submitted by Architect and Engineer in hard copy and electronic format, and shall conform to the Data Site requirements of Section 1.5.2. The "**Services**" shall consist of the services of the Architect to be provided pursuant to the Owner-Architect Agreement (sometimes referred to as the "**Architectural Services**") and the services of the Engineer to be provided pursuant to the Owner-Engineer Agreement (sometimes referred to as the "**MEP Services**"). The "**Services Contracts**" shall mean the Contracts between the Owner and Architect ("the **Architectural Services Contract**") and between the Owner and Engineer (the "**MEP Services Contract**"), in order to differentiate such Services Contracts from the GMP Documents as an independent agreement between the Owner and the Contractor.

### § 1.3.7 THE GUARANTEED MAXIMUM PRICE

The Guaranteed Maximum Price represents an amount that the Contract Sum shall not exceed as agreed to by the Owner and Contractor.

Init.

/

**AIA Document A295™ – 2008.** Copyright © 2008 by The American Institute of Architects. All rights reserved. **WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410326020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                     (1999859025)

**15**

Exhibit 2
Page 35

§ 1.3.8 THE GUARANTEED MAXIMUM PRICE DOCUMENTS

The Guaranteed Maximum Price Documents ( or **"GMP Documents"**) consist of the agreement between the Owner and Contractor for Integrated Project Delivery (AIA Document A195 -2008) (**"Owner-Contractor Agreement"**), General, Supplementary and other Conditions of the Contract (Conditions of the Contract), and the Construction Drawings, Construction Specifications, and Modifications issued after execution of the Guaranteed Maximum Price Amendment to the A195 Owner-Contractor Agreement (in the form attached as Exhibit A hereto). **"Modifications"** include each of the following: (1) a written amendment to the Contract signed by both parties, (2) a Change Order, (3) a Construction Change Directive or (4) a written order for a minor change in the Work issued by the Architect.

§ 1.3.9 THE CONTRACTS

As between the Owner and the Contractor, the GMP Documents comprise the Contract for Integrated Project Delivery. As between the Owner and the Architect, the Architectural Services Contract for Integrated Project Delivery shall consist of all of the GMP Documents, except that the Agreement between the Owner and Architect for Integrated Project Delivery (AIA Document B195 -2008) (**"Owner-Architect Agreement"**), shall be substituted for the Owner-Contractor Agreement. As between the Owner and the Engineer the -MEP Services Contract for Integrated Project Delivery shall consist of all of the GMP Documents, except that the Agreement between the Owner and Engineer for Integrated Project Delivery (AIA Document B195 -2008) (**"Owner-Engineer Agreement"**) shall be substituted for the Owner-Contractor Agreement. All references herein to "the Contract" or "this Contract" shall mean the documents comprising the Contract for each of Contractor, Architect and Engineer as set forth in this Section 1.3.9, respectively. Each Contract represents the entire and integrated agreement between the Owner and the Contractor, the Owner and the Architect and the Owner and the Engineer, respectively, and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The GMP Documents between the Owner and the Contractor shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants, (2) between the Owner and a Subcontractor or a Sub-subcontractor, (3) between the Owner and the Architect or the Architect's consultants (except to the extent such GMP Documents are incorporated into the Contract between Owner and Architect as provided in this Section 1.3.9), (4) between the Owner and the Engineer or the Engineer's consultants (except to the extent such GMP Documents are incorporated into the Contract between Owner and Engineer as provided in this Section 1.3.9), or (5) between any persons or entities other than the Owner and the Contractor. Similarly, the Owner-Architect Agreement shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Architect or the Architect's consultants, (2) between the Architect and a Subcontractor or a Sub-subcontractor, or (3) between the Architect and the Engineer or the Engineer's consultants, or (4) between any persons or entities other than the Owner and the Architect; and the Owner-Engineer Agreement shall not be construed to create a contractual relationship of any kind (1) between the Contractor and the Engineer or the Engineer's consultants, (2) between the Engineer and a Subcontractor or a Sub-subcontractor, or (3) between the Engineer and the Architect or the Architect's consultants, or (4) between any persons or entities other than the Owner and the Engineer.

In the event of any conflict among the GMP Documents (or among the documents comprising each of the Services Contracts), the Contract shall be construed according to the following priorities:

| | |
|---|---|
| Highest Priority: | Any Modifications |
| Second Priority: | Owner-Contractor Agreement (or the Owner-Architect Agreement or the Owner-Engineer Agreement, as applicable; each, an "Agreement") |
| Third Priority: | Exhibits and Addenda to the Agreement, with later dated Exhibits and Addenda to take precedence |
| Fourth Priority: | These General Conditions |
| Fifth Priority: | Exhibits and Addenda to these General Conditions, including the OCIP Manual as incorporated into Appendix 3 by reference |
| Sixth Priority: | The most recent Construction Documents (as the same may be modified from time to time in accordance with this Contract), with given dimensions taking precedence over scaled measurements and large scale drawings over small scale drawings. |

Notwithstanding the foregoing, where the terms and conditions of these General Conditions are expressly referred to or incorporated in any of the GMP Documents (or in any of the Services Contracts) of higher priority, such

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                          (1999859025)

16

Exhibit 2
Page 36

incorporated terms and conditions of these General Conditions shall have the same priority as the document into which they are incorporated.

### § 1.3.10 THE CONSTRUCTION DOCUMENTS
The Construction Documents consist of the Construction Drawings and Construction Specifications and any related Instruments of Service incorporated therein, as developed by the Architect and Engineer in coordination with the Contractor prior to the completion of the Construction Documents Phase, as necessary to construct the Project.

### § 1.3.11 OWNER'S BUDGET FOR THE WORK
The Owner's Budget for the Work is the amount the Owner will budget, (as such budget will be updated upon completion of each design phase of the Work until the Guaranteed Maximum Price Amendment is executed by Owner and Contractor) to construct all elements of the Project designed or specified by the Architect and the Engineer and includes contractors' general conditions costs, overhead and profit. The Owner's Budget for the Work does not include the compensation of the Architect and Engineer, the costs of the land, rights-of-way, financing, contingencies for changes in the Work or other costs that are the responsibility of the Owner.

### § 1.3.12 INITIAL DECISION MAKER
For the purposes of rendering initial decisions on Claims in accordance with Section 13.2, the Architect will serve as the Initial Decision Maker for those initial decisions relating to all portions of the Work other than the construction or installation of the Major Project Components designed by the Engineer as part of the MEP Services, and the Engineer will serve as the Initial Decision Maker for initial decisions relating to the construction or installation of Major Project Components designed by the Engineer as part of the MEP Services, unless otherwise indicated in the Owner-Contractor Agreement.. The term **"Major Project Components"** means those components of the Project identified as part of the milestones for completion of the Work in the Preliminary Project Schedule.

### § 1.3.13 INTEGRATED PROJECT DELIVERY
Integrated Project Delivery is a project delivery approach that integrates people, systems, business structures and practices into a process that collaboratively harnesses the talents and insights of all participants to reduce waste and optimize efficiency through all phases of design, fabrication and construction.

### §1.3.14 ADDITIONAL DEFINITIONS
§1.3.14.1 When the words 'approved', 'satisfactory', 'proper' or 'as directed' are used, approval by the Owner shall be understood to be required.

§1.3.14.2 The terms 'directed', 'required' 'permitted', 'ordered' 'designated', 'prescribed,' 'interpreted' and words of like import shall imply the direction, requirements, permission, designation, order or interpretation of the Owner through the Owner's authorized representative.

§1.3.14.3 When the word 'provide', including derivatives thereof, is used, it shall mean to fabricate properly, complete, transport, deliver, install, erect, construct, test and furnish all labor, materials, equipment, apparatus or appurtenances and all items and expenses necessary to complete the Project properly, in place, and ready for operation or use under the terms of the Reference Specifications as of the date of Substantial Completion of the Work.

§1.3.14.4 The terms 'knowledge', 'recognize' and 'discover', and their respective derivatives, and similar terms in the GMP Documents as used in reference to the Contractor, shall be interpreted to mean that which the Contractor knows (or should know), recognizes (or should recognize) and discovers (or should discover) in exercising the care, skill and diligence of a commercially reasonable contractor in similar circumstances. The expression 'reasonably inferable,' and similar terms in the GMP Documents, shall be interpreted to mean reasonably inferable by a contractor familiar with the Project Site and exercising the care, skill and diligence a commercially reasonable contractor in similar circumstances. Similar definitions shall be applicable to the Architect and the Engineer with respect to such terms in the Services Contracts. Similar interpretations shall apply to the Architect and Engineer with respect to the Services to be provided pursuant to their respective Service Contracts.

### § 1.4 CORRELATION AND INTENT OF THE GMP DOCUMENTS AND THE SERVICES CONTRACTS
§ 1.4.1 The intent of the GMP Documents is to include all items necessary for the proper execution and completion of the Work by the Contractor. The intent of the respective Services Contracts between the Owner and the Architect and between the Owner and the Engineer is to include all items necessary for the proper execution and delivery of their

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                    (1999859025)

17

Exhibit 2
Page 37

respective Services as required for the proper design of the Work for execution and completion by the Contractor. The GMP Documents are complementary, and what is required by one shall be as binding as if required by all (subject, however, to the rules of priority of Section 1.3.8 above with respect to any conflicts among such documents); performance by the Contractor shall be required only to the extent consistent with the GMP Documents and reasonably inferable from them as being necessary to produce the indicated results. The Services Contracts between the Owner and the Architect and the Engineer, respectively, are complementary, and what is required by one shall be as binding as if required by all (subject, however, to the rules of priority of Section 1.3.8 above with respect to any conflicts among such documents); performance by the Architect or Engineer shall be required only to the extent consistent with their respective Services Contracts with the Owner and as reasonably inferable from them as being necessary to produce the indicated result. All Services mentioned in the Services Contracts shall only be performed by the Architect or Engineer, as indicated therein, except to the extent that any of the Services Contracts specifically indicates that the applicable Services are to be performed by others. All Work mentioned or indicated in the GMP Documents shall only be performed by the Contractor unless the GMP Documents specifically indicate that such Work is to be done by others. In the event of inconsistencies regarding the criteria for the Contractors finished Work within or between parts of the GMP Documents, the Contractor shall (a) provide the better quality or greater quantity of Work, or (b) comply with the more stringent requirements, in accordance with the Owner's interpretation, which shall be reflected in the Construction Documents incorporated into the GMP Documents in accordance with Sections 1.3.3 and 1.3.4 above. The terms and conditions of this Section 1.4.1, however, shall not relieve the Contractor of any obligations set forth in paragraphs 9.2 and 9.7.

§ 1.4.1.1 No extra charge or compensation will be allowed in excess of the GMP on account of any field modifications to the Construction Drawings resulting from minor differences between actual dimensions, as determined by Contractor's field measurements at the Project Site, and the dimensions indicated on the Construction Drawings if such minor differences do not prevent Contractor from installing equipment or materials substantially consistent with those specified by the GMP Documents; provided that no such field modification shall be deemed to be incorporated into the GMP Documents until such proposed modification has been submitted by the Contractor to the Architect (and the Engineer, if the field modification is applicable to the MEP Services) and has been confirmed by the Architect (and Engineer, as applicable) for incorporation into the GMP Documents. If the Contractor proceeds with any portion of the Work associated with a field modification before the Architect (or Engineer, if applicable) has confirmed the proposed field modification for incorporation into the GMP Documents (or before such field modification is deemed confirmed as hereinafter provided), then the Contractor shall be solely responsible for the additional cost and expense of any Modifications to the Project and the GMP Documents arising out of any errors in the Contractor's field modifications to the Construction Documents, without any increase in the Guaranteed Maximum Price. The Architect (and the Engineer, if applicable) shall promptly review and approve or reasonably disapprove the Contractor's proposed field modification, and prepare, and make available to the parties as provided in Section 1.5.2, revised GMP Documents to reflect the actual site conditions within a reasonable period of time after receipt of the Contractor's proposed field modification to the hard copies of the Construction Drawings maintained by Contractor at the Project Site, provided that such reasonable period of time shall not exceed 10 days without Owner's prior written consent, which shall not be unreasonably withheld, conditioned or delayed; and further provided that if (a) additional time is reasonably required by the Architect (or Engineer, as applicable) to perform the design work associated with such proposed field modification and (b) a written request for an extension of such 10-day period for the additional time reasonably required to revise the GMP Documents is promptly submitted to the Owner (not more than 5 days after receipt of the Contractor's proposed field modifications), then Owner's failure to deliver its written consent or to provide written notice of its reasons for withholding consent to such additional time requested by Architect or Engineer within 5 working days after the Owner's receipt of such request shall be deemed Owner's consent to the additional time requested by the Architect or Engineer, as applicable. Architect's (or Engineer's, if applicable to the MEP Services) failure to prepare and make available to Contractor revised electronic GMP Documents within such reasonable time period shall be deemed Architect's (and Engineer's, as applicable) approval of the Contractor's proposed field modification, in which case Contractor may proceed with construction of the Work in accordance with the hard copies of the Construction Drawings, modified by the proposed field modification submitted to the Architect for confirmation in accordance with this Section 1.4.1.1. When the Contractor's proposed field modifications are approved or deemed approved by the Architect (and Engineer, if required), or when any alternative changes to the Construction Drawings are timely delivered to the Contractor by the Architect (or the Engineer, if applicable), the Contractor shall cause the Construction Drawings maintained at the Project Site to be modified and annotated in accordance with good practice to incorporate such approved or deemed approved field modification.

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                           (1999859025)

Exhibit 2
Page 38

§ 1.4.1.2 Where the Work is to fit with existing conditions or work to be performed by others (including, without limitation, existing utilities at the Project Site), the Contractor shall fully and completely join the Work with such conditions or work, unless otherwise specified.

§ 1.4.2 Neither organization of the Specifications into divisions, sections and articles, arrangement of Drawings, organization of the Model, or the issuance of separate Models shall control the Contractor in dividing the Work among Subcontractors or in establishing the extent of Work to be performed by any trade.

§ 1.4.3 Unless otherwise stated in the GMP Documents and the Services Contracts, words that have well-known technical or construction industry meanings are used in the GMP Documents and the Services Contracts in accordance with such recognized meanings. Where no explicit quality or standards for materials or workmanship are established for the Work in the GMP Documents or the Services Contracts, such Work is to be of good quality for the intended use, consistent with the quality of the surrounding Work and the Construction Specifications of the GMP Documents generally (and the Services shall be performed in a manner consistent with similar standards for the design of the Work).

§ 1.4.4 CAPITALIZATION
Terms capitalized in these General Conditions include those that are (1) specifically defined, (2) the titles of numbered articles or (3) the titles of other documents published by the American Institute of Architects.

§ 1.4.5 INTERPRETATION
In the interest of brevity, words such as "all" and "any" and articles such as "the" and "an" may be omitted, but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

§ 1.5
(Paragraphs deleted)
OWNERSHIP AND USE OF DRAWINGS, SPECIFICATIONS AND OTHER INSTRUMENTS OF SERVICE
(Paragraph deleted)
§ 1.5.1 All original Drawings and Specifications, and all other Instruments of Service, for the Integrated Project Delivery, including documents provided in electronic media, or created by the Architect or the Engineer, or any of their respective consultants pursuant to their performance of the Services, or by the Contractor or any of the Subcontractors, in connection with the performance of the Work (excluding those Instruments of Service and other documents provided in electronic media and related software that are included in the Contractor Property, as such term is defined in Section 3.2 of the Owner-Contractor Agreement), are Owner's sole and exclusive property and shall be returned to Owner upon final payment, in good order and marked currently by the Contractor to indicate any "as-built" modifications, changes due to field conditions, and selections made during construction as provided for in this Contract, or upon any earlier termination of the Contract or abandonment of the Project prior to Completion, subject to the terms and conditions of Section 1.5.1.2 below. The Architect, Engineer, the Architect's and Engineer's consultants, Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are authorized, solely and exclusively for use in completion of the Project, to use and reproduce the Instruments of Service provided to them. All copies made under this authorization shall bear the copyright notice, if any, shown on the Instruments of Service. The Architect, Engineer, Architect's and Engineer's consultants, Contractor, Subcontractors, Sub-subcontractors, and material or equipment suppliers may not use another author's Instruments of Service on other projects or for additions to this Project without the specific written consent of the Owner and the author of the Instruments of Service.

§ 1.5.1.1 The Architect, Engineer and Contractor shall utilize a Model as Instruments of Service to the greatest extent practicable and pursuant to Section 1.5.2. The responsibility for Model Management shall be indicated in AIA Document E202-2008 Building Information Modeling Protocol Exhibit included in the Architects', Engineers', and Contractors' respective Contracts.

§ 1.5.1.2 The Contractor may retain a copy of each of the Instruments of Service provided by Owner or created in connection with the performance of the Work, except that upon request of Owner, The Contractor shall return all copies of all Instruments of Service that are Confidential Information, as defined in Section 12.15 below, and shall thereafter retain a copy of such Confidential Information Instruments of Service only to the extent required by the law of the Project Site.

Init.
/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                   (1999859025)

Exhibit 2
Page 39

§ 1.5.1.3 Neither the Architect nor the Engineer, nor the Contractor nor any Subcontractor or other individual or entity performing Work on behalf of Contractor (excluding, however, those Instruments of Service and other documents provided in electronic media and related software that are included in the Contractor Property, as such term is defined in Section 3.2 of the Owner-Contractor Agreement), shall reuse any Drawings, Specifications, or Instruments of Service, or copies thereof for any purpose other than as necessary for the performance of Work on the Project, except and only to the extent that Owner has provided express written consent for such use.

§ 1.5.2 SOFTWARE AND DATA EXCHANGE PROTOCOLS
The Owner, Architect, Engineer and Contractor shall, at the earliest practical moment, meet and delineate the types of software to be used on the Project and establish protocols, standards and tolerances as may be required for the proper execution of the Work, for the purposes of electronic submission and retention of all Instruments of Service to be provided by the Architect, Engineer and their respective agents and consultants, along with engineering data, samples, and the Contractor's shop drawings, if any (the "**Data**"). The Owner, Architect, Engineer and Contractor shall work together to establish the permitted uses for all digital information, including the Model, to be exchanged on the Project. The Contractor shall maintain the Data available for secure internet access by the Owner, Engineer and Architect, and their respective representatives and consultants, Contractor, its Subcontractors and Sub-subcontractors and their respective representatives, in its current approved form, throughout the design and construction of the Project (the "**Data Site**"). Files containing electronic media format of text, data, graphics or other information are furnished exclusively for the convenience of Contractor, and any conclusion or information obtained or derived therefrom that is inconsistent with the field copies of the Instruments of Service will be at Contractor's sole risk (except as otherwise provided in Section 1.4.1.1 above). Neither Owner, Architect nor Engineer makes any representation as to the long-term compatibility, usability, quality or readability of documents resulting from the use of electronic media. Contractor shall be solely responsible for maintaining all necessary licenses on the software associated with the electronic storage and internet access at the Data Site, and shall be responsible to the other parties for any violation of copyright associated with any claims of their unlicensed use of such copyrighted materials pursuant to their access to the Data Site.

§ 1.6 COORDINATION
The Owner, Architect, Engineer and Contractor shall coordinate the services provided by one another's consultants, subconsultants, contractors and Subcontractors with respect to the Integrated Project Delivery. Upon request, the Owner, Architect, Engineer and Contractor shall furnish copies of the scopes of services in the services contracts they hold with respect to the Project. The Owner, Architect and Engineer shall require that their respective consultants and contractors (and the Contractor shall require that its consultants and Subcontractors performing any design services pursuant to any design-build elements of the Work) maintain professional liability insurance and other liability insurance, as appropriate to the services provided. To the extent that Owner engages other contractors to perform work or services at the Project Site, Contractor shall perform all of the Work of this Contract in a manner that maintains the continuity and progress of the Project, including all subcontracts. Contractor shall not unreasonably delay, disrupt, interfere with, or otherwise retard the progress of any work on or about the Project Site which may be conducted under other contracts entered into by Owner or the Ground Lessor with third party contractors. Contractor shall inspect and promptly report to Owner any delays, defects, or deficiencies in any other contractor's work.

ARTICLE 2   OWNER
§ 2.1 GENERAL
§ 2.1.1 The Owner is the person or entity identified as such in this document and is referred to as if singular in number. The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. The term "Owner" means the Owner or the Owner's authorized representative.

§ 2.1.2 The Owner shall furnish information or services required of the Owner by the GMP Documents in a timely manner. The Owner shall also furnish any other information or services under the Owner's control and relevant to the Architect and Contractor's performance with reasonable promptness after receiving the written request for such information or services.

§ 2.1.3 Except as expressly provided in their Services Contracts or in the GMP Documents, respectively, and with the exception of information that is publicly available (including, without limitation, requirements of law applicable to the Project) or which is otherwise reasonably capable of determination from their own respective physical inspections of the Project Site, and only to the extent such information is not contradicted by information obtained from other

Init.

_l_

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                (1999859025)

Exhibit 2
Page 40

sources, the Architect, Engineer and Contractor shall be entitled to rely on the accuracy and completeness of information furnished by the Owner. Owner represents that to the best of its knowledge it has fully disclosed to Architect, Engineer and Contractor any information that Owner knows or has reason to know concerning (a) encumbrances on Owner's and Ground Lessor's title to the Project Site and restrictions of record relating to use of the Project Site, as such matters are disclosed by Owner's leasehold title insurance policy commitment, and (b) any rights of surface stormwater drainage from adjacent properties and subsurface ground and water conditions, including but not limited to subsurface geology, groundwater elevations, and the existence of hazardous materials at the Project Site as of the effective date of this Contract. Any and all reports studies surveys, assessments and other information which has been or may be provided by the Owner to the Architect, Engineer or Contractor, and which was prepared by or for anyone other than the Owner, regarding the existing conditions of the Project Site, are being made available to the Architect, Engineer and Contractor as being correct and complete to the actual knowledge of the Owner, without any independent inquiry or investigation, and without any warranty. express or implied, regarding the accuracy or completeness of such information Contractor hereby acknowledges that neither Owner nor Ground Lessor has made or will make any investigations of subsurface characteristics or soil conditions of the Project Site (nor any subjacent soil conditions on adjacent properties), and any such information required for the performance of the Work by the Architect, Engineer and Contractor shall be obtained by the Architect pursuant to the Architect's retention of the geotechnical engineer specified in Section 1.2.11.4 above as part of the Architectural Services.

§ 2.1.4 The Owner shall provide prompt written notice to the Architect, Engineer and Contractor if the Owner becomes aware of any fault or defect in the Project that has not been similarly disclosed to the Architect, Engineer and Contractor (or by any of them to the others or by an independent source), including errors, omissions or inconsistencies in the Instruments of Service.

§ 2.1.5 The Owner has previously provided, or will provide, to the Architect, Engineer and Contractor such information as is necessary and relevant to evaluate, give notice of, or enforce mechanic's lien rights against Owner's ground leasehold interest in the Project Site. Owner shall promptly notify the Architect, Engineer and Contractor if there is any change to the Owner's interest in the Project Site.

§ 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER
§ 2.2.1 The Contractor, Architect and Engineer hereby (i) acknowledge that the Owner has provided information regarding the Owner's requirements for and limitations on the Project as a basis for the Preliminary Design Program, and (ii) agree that Owner shall have the right to provide additional information, and modify any information previously provided, regarding such requirements for and limitations on the Project as a basis for the Preliminary Design Program. The Owner shall notify the Architect and Engineer of any changes in the Owner's objectives, constraints, and criteria, including schedule, space requirements and relationships, flexibility, expandability, special equipment, systems and site requirements for the Project.

§ 2.2.2 INTENTIONALLY OMITTED.

§ 2.2.3 Upon completion of the Schematic Design Phase, the Owner, with the support of the Architect, Engineer and the Contractor shall establish a preliminary budget for the Work. Until the Budget for the Work is incorporated into the Contract Documents in accordance with Article 6, Owner shall periodically notify the Architect, Engineer and Contractor of any updates to the Owner's preliminary Budget for the Work. If, following the incorporation of the Budget for the Work into the Contract Documents, the Owner determines that a change to the Project's scope or the quality of the Work is required which will significantly increase or decrease the Budget for the Work the Owner shall notify the Architect, Engineer and Contractor, who shall thereafter agree to a corresponding change in the Budget for the Work.

§ 2.2.4 Except for permits and fees that are the responsibility of the Contractor under the GMP Documents, including those required under Section 9.7.1, the Owner shall secure and pay for necessary approvals, easements, assessments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

§ 2.2.5 The Architect, Engineer and Contractor acknowledge their receipt of the ALTA/ACSM Land Title Survey of the Project Site, dated June 26, 2012, as prepared by the Civil Engineer set forth at Section 1.2.11.5 above, and confirm that such survey is satisfactory for their respective requirements under this Contract.

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                       (1999859025)

Exhibit 2
Page 41

§ 2.2.6 The Architect shall, as part of the Services to be provided by Architect pursuant to the Architect's Service Contract, and subject to reimbursement by the Owner as provided in such Contract, engage the Geotechnical Engineer specified in Section 1.2.11.2 to furnish services of geotechnical engineers as the Architect, the Engineer and the Contractor reasonably determine to be required for the Work of the Project, which may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, seismic evaluation, ground corrosion tests and resistivity tests, including necessary operations for anticipating subsoil conditions, with written reports and appropriate recommendations. Notwithstanding the Architect's engagement of the Geotechnical Engineer, the Contractor shall, as part of the Contractor's performance of the Work included in the Guaranteed Maximum Price, in a manner consistent with the practices of reasonably prudent contractors under similar circumstances: (a) verify the location (prior to performing any Work of construction at the Project Site) all underground utility lines, telephone company lines and cables, sewer lines, water pipes, gas lines and electrical lines of the Project Site that may be affected by the Work; and (b) notify the Architect of any soils or groundwater conditions discovered at the Project Site during the course of the Work that are reasonably inferable as being inconsistent with the Specifications for the building foundations and other site improvements for the purpose of building structural integrity, the safe and effective operation of the site improvements or the prevention of groundwater intrusion into the building improvements.

§ 2.2.7 To the extent that (i) any tests, inspections and reports required by law for the performance of the Services by the Architect or the Engineer, or the Contractor's performance of the Work, and (ii) such tests, inspections and reports are expressly included in the Additional Services of a Services Contract or Owner-Contractor Agreement, respectively, the Owner shall furnish such test, inspection or report, either independently or as an Additional Service as otherwise agreed to by the Owner and the party requiring such test, inspection or report .

§ 2.2.8 The Owner shall furnish all legal, insurance and accounting services, including auditing services, that may be reasonably necessary at any time for the Project, as determined by the Owner in its sole and absolute discretion to meet the Owner's needs and interests.

ARTICLE 3   ARCHITECT
§ 3.1 GENERAL
§ 3.1.1 The Architect is the person or entity identified as such in this document and is referred to as if singular in number. The Architect shall be lawfully licensed to practice architecture or an entity lawfully practicing architecture in the jurisdiction where the Project is located. The Architect shall designate in writing a representative who shall have express authority to bind the Architect with respect to all matters related to the Project; provided that no change shall be made to the authorized representative of Architect identified in Section 1.2.10 without Owner's prior written approval, which shall not be unreasonably withheld. The term "Architect" means the Architect and the authorized representative.

§ 3.1.2 Duties, responsibilities and limitations of authority of the Architect as set forth in this document shall not be restricted, modified or extended without written consent of the Owner and Architect. Such consent shall not be unreasonably withheld by either of them.

§ 3.1.3 If the employment of the Architect is terminated, the Owner shall employ a successor architect as to whom neither the Contractor nor the Engineer has made reasonable and timely objection (as hereinafter provided) and whose status under the GMP Documents shall thereafter be that of the Architect. The Owner, as soon as practicable after any termination of the Architect, shall furnish in writing to the Contractor and the Engineer the name and qualifications of a proposed successor architect. The Contractor and the Engineer shall each have 7 days to reply to the Owner in writing stating either (1) that the Contractor or Engineer, as applicable, has a reasonable objection to the proposed successor architect, or (2) that the Contractor or Engineer, as applicable, reasonably requires additional time to review the successor architect's qualifications as a replacement Architect (but not to exceed 3 additional days). Failure of the Contractor or the Engineer to reply within such 7 day period (or within the 3 day period following any timely extension thereof) shall constitute notice of no reasonable objection by the person failing to timely reply.

§ 3.2 ARCHITECT'S GENERAL SERVICES
§ 3.2.1 The Architect shall assist the Owner and the Contractor in establishing a list of prospective Subcontractors for the Project.

Init.
/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                        (1999859025)

Exhibit 2
Page 42

§ **3.2.2** The Architect shall manage the Architect's services, consult with the Owner, Engineer and Contractor, research applicable design criteria, attend Project meetings, and report Project progress to the Owner.

§ **3.2.3** The Architect shall be entitled to rely on the accuracy and completeness of the Engineer's Model Elements (as that term is defined in the Services Documents) and the Contractor's Estimates, as that term is defined in Section 4.2.3, as the Architect progresses with the preparation of the Schematic Design, Detailed Design and Construction Documents. The Architect shall prepare, as an Additional Service, revisions required due to inaccuracies or incompleteness in the Contractor's Estimates. The Architect shall review the Engineer's Model Components and the Contractor's Estimates solely for the Architect's guidance in completion of its services, however, the Architect shall report to the Owner any material inaccuracies and inconsistencies noted during any such review.

§ **3.2.4** The Architect shall, at appropriate times, contact the governmental authorities required to approve the GMP Documents. In designing the Project, the Architect shall respond to applicable design requirements imposed by such governmental authorities.

§ **3.2.5** The Architect shall assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project. The Architect shall generate documents suitable for submission to the necessary governmental authorities.

**ARTICLE 3A   ENGINEER**
§ **3.1A GENERAL**
§ **3.1.1A** The Engineer is the person or entity identified as such in this document and is referred to as if singular in number. The Engineer shall be lawfully licensed as a professional engineer or an entity lawfully providing the engineering Services required by the Engineer's Services Contract in the jurisdiction where the Project is located. The Engineer shall designate in writing a representative who shall have express authority to bind the Engineer with respect to all matters related to the Project; provided that no change shall be made to the authorized representative of Engineer identified in Section 1.2.14 without Owner's prior written approval, which shall not be unreasonably withheld. The term "Engineer" means the Engineer and the authorized representative.

§ **3.1.2A** Duties, responsibilities and limitations of authority of the Engineer as set forth in this document shall not be restricted, modified or extended without written consent of the Owner and Engineer. Such consent shall not be unreasonably withheld by either of them.

§ **3.1.3A** If the employment of the Engineer is terminated, the Owner shall employ a successor engineer as to whom the Contractor or the Architect has not made reasonable and timely objection (as hereinafter provided) and whose status under the GMP Documents shall thereafter be that of the Engineer. The Owner, as soon as practicable after any termination of the Engineer, shall furnish in writing to the Contractor and the Architect the name and qualifications of a proposed successor engineer. The Contractor and the Architect shall each have 7 days to reply to the Owner in writing stating either (1) that the Contractor or Architect, as applicable, has a reasonable objection to the proposed successor engineer, or (2) that the Contractor or Architect, as applicable, reasonably requires additional time to review the successor engineer's qualifications as a replacement Engineer (but not to exceed 3 additional days). Failure of the Contractor or the Architect to reply within such 7 day period (or within the 3 day period following any timely extension thereof) shall constitute notice of no reasonable objection by the party failing to timely reply.

§ **3.2A ENGINEER'S GENERAL SERVICES**
§ **3.2.1A** The Engineer shall assist the Owner and the Contractor in establishing a list of prospective Subcontractors for the mechanical, electrical and plumbing Work of the Project (the "**MEP Subcontractors**"), and a list of prospective manufacturers and vendors of the mechanical, electrical and plumbing systems equipment to be incorporated into the Project as part of the Work (the "**MEP Suppliers**"), which lists shall be submitted to the Owner and the Contractor prior to the conclusion of the Schematic Design Phase.

§ **3.2.2A** The Engineer shall consult with the Architect and the Contractor with respect to the design of the electrical and mechanical components of the Integrated Project Delivery, research applicable design criteria and attend Project meetings.

§ **3.2.3A** The Engineer shall be entitled to rely on the accuracy and completeness of the Model Elements prepared by Architect and Architect's other consultants and the Contractor's Estimates, as that term is defined in Section 4.2.3, as the Engineer's Services are developed and provided to Architect in the form of Model Elements of the Building

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                                  (1999859025)

23

Exhibit 2
Page 43

Information Model, pursuant to the Engineer's preparation of the Schematic Design, Design Development and Construction Documents. The Engineer shall prepare, as an Additional Service, revised Model Elements that may be required following the incorporation of Engineer's Model Elements into the Building Information Model for the Construction Documents, if due to inaccuracies or incompleteness of the Architect's Model Elements or the Contractor's Estimates. The Engineer shall review the Architect's Model Elements and the Contractor's Estimates solely for the Engineer's guidance in completion of its Services, however, the Engineer shall report to the Owner any material inaccuracies and inconsistencies noted during any such review.

§ 3.2.4A The Engineer shall, at appropriate times, contact the entities providing gas and electrical utility services to the Project, and file those Model Elements requiring the approval of the entities providing gas and electrical utility services to the Project Site with such entities, but only (i) if and to the extent such entities' approval of such Model Elements is required by applicable law or restrictions of record, and (ii) only after approval by both Architect and Owner of such Model Elements for incorporation into the Building Information Model. The Engineer shall respond to applicable design requirements imposed by such entities on the Engineer's Model Elements, and shall modify the Model Elements in accordance with such requirements as part of the Engineer's Services.

## ARTICLE 4    CONTRACTOR
### § 4.1 GENERAL
§ 4.1.1 The Contractor is the person or entity identified as such in this document and is referred to as if singular in number. The Contractor shall be lawfully licensed at all times during the performance of the Work, if required in the jurisdiction where the Project is located. The Contractor shall designate in writing a representative who shall have express authority to bind the Contractor with respect to all matters related to the Project; provided that no change shall be made to the authorized representative of Contractor identified in Section 1.2.12 without Owner's prior written approval, which shall not be unreasonably withheld. The term "Contractor" means the Contractor or the Contractor's authorized representative.

§ 4.1.2 If the employment of the Contractor is terminated prior to the Construction Phase, the Owner shall employ a successor contractor as to whom neither the Architect nor the Engineer has reasonable and timely objection (as hereinafter provided) and whose status under the GMP Documents shall thereafter be that of the Contractor. The Owner, as soon as practicable after any termination of the Contractor, shall furnish in writing to the Architect and the Engineer the name and qualifications of a proposed successor Contractor. The Architect and the Engineer shall each have 7 days to reply to the Owner in writing stating either (1) that the Architect or Engineer, as applicable, has a reasonable objection to the proposed successor Contractor, or (2) that the Architect or Engineer, as applicable, reasonably requires additional time to review the successor Contractor's qualifications as a replacement Contractor (but not to exceed 3 additional days). Failure of the Architect or the Engineer to reply within such 7 day period (or within the 3 day period following any timely extension thereof) shall constitute notice of no reasonable objection by the person failing to timely reply.

### § 4.2 GENERAL CONSULTATION RESPONSIBILITIES
§ 4.2.1 Throughout the development of the GMP Documents, the Contractor shall advise the Owner and the Architect and the Engineer on proposed site use and improvements, phasing of Project construction (if requested by the Owner), selection of materials, and building systems and equipment. The Contractor shall also provide recommendations on constructability; availability of materials and labor; time requirements for procurement, installation and construction; and factors related to construction cost including, but not limited to, costs of alternative designs or materials, the Owner's Budget for the Work, and possible cost reductions.

§ 4.2.2 The Contractor shall assist the Owner in connection with the Owner's responsibility for obtaining approval for the Work from governmental authorities having jurisdiction over the Project. The Contractor shall arrange and attend all governmental inspections of the Project improvements as required for Substantial Completion and Final Completion (and shall provide the Owner with reasonable advance notice of such scheduled inspections, in order for the Owner to be in attendance if the Owner so elects), and work with the Architect, Engineer, Owner and the applicable governmental authorities on correcting or resolving any issues affecting the permitting of any completed Project improvements, all of which shall be included in the Work of this Contract.

§ 4.2.3 The Contractor shall provide estimating services throughout the design of the Project as specifically required in Articles 5, 6 and 7, and at other various times agreed to by the Owner, Architect, Engineer and Contractor. The Contractor shall provide estimates of the total cost to the Owner to construct all elements of the Project designed or

**Init.**

**/**

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                          (1999859025)

Exhibit 2
Page 44

specified by the Architect or Engineer and shall include contractors' general conditions costs, overhead and profit (Contractor's Estimate). The Contractor's Estimate shall not include the compensation of the Architect or Engineer, the costs of the land, rights-of-way, financing, contingencies for changes in the Work, or other costs that are the responsibility of the Owner. The Contractor's Estimates shall increase in detail and refinement as the Architect and Engineer progress with the preparation of the Schematic Design, Design Development and Construction Documents.

**§ 4.2.3.1** In preparing the Contractor's Estimates, the Contractor shall include contingencies for design, procurement, and reasonable price escalation. The Contractor's Estimate shall be based on current area, volume or similar conceptual estimating techniques.

**§ 4.2.4** For each of the Contractor's Estimates, provided pursuant to Section 4.2.3, the Contractor shall provide adequate detail to support the estimate. The Contractor shall submit its estimates for the Architect's and Engineer's review and the Owner's acceptance. The Contractor shall advise the Owner, Engineer and Architect if it appears that any of Contractor's Estimates may exceed the Owner's most recent Budget for the Work and, in consultation with the Architect and Engineer, make recommendations for corrective action.

**§ 4.2.5** The Contractor does not warrant or guarantee estimates and schedules except as may be included as part of the Guaranteed Maximum Price.

**§ 4.2.6** The Contractor shall not be required to provide professional services that constitute the practice of architecture or engineering unless such services are specifically required by the GMP Documents for a portion of the Work or unless the Contractor needs to provide such services in order to carry out the Contractor's responsibilities for construction means, methods, techniques, sequences and procedures. The Contractor shall not be required to provide professional services in violation of applicable law. If professional design services or certifications by a design professional related to systems, materials or equipment are specifically required of the Contractor by the GMP Documents, the Owner and the Architect or Engineer (as applicable, based on the nature of such design services) will specify all performance and design criteria that such services must satisfy. The Contractor shall cause such services or certifications to be provided by a properly licensed design professional, whose signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by such professional with all fees, costs and expenses of such design professionals, and the cost of professional liability insurance coverage of their services, to be included in the Guaranteed Maximum Price unless the Owner agrees to a Change Order for the performance of such design services through the Contractor. Shop Drawings and other submittals related to the Work designed or certified by such professional, if prepared by others, shall bear such professional's written approval when submitted to the Architect or Engineer. The Owner and the Architect and Engineer shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications and approvals performed or provided by such design professionals, provided the Owner and Architect and Engineer have specified to the Contractor all performance and design criteria that such services must satisfy. The Contractor shall maintain, or require that such design professionals maintain, professional liability insurance and other liability insurance, as appropriate to the services provided with coverage and limits as approved by the Owner in advance of the performance of such professional design services. Pursuant to this Section 4.2.6, the Architect and Engineer will each review, and approve or take other appropriate action on any such design submittals by the Contractor, only for the limited purpose of checking for conformance with information given and the design concept expressed in the GMP Documents.

**ARTICLE 5    PROGRAMMING/CONCEPT DESIGN PHASE**
**§ 5.1** The Architect and Engineer have prepared, and the Owner and Contractor have reviewed the Preliminary Design Program for the Integrated Project Delivery. The Owner, Architect, Engineer and Contractor shall discuss possible alternative approaches to the Preliminary Design Program for the design and construction of the Project, including the feasibility of incorporating environmentally responsible design approaches, with reference to the Owner's target date for Substantial Completion of the Work as set forth in the Preliminary Project Schedule. The Architect and Engineer shall reach an understanding with the Owner and Contractor regarding the requirements of the Project based on such discussions of the Preliminary Design Program and alternatives thereto as hereinafter provided.

**§ 5.2** As soon as practicable, the Architect and Engineer shall each submit to the Owner and Contractor a schedule of the Architect's and Engineer's respective Services as modifications to the Preliminary Project Schedule . The Architect's and Engineer's respective Modified Services schedule shall include design milestone dates, anticipated

Init.

**AIA Document A295™ – 2008.** Copyright © 2008 by The American Institute of Architects. **All rights reserved. WARNING: This AIA®** Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                            (1999859025)

Exhibit 2
Page 45

dates for the completion of the Schematic Design Phase, the Design Development Phase and the Construction Documents Phase and allowances for periods of time required (1) for the Owner's review (2) for the performance of the Owner's consultants, and (3) for approval of submissions by authorities having jurisdiction over the Project.

§ 5.3 The Contractor shall prepare and periodically update a Preliminary Project schedule in collaboration with the Architect and Engineer, subject to the Owner's prior written approval of any proposed changes that extend the anticipated date of Substantial Completion beyond the date previously approved by the Owner in the Preliminary Project Schedule. The Preliminary Project schedule shall coordinate and integrate the Contractor's services, the Architect's services, the Engineer's services and the Owner's responsibilities, and highlight items that could affect the Project's timely completion.

§ 5.4 The Programming/Concept Design Phase shall conclude when (a) the Owner, Architect, Engineer and Contractor have agreed to the time limits established by the Preliminary Project schedule and any modifications to the Preliminary Project Schedule, (b) the Owner has approved the Architect's preliminary design of the Project as provided in Section 6.1 and c) the Owner has approved a preliminary Budget for the Work associated with such preliminary design of the Project (which preliminary Budget for the Work shall be prepared by Contractor in consultation with the Architect and Engineer). The foregoing criteria for conclusion of the Programming/Concept Design Phase will be based on discussions of alternatives to the Preliminary Design Program among the Owner, Architect, Engineer and Contractor.

§ 5.5 Once the Preliminary Project Schedule are established, the Owner, Architect, Engineer and Contractor shall not exceed the time allowances or any of the other deadlines for their respective work product delivery obligations set forth therein, except for reasonable cause (subject to the limitations of Section 9.22 with respect to the rights and obligations of the Owner, Architect, Engineer and Contractor in the event of any delay attributable to a reasonable cause). The time limits associated with any modifications to the Preliminary Project Schedule at the conclusion of the Programming/ Concept Design Phase, shall be based upon the Architect's, Engineer's and Contractor's preliminary evaluation of the Owner's target date for Substantial Completion of the Project and the Owner's preliminary Budget for the Work, each in terms of the other as well as recommendations, if any, with regard to accelerated or fast-track scheduling, changes to the Owner's procurement strategies, or phased construction of the Project. Such preliminary evaluation of the target date for Substantial Completion and the Owner's preliminary Budget for the Work shall take into consideration cost information, constructability, and procurement and construction scheduling issues. To the extent possible, such information shall be integrated into the Model. Upon the conclusion of the Programming/Concept Design Phase, any modifications made to the Preliminary Project Schedule pursuant to Section 5.4 shall be incorporated into the same as reasonably and mutually agreed upon by the parties.

## ARTICLE 6    SCHEMATIC DESIGN PHASE

§ 6.1 Prior to commencement of the Schematic Design Phase, the Architect, in consultation with the Engineer and the Contractor, shall have prepared a Project preliminary design illustrating the scale and relationship of the Project components acceptable to the Owner.

§ 6.2 Based on the Owner's approval of the preliminary design, the Architect, in consultation with the Engineer and the Contractor, shall prepare Schematic Design Documents for the Owner's approval. The **"Schematic Design Documents"** shall consist of drawings and other documents including a site plan, if appropriate, and preliminary building plans, sections and elevations; and may include some combination of study models, perspective sketches, and Models. Preliminary selections of major building equipment systems and other systems components and construction materials (**"Major Materials and Equipment"**) approved by Owner, consistent with the preliminary Budget for the Work, shall be noted on the drawings or described in writing.

§ 6.2.1 The Architect and Engineer shall consider environmentally responsible design alternatives, such as material choices and building orientation, together with other considerations based on program and aesthetics, in developing a design that is consistent with the Owner's program, Preliminary Schedule and preliminary Budget for the Work; provided that such consideration shall be subject to the Owner's right to approve or disapprove the incorporation of any environmentally responsible design alternatives proposed by Architect or the Engineer, which shall be subject to the Owner's sole and absolute discretion (except to the extent such alternatives are required by applicable laws). The Owner may obtain other environmentally responsible design services as an Additional Service.

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                    (1999859025)

Exhibit 2
Page 46

§ **6.2.2** In developing preliminary selections of the Major Materials and Equipment for the Owner's approval, the Architect (in consultation with the Engineer, the Contractor and the Owner) shall consider the value of alternative materials, building systems and equipment, together with other considerations based on program and aesthetics in developing the Schematic Design Documents for the Project that are consistent with the Preliminary Project Schedule (including any requirements for the phased completion of the Project), and the -preliminary Budget for the Work, as each of them have been approved by the Owner at the conclusion of the Programming/Concept Design Phase.

§ **6.3** During the Schematic Design Phase, the Architect and Engineer shall meet with the Owner and Contractor as appropriate to the progress of the design to review the Schematic Design Documents as necessary.

§ **6.4** The Contractor shall obtain information from Subcontractors and material suppliers (including, without limitation, the Owner-approved MEP Subcontractors and MEP Suppliers selected from to the lists submitted to Contractor pursuant to Section 3.2.1A) regarding proposed systems or products, including material procurement scheduling, product data sheets, life cycle and energy efficiency data, cost data necessary to validate estimates and schedules for their scopes of work, tolerances, and prefabrication opportunities and provide such information to the Owner, Architect and Engineer for purposes of the Architect's and Engineer's development of the Schematic Design Documents. Based on such information obtained by the Contractor, the Contractor shall prepare a Contractor's Estimate organized by Subcontractor trade categories, preliminary pricing of materials and equipment from suppliers, allowances, contingencies, the Contractor's Fee, and other items that will be included in the Contractor's Estimate which shall be submitted to the Owner, Architect and Engineer prior to the conclusion of the Schematic Design Phase. Following receipt of the Contractor's Estimate, the Architect and Engineer shall review and comment on the estimate. The Contractor and the Owner shall mutually develop an updated preliminary Budget for the Work.

§ **6.5** The Contractor, for the Architect's and Engineer' review and the Owner's acceptance, shall prepare a revised Preliminary Project Schedule, as modified to reflect the Schematic Design Documents, and a procurement schedule for items that must be ordered well in advance of construction. If the Owner agrees to procure any items prior to the establishment of the Preliminary Guaranteed Maximum Price, the Owner shall procure the items on terms and conditions acceptable to the Contractor. Upon the establishment of the Preliminary Guaranteed Maximum Price, the Owner shall assign all contracts for these items to the Contractor and the Contractor shall thereafter accept responsibility for them.

§ **6.6** The conclusion of the Schematic Design Phase shall occur when (a) the Owner, Architect, Engineer and Contractor have met to review the Schematic Design Documents, the Contractor's Estimate and the Contractor's revised Preliminary Project Schedule, (b) the Owner has approved the Schematic Design Documents, and (c) the Budget for the Work and the revised Preliminary Project Schedule based thereon have been incorporated into these General Conditions by amendment as Exhibit A and Exhibit F, respectively.

*(Paragraphs deleted)*
§ **6.6.1** If revisions to the Schematic Design Documents are required to bring the Contractor's Estimate into compliance with the Owner's Budget for the Work as incorporated into these General Conditions at the conclusion of the Schematic Design Phase, the Architect and Engineer shall consult with the Owner and Contractor to determine appropriate solutions. The Architect and Engineer shall then incorporate any Owner-approved revisions to the Schematic Design Documents during the Design Development Phase.

**ARTICLE 7   DESIGN DEVELOPMENT PHASE**
§ **7.1** Based on the Owner's approval of the Schematic Design Documents (but subject to any revisions to be made thereto by the Architect and Engineer pursuant to Section 6.6.1), as well as the Owner's authorization of any adjustments in the Project requirements and the Contractor's Estimate as required for the same to comply with the Owner's Budget for the Work pursuant to Section 6.6.1, the Architect, in consultation with the Owner. Engineer and Contractor, shall prepare Design Development Documents for the Owner's approval. The **"Design Development Documents"** shall illustrate and describe the development of the approved Schematic Design Documents and shall consist of drawings, other documents and the Model.

§ **7.2** During the Design Development Phase, the Architect and Engineer shall  (a) provide the Owner and Contractor with (i) monthly detailed progress reports regarding the status of the Design Development Documents, and (ii) status updates to the monthly progress reports, promptly notifying the Owner of any proposed material changes to the Building Information Model pursuant to the development of the Design Development Documents and the reasons for

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                                            (1999859025)

Exhibit 2
Page 47

such proposed changes, (b) meet with the Owner and Contractor as appropriate and necessary to the progress of the design (or as otherwise requested by Owner or Contractor from time to time) to review the Design Development Documents, and (c) following the Contractor's delivery of the Contractor's Estimate, consult with the Owner and the Contractor regarding any alternative materials, building systems and equipment (including, without limitation, alternatives to any Major Materials and Equipment specified by the Owner during the Schematic Design Phase) and alternative programming and aesthetic design considerations, and incorporate such Owner-approved alternatives into the Design Development Documents in order to (i) reduce the Contractor's Estimate, if the Contractor's Estimate exceeds the Owner's Budget for the Work, or (ii) to modify the Contractor's revised Preliminary Project Schedule if the scheduled date for Substantial Completion is later than the Owner's target date for Substantial Completion as set forth in the Preliminary Project Schedule approved by the Owner at the completion of the Schematic Design Phase.

§ 7.3 Prior to the conclusion of the Design Development Phase, the Contractor shall furnish to the Owner, Engineer and Architect a list of possible Subcontractors and material suppliers for the Owner's review and approval (which list shall include those MEP Subcontractors and MEP Suppliers selected by the Contractor from the lists generated by the Owner and Engineer pursuant to section 3.2.1A).

§ 7.4 The Contractor shall provide updates to the Contractor's Estimate and the Preliminary Project Schedule, in cooperation with Architect's, Engineer's and Owner's efforts to bring the Contractor's Estimate into conformance with the Owner's Budget for the Work and to bring the Contractor's Preliminary Project Schedule into conformance with the Owner's requirements for completion of the Work in accordance with Section 6.6.1, and (a) to ensure consistency of the Contractor's Estimate and updated Preliminary Project Schedule with the Design Development Documents and (b) to incorporate information received from Subcontractors and material suppliers pursuant to Section 6.4. The Contractor shall require any such Subcontractors and material suppliers to provide additional information as needed to coordinate systems, including mechanical, electrical, plumbing and structural, and to verify tolerances.

§ 7.4.1 Subject to the Architect's and the Engineer's obligations under Section 7.2 above regarding consultation with the Owner and modification of the Design Development Documents to incorporate alternative materials, systems and equipment approved by the Owner, if the Contractor's Estimate at the conclusion of the Design Development Phase exceeds the Owner's Budget for the Work, the Owner shall, in Owner's sole discretion, do one or more of the following:

    .1   give written approval of an increase in the Owner's Budget for the Work;
    .2   in consultation with the Architect, Engineer and Contractor, revise the Project program, scope, or quality as required to bring the Contractor's Estimate within the Owner's Budget for the Work; and/or

    .3   implement any other mutually acceptable alternative.

§ 7.4.2 If the Owner chooses to proceed under Section 7.4.1.2, the Architect and Engineer, (in consultation with the Contractor if requested by the Owner; and as an Additional Service, in accordance with the terms and conditions of the Services Contracts and Owner-Contractor Agreement, as applicable) shall incorporate the agreed upon modifications as necessary to comply with the Owner's Budget for the Work, and the Owner's Budget for the Work as the same may be adjusted under Section 7.4.1.1. After incorporation of such modifications to comply with this Section 7.4.2, the Architect and the Engineer shall, as an Additional Service, make any required revisions to the Drawings, Specifications or other documents necessitated by subsequent cost estimates that exceed the Owner's Budget for the Work, except when the excess is due to changes initiated by the Architect and Engineer in scope, basic systems, or the kinds and quality of materials, finishes or equipment.

§ 7.5 Prior to the conclusion of the Design Development Phase, the Architect and the Engineer shall submit Design Development Documents consistent with the Owner's Budget for the Work to the Owner and the Owner, Architect, Engineer and Contractor shall meet to review the Design Development Documents and prepare the Contractor's Preliminary Guaranteed Maximum Price and the Preliminary Project Schedule. The Design Development Phase shall conclude upon the Owner's approval of (a) the Design Development Documents, (b) the Subcontractors to perform the Work of the Project, (c) the updated Contractor's Estimate, and (d) the updated Project Schedule associated therewith.

§ 7.6 Upon the Owner's acceptance of the Design Development Documents, the Contractor shall prepare and submit for the Owner's approval a Preliminary Guaranteed Maximum Price Estimate consistent with the Design

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes: (1999859025)

Init.

28

Exhibit 2
Page 48

Development Documents, the most recent updates to the Contractor's Estimate and the Preliminary Project Schedule prepared by the Contractor pursuant to Section 7.4, in accordance with Section 7.8.

§ 7.7 To the extent that the GMP Documents are anticipated to require development in the Construction Documents Phase, the Contractor shall provide in the Preliminary Guaranteed Maximum Price proposal an updated Budget for the Work consistent therewith and an updated Preliminary Project Schedule for such further development as is consistent with the GMP Documents as reasonably inferable therefrom. Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

§ 7.8 The Contractor shall include with the Preliminary Guaranteed Maximum Price proposal a written statement of its basis for the Contract Sum, which shall include the following:
   .1   A complete list of the documents and information used in preparation of the Preliminary Guaranteed Maximum Price proposal.
   .2   A list of allowances and a statement of their basis.
   .3   A list of the Contractor's clarifications and assumptions, if any, with regard to the GMP Documents and information relied upon in preparation of the Preliminary Guaranteed Maximum Price and Project Schedule proposal, including, but not limited to, (i) Contractor's assumptions of the estimated cost of the Work to be performed by each trade category of the Subcontractors, as well the cost of any Contractor self-performed Work, with the cost of all OCIP provided insurance coverages (to the extent such Subcontractors are Enrolled Parties, as defined in Appendix 3) excluded, and (ii) Contractor's assumption of such estimated Costs of the Work if Owner were to require Contractor and each Subcontractor to the OCIP insurance coverages in their bid prices for the Project, to the extent of the Owner approved Subcontractors under contract.
   .4   The proposed Preliminary Guaranteed Maximum Price, including a statement of the estimated cost organized by trade categories (including the Contractor's approved proposals from the Owner-approved Subcontractors, which shall include each Subcontractor's completed Insurance Credit Worksheet (Aon Form-1) and "add alternate bid" (as such terms are defined in Section 5 of the OCIP Manual) specifying the cost of such Subcontractor providing the insurance coverages maintained by Owner on the Enrolled Parties pursuant to the OCIP (as such coverages are set forth in Appendix 3), to the extent of the Owner approved Subcontractors under contract, and the Contractor-approved prices for materials and equipment as quoted by the MEP Suppliers), allowances, contingencies, the Contractor's Fee, and other items that comprise the Preliminary Guaranteed Maximum Price.
   .5   The anticipated date of Substantial Completion upon which the Preliminary Guaranteed Maximum Price proposal is based, the outside date for Substantial Completion to occur and the amount of liquidated damages to accrue on a daily basis if such outside date is exceeded as provided in Section 7.10.2, and a schedule for the issuance dates of the Construction Documents upon which the anticipated Substantial Completion date relies.

§ 7.9 The Contractor shall meet with the Owner, Engineer, Architect and representatives of the MEP Subcontractors selected by the Owner and the Contractor pursuant to Section 3.2.1A to review the Contractor's Preliminary Guaranteed Maximum Price proposal submitted to the Owner pursuant to Section 7.6. In the event that the Owner, Engineer and Architect discover any inconsistencies or inaccuracies in the information presented, they shall promptly notify the Contractor, who shall make appropriate adjustments to the Preliminary Guaranteed Maximum Price proposal, its basis, or both.

§ 7.10 Pursuant to the meetings among the Owner, Architect, Engineer and Contractor pursuant to Section 7.9, the Preliminary Guaranteed Maximum Price proposal shall be modified in accordance with the Owner's reasonable requirements consistent with the Owner's Budget for the Work and the Preliminary Project Schedule, and when the Contractor's Preliminary Guaranteed Maximum Price proposal has been modified to satisfy such changes as may be reasonably requested by the Owner, the Owner's acceptance of the Preliminary Guaranteed Maximum Price proposal shall be documented in writing. Once accepted by the Owner, the Preliminary Guaranteed Maximum Price, including the written statement required under Section 7.8 as appropriate, and the Preliminary Project Schedule as of the Owner's acceptance of the Design Development Documents (as the same may be modified pursuant to the Preliminary Guaranteed Maximum Price proposals and from time to time thereafter in accordance with the GMP Documents, the "Construction Schedule"), including the outside date for Substantial Completion and the amount of liquidated damages payable by Contractor for its failure to satisfy such requirement (as provided in Section 1.4 of the A195

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                                    (1999859025)

29

Exhibit 2
Page 49

Agreement between Owner and Contractor), shall be set forth in an amendment to the GMP Documents, a copy of which amendment the Owner shall provide to the Architect and the Engineer. Upon the Owner's acceptance of the Preliminary Guaranteed Maximum Price and Construction Schedule associated therewith, the Design Development Documents upon which the approved Preliminary Guaranteed Maximum Price is based shall become part of the GMP Documents.

§ 7.10.1 Adjustments to the Preliminary Guaranteed Maximum Price on account of Modifications in the Work may be determined by any of the methods listed in Section 9.21.3.3.

§ 7.10.2 If no specific provision is made in the Contractor's Preliminary Guaranteed Maximum Price for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the same basis that was used to establish the Fee for the original Work, and the Preliminary Guaranteed Maximum Price shall be adjusted accordingly.

## ARTICLE 8   CONSTRUCTION DOCUMENTS PHASE

§ 8.1 Based on the GMP Documents and the Preliminary Guaranteed Maximum Price, the Architect and the Engineer shall prepare Construction Documents. The Construction Documents shall illustrate and describe the further development of the approved GMP Documents and shall set forth in detail the requirements for the construction of the Work.

§ 8.2 The Contractor shall coordinate with Subcontractors and material suppliers to obtain finalized cost information and schedules for their scopes of work based on the Construction Documents.

§ 8.3 During preparation of the Construction Documents, the Architect and the Engineer shall consider the Contractor's recommendations for substitutions, and shall incorporate that information, as well as cost or product data, into the Construction Documents; provided that no substitutions relating to any materials or equipment previously approved by the Owner shall be incorporated into the Construction Documents without the Owner's prior written approval in each instance.

§ 8.4 The Architect, Engineer and the Contractor shall incorporate into the Construction Documents the design requirements of governmental authorities having jurisdiction over the Project.

§ 8.5 INTENTIONALLY OMITTED.

§ 8.6 The Owner and the Contractor shall agree, in writing, on the earliest date for Owner's delivery of a Notice to Proceed for Contractor's commencement date for construction of the Work pursuant to Section 9.1.1. If the Owner and Contractor agree, the Contractor may begin construction of the Work during the Construction Documents Phase, as appropriate.

§ 8.7 At the conclusion of the Construction Documents Phase, the Owner, Architect, Engineer and Contractor shall meet to review the Construction Documents. Upon the Owner's approval of the Construction Documents, they shall become part of the GMP Documents and shall take priority over the Design Development Documents.

§ 8.7.1 Upon the Owner's acceptance of the Construction Documents, the Contractor shall prepare and submit for the Owner's approval a Guaranteed Maximum Price Estimate consistent with the Construction Documents, the most recent updates to the Contractor's Estimate and the Preliminary Project Schedule prepared by the Contractor pursuant to Section 8.4, in accordance with Section 8.8.

§ 8.8 The Contractor shall include with the Guaranteed Maximum Price proposal a written statement of its basis for the Contract Sum, which shall include the following:

    .1   A complete list of the documents and information used in preparation of the Guaranteed Maximum Price proposal.

    .2   A list of allowances and a statement of their basis.

    .3   A list of the Contractor's clarifications and assumptions, if any, with regard to the GMP Documents and information relied upon in preparation of the Guaranteed Maximum Price and Project Schedule proposal.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                          (1999859025)

Exhibit 2
Page 50

.4 The proposed Guaranteed Maximum Price, including a statement of the estimated cost organized by trade categories (including the Contractor's approved proposals from the Owner-approved Subcontractors, and the Contractor-approved prices for materials and equipment as quoted by the MEP Suppliers), allowances, contingencies, the Contractor's Fee, and other items that comprise the Guaranteed Maximum Price.

.5 The anticipated date of Substantial Completion upon which the Guaranteed Maximum Price proposal is based, the outside date for Substantial Completion to occur and the amount of liquidated damages to accrue on a daily basis if such outside date is exceeded as provided in 1.4 of the A195 Agreement between Owner and Contractor, and a schedule for the issuance dates of the Construction Documents upon which the anticipated Substantial Completion date relies.

**§ 8.9** The Contractor shall meet with the Owner, Engineer, Architect and representatives of the MEP Subcontractors selected by the Owner and the Contractor pursuant to Section 3.2.1A to review the Contractor's Guaranteed Maximum Price proposal submitted to the Owner pursuant to Section 8.8. In the event that the Owner, Engineer and Architect discover any inconsistencies or inaccuracies in the information presented, they shall promptly notify the Contractor, who shall make appropriate adjustments to the Guaranteed Maximum Price proposal, its basis, or both.

**§ 8.10** Pursuant to the meetings among the Owner, Architect, Engineer and Contractor pursuant to Section 8.9, the Guaranteed Maximum Price proposal shall be modified in accordance with the Owner's reasonable requirements consistent with the Owner's Budget for the Work and the Project Schedule, and when the Contractor's Guaranteed Maximum Price proposal has been modified to satisfy such changes as may be reasonably requested by the Owner, the Owner's acceptance of the Guaranteed Maximum Price proposal shall be documented in writing. Once accepted by the Owner, the Guaranteed Maximum Price, including the written statement required under Section 8.8 as appropriate, and the Project Schedule as of the Owner's acceptance of the Construction Documents (as the same may be modified pursuant to the Guaranteed Maximum Price proposals and from time to time thereafter in accordance with the GMP Documents, the "**Construction Schedule**"), including the outside date for Substantial Completion and the amount of liquidated damages, payable by Contractor for its failure to satisfy such requirement (as provided in 1.4 of the A195 Agreement between Owner and Contractor), shall be set forth in an amendment to the GMP Documents, a copy of which amendment the Owner shall provide to the Architect and the Engineer. Upon the Owner's acceptance of the Guaranteed Maximum Price and Construction Schedule associated therewith, the Construction Documents upon which the approved Guaranteed Maximum Price is based shall become part of the GMP Documents.

**§ 8.10.1** Adjustments to the Guaranteed Maximum Price on account of Modifications in the Work may be determined by any of the methods listed in Section 9.21.3.3.

**§ 8.10.2** If no specific provision is made in the Contractor's Guaranteed Maximum Price for adjustment of the Contractor's Fee in the case of changes in the Work, or if the extent of such changes is such, in the aggregate, that application of the adjustment provisions will cause substantial inequity to the Owner or Contractor, the Contractor's Fee shall be equitably adjusted on the same basis that was used to establish the Fee for the original Work, and the Guaranteed Maximum Price shall be adjusted accordingly.

**ARTICLE 9    CONSTRUCTION PHASE**
**§ 9.1 GENERAL PROVISIONS**
**§ 9.1.1** The Contractor shall commence the work of construction of the Project only after (a) not later than 14 days following, the Owner's issuance of a Notice to Proceed, and (b) Contractor's receipt of (i) a valid building permit for the commencement of the Work and (ii) unless the Contractor is required to maintain the policy of builder's risk insurance pursuant to the GMP Documents, evidence that the Project is insured by an Owner's policy or program of builder's risk insurance covering the Work while in the course of construction against physical loss or damage resulting from the perils normally insured under a builder's risk "all risk" policy with the Contractor obligation amount specified in Appendix 3 in the event of damage to the Work attributable to the negligent acts or omissions of the Contractor or Subcontractors; and following commencement of the Work, Contractor shall thereafter perform the Work in accordance with the GMP Documents; provided that prior to Contractor or and Subcontractor commencing any Work of construction at the Project Site, Contractor shall have delivered to the Owner Confirmation Letters from the OCIP Administrator confirming acceptance of Contractor or such Subcontractor into the Owner's OCIP (unless Contractor or any Subcontractor is (a) performing the services of an Excluded Party, in which case evidence of the applicable insurance coverage required to be maintained by such Excluded Party as set forth in Appendix 3 shall be provide to Owner, or (b) is otherwise excluded from the OCIP provided insurance coverage on the basis of the

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                                    (1999859025)

31

Exhibit 2
Page 51

Owner's acceptance of an "add alternate bid" or Owner's election to terminate such program, in which case Owner shall receive evidence of insurance coverage satisfying the requirements of Section 11.1.3.

§ 9.1.2 The Contractor shall not be relieved of obligations to perform the Work in accordance with the GMP Documents either by activities or duties of the Architect in the Architect's administration of the Contract, or by tests, inspections or approvals required or performed by the Owner, Architect or Engineer or any other persons or entities other than the Contractor.

§ 9.1.3 The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform its services in an expeditious and economical manner consistent with the Owner's interests.

## § 9.2 REVIEW OF GMP DOCUMENTS AND FIELD CONDITIONS BY CONTRACTOR

§ 9.2.1 Prior to the date of this Contract the Contractor and Architect have visited and become generally familiar with the Project Site and discernible local conditions under which the Work is to be performed and correlated such personal observations with requirements of the GMP Documents and the Services Documents, respectively. By executing the GMP Documents, the Contractor and the Architect are each representing to Owner that in addition to visiting the Project Site, each of them has reviewed those title documents provided by the Owner relating to existing encumbrances and restrictions of record affecting the use and development of the Project Site, and has correlated such conditions of record with physical conditions observed at the Project Site (including, but not limited to, site access conditions, site topography and existing site utilities) in accordance with the standards of care and diligence generally practiced by a prudent contractors or architects (as applicable) of similar size and experience as Contractor and Architect, respectively, in performing services of a similar nature, and has accordingly each of them has satisfied itself as to those discernible Project Site conditions (or has made or coordinated modifications to the Preliminary Design Program accordingly). The Guaranteed Maximum Price will include all Work that may need to be done by Contractor to overcome all discernible local conditions under which the Work is to be performed at the Project Site, and which would have reasonably been anticipated by a contractor using such standard of care and diligence in visiting the Project Site and becoming generally familiar with such existing local conditions of the Project Site (including, without limitation, access roads to the Project Site).

§ 9.2.2 Because the GMP Documents are complementary, the Contractor shall, before starting construction of each portion of the Work, carefully study and compare the various GMP Documents relative to that portion of the Work, as well as the information furnished by the Owner pursuant to Section 2.2.5, shall take field measurements of any existing conditions related to that portion of the Work, and shall observe any conditions at the site affecting it. The Contractor shall promptly report to the Architect, Engineer and Owner any errors, inconsistencies or omissions discovered by or made known to the Contractor as a request for information in such form as the Architect and the Engineer may require. It is recognized that the Contractor's review is made in the Contractor's capacity as a licensed contractor with substantial experience in construction projects of a similar scope and nature as the proposed Project, and exercising the standard of care set forth in Section 9.2.1 above, but that Contractor is not a licensed design professional.

§ 9.2.3 The Contractor is not required to ascertain that the Architect's or the Engineer's design of the Project, as set forth in the Construction Drawings or the Construction Specification incorporated into the GMP Documents, is in accordance with applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, but the Contractor shall promptly report to the Architect (and Engineer if such nonconformity relates to the MEP Services) and Owner any nonconformity discovered by or made known to the Contractor as a request for information in such form as the Architect may require. The Contractor shall also give the Owner and the Architect and Engineer prompt notice of any design element of the Construction Drawings or Construction Specifications which is not clearly and consistently defined in detail in the GMP Documents and, if necessary, submit a Change Order request for modifications to the GMP Documents. The Contractor shall not proceed with (nor continue, if already commenced) any Work relating to any Project design that Contractor discovers is not in conformance with applicable laws or which is not clearly and consistently defined in detail in the GMP Documents, but shall request modifications to the GMP Documents or instructions from the Architect before proceeding with any such non-conforming Project design discovered by the Contractor during its performance of the Work. If the Contractor proceeds with such Work without obtaining such modifications to the Drawings or instructions from the Architect, the Contractor shall correct,

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:56:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                              (1999859025)

Exhibit 2
Page 52

at its own expense, any such Work that is performed which is not consistent with the GMP Documents or results in a violation of applicable laws. If the Contractor proceeds with the Work without such notice to the Architect and Owner, having discovered such errors, inconsistencies or omissions, the Contractor shall bear all costs arising from such failure.

§ 9.2.4 Due to the responsibility the Contractor assumes throughout the development of the GMP Documents, neither the Owner nor the Architect or the Engineer shall be liable to the Contractor for damages resulting from errors, inconsistencies or omissions the Contractor reports pursuant to Section 9.2.2. If the Contractor believes that additional cost or time is involved because of clarifications or instructions the Architect issues in response to the Contractor's requests for information pursuant to Section 9.2.3, the Contractor shall make Claims as provided in Article 13. If the Contractor fails to perform the obligations of either Sections 9.2.2 or 9.2.3, the Contractor shall pay such costs and damages to the Owner as would have been avoided if the Contractor had performed such obligations.

## § 9.3 SUPERVISION AND CONSTRUCTION PROCEDURES

§ 9.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for, and have control over, construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract. The Contractor shall evaluate the jobsite safety thereof and shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures.

§ 9.3.2 The Contractor shall provide  written reports to the Owner, Engineer and Architect throughout the entire Construction Phase (i) on a monthly basis, providing a detailed narrative summarizing the progress of the entire Work, and (ii) providing status updates to the monthly progress reports, promptly notifying the Owner of any material events that are reasonably likely to delay or increase the cost of completion of the Project, or require a modification to the Owner-approved Project design. The Contractor shall maintain a daily log containing a record of weather, Subcontractors working on the site, number of workers, Work accomplished, problems encountered and other similar relevant data as the Owner may reasonably require. The log shall be available to the Owner and Architect and Engineer.

§ 9.3.3 The Contractor shall develop a system of cost control for the Work, including regular monitoring of actual costs for activities in progress and estimates for uncompleted tasks and proposed changes. The Contractor shall identify variances between actual and estimated costs and report the variances to the Owner and Architect at regular intervals.

§ 9.3.4 The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for, or on behalf of, the Contractor or any of its Subcontractors.

§ 9.3.5 The Contractor shall be responsible for inspection of portions of Work already performed to determine that such portions are in proper condition to receive subsequent Work.

## § 9.4 LABOR AND MATERIALS

§ 9.4.1 Unless otherwise provided in the GMP Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, communications, transportation, and other facilities and services necessary for proper execution and completion of the Work, whether temporary or permanent and whether or not incorporated or to be incorporated in the Work. The Contractor shall order materials for timely delivery to the Project Site in compliance with the Owner-approved procurement program for the Project and the final procurement schedule prepared by the Contractor and approved by the Owner for incorporation into the GMP Documents, provided that Contractor shall act reasonably to take into account any changes in market and delivery conditions in its procurement activities, so that materials and equipment will be available as required for the Work to be Substantially Completed on or before the scheduled date for Substantial Completion as approved by the Owner in the Construction Schedule.

§ 9.4.2 The Contractor shall be responsible for determining that all materials furnished for the Work meet all requirements of the GMP Documents.  The Architect and Engineer may require the Contractor to produce reasonable evidence that one or more materials meet such requirements, such as certified reports of past tests by qualified testing laboratories, reports of studies by qualified experts or other evidence which, in the opinion of the Architect or

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410326020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                              (1999859025)

Init.

/

33

Exhibit 2
Page 53

Engineer, would lead to a reasonable certainty that any material used or proposed to be used in the Work meets the requirements of the GMP Documents. Such data shall be furnished as a Cost of the Work included in the Guaranteed Maximum Price, except that any Owner requirement for periodic testing of different batches of the same material shall be an Additional Service, unless such testing is specifically required by the GMP Documents. Except in the case of minor changes in the Work authorized by the Architect or Engineer in accordance with Sections 9.21.4 or if Contractor's testing of materials pursuant to this Section 9.4.2 indicates that any materials specified by the Architect or Engineer are generally defective (in which case Architect, Engineer and Contractor shall promptly meet and agree upon a reasonable substitution for the specified materials), the Contractor may make substitutions only with the consent of the Owner, after evaluation and approval by the Architect or Engineer and in accordance with a Change Order or Construction Change Directive.

§ 9.4.3 The Contractor shall at all times enforce  discipline and good order among all persons employed at the Project Site  by  Contractor or any of its Subcontractors or Sub-subcontractors . Neither the Contractor nor any of its Subcontractors shall employ at the Project Site any unfit person or anyone not skilled in the assigned work. Owner reserves the right to require Contractor to cause the immediate expulsion from the Project Site of any employee of Contractor or any of its Subcontractors who is deemed unacceptable to Owner for any reason, including but not limited to a lack of honesty or integrity; unsafe conduct; or failure to comply with Project confidentiality requirements.

§ 9.5 WARRANTY
The Contractor warrants to the Owner, Engineer and Architect that materials and equipment furnished under the Contract will be of good quality and new unless the GMP Documents require or permit otherwise. The Contractor further warrants that the Work will conform to the requirements of the GMP Documents and will be free from defects, except for those inherent in the quality of the Work the GMP Documents require or permit. Work, materials, or equipment not conforming to these requirements may be considered defective. The Contractor's warranty excludes remedy for damage or defect caused by abuse, alterations to the Work not executed by the Contractor, improper or insufficient maintenance, improper operation, or normal wear and tear and normal usage. If required by the Architect, the Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment. The warranty provided in this Paragraph 9.5 shall be in addition to and not in limitation of any manufacturer's warranty or other warranty expressly required by the GMP Documents or otherwise prescribed by law.  The Contractor shall procure and deliver to Owner, no later than the date claimed by the Contractor as the date of Substantial Completion, all warranties required by the GMP Documents.  All such warranties shall include the cost and expenses of labor and materials associated with the work of such warranties.  The Contractor's warranty shall extend for twelve (12) months from the date of Substantial Completion of each the Project Component Phases of the Project.

§ 9.6 TAXES
The Contractor shall pay sales, consumer, use and similar taxes for the Work provided by the Contractor that are legally enacted when bids are received or negotiations concluded, whether or not yet effective or merely scheduled to go into effect. The determination of taxes due, collection of such taxes and remittance of the taxes to the appropriate agency is the Contractor's responsibility whether directly or through its suppliers.

§ 9.7 PERMITS, FEES, NOTICES, AND COMPLIANCE WITH LAWS
§ 9.7.1 Unless otherwise provided in the GMP Documents, the Contractor shall secure and pay for (and promptly furnish Owner with copies following Contractor's receipt thereof) the building permit as well as for other permits, fees, licenses, and inspections by government agencies necessary for proper execution and completion of the Work that are customarily secured and legally required at the time the Guaranteed Maximum Price is established. Any property tax assessments, any development fees associated with governmental permits required for the Work, and any utility connection fees related to the Project shall be paid directly by Owner.

§ 9.7.2 The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities applicable to performance of the Work. The Contractor shall comply with any and all applicable environmental regulations including, but not limited to, regulations required to obtain permits necessary to meet site storm water and wetlands conditions or requirements and shall comply with permit requirements.

§ 9.7.3 If the Contractor performs Work knowing it to be contrary to applicable laws, statutes, ordinances, codes, rules and regulations, or lawful orders of public authorities, the Contractor shall assume appropriate responsibility for such Work and shall bear the costs attributable to correction.

Init.

I

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:56:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                                                (1999859025)

34

Exhibit 2
Page 54

### § 9.7.4 CONCEALED OR UNKNOWN CONDITIONS

If the Contractor encounters conditions at the site that are subsurface or otherwise concealed physical conditions that differ materially from those upon which the parties relied in the development of the GMP Documents (including, without limitation, any hazardous material or substance at the Project Site that are not addressed in the GMP Documents; herein after the **"Concealed or Unknown Conditions"**), the Contractor shall promptly provide notice to the Owner and the Architect and Engineer before such Concealed or Unknown Conditions are disturbed and in no event later than 21 days after first observance of the Concealed or Unknown Conditions. The Architect and Engineer will promptly investigate such conditions and, if the Architect and Engineer determine that they differ materially and cause an increase or decrease in the Contractor's cost of, or time required for, performance of any part of the Work, the Architect and Engineer will mutually recommend an equitable adjustment in the Contract Sum or Contract Time, or both; provided that in the event the Concealed or Unknown Conditions relate to any hazardous material or substance at the Project Site that are not addressed in the GMP Documents, the Owner may elect to terminate the Contract pursuant to Section 7.2.4 of the Owner-Contractor Agreement, in which case Contractor shall immediately cease all Work and notwithstanding Section 7.2.4.2 of the Owner-Contractor Agreement any and all Work performed by the Contractor after first observance of the Concealed or Unknown Conditions shall be excluded from Owner's payment obligations under Section 12.13.1of these General Conditions; and further provided that that Contractor shall not be entitled to an adjustment of the GMP if: (a) Contractor knew of the existence of such condition at the time that it executed the GMP Documents, or such condition was disclosed by any documents or other information provided to Contractor by the Owner, Architect or Engineer prior to Contractor's execution of the GMP Documents;  (b) Contractor could have reasonably discovered, revealed, or understood the existence of such condition through a physical examination of the observable portions of the Project Site or from any information provided to Contractor by the Owner, the Architect or the Engineer, or from any other information generally available to Contractor prior to Contractor's execution of the GMP Documents, prior to executing the Contract; (c) Contractor fails to give the written notice required by this Section 9.7.4 within 21 days after first observance of such condition; or (d) Contractor further disturbs such condition without prior written approval from Owner. If the Architect and Engineer mutually determine that the conditions at the site are not materially different from those indicated in the GMP Documents, or that Contractor is not entitled to a GMP adjustment pursuant to this Section 9.7.4, and that no change in the terms of the Contract is justified, the Architect shall promptly notify the Owner and Contractor in writing, stating the reasons for such determination. If either party disputes the Architect's and Engineer's determination or recommendation, that party may proceed as provided in Article 13, or that Contractor is not entitled to a GMP adjustment pursuant to this Section 9.7.4.

**§ 9.7.5** If, in the course of the Work, the Contractor encounters human remains or recognizes the existence of burial markers, archaeological sites or wetlands not indicated in the GMP Documents, the Contractor shall immediately suspend any operations that would affect them and shall notify the Owner and Architect. Upon receipt of such notice, the Owner shall promptly take any action necessary to obtain governmental authorization required to resume the operations. The Contractor shall continue to suspend such operations until otherwise instructed by the Owner but shall continue with all other operations that do not affect those remains or features. Requests for adjustments in the Contract Sum and Contract Time arising from the existence of such remains or features may be recommended by the Architect and the Engineer pursuant to Section 9.7.4.

### § 9.8 ALLOWANCES

**§ 9.8.1** If the Contract Sum includes any allowances (as expressly stated in the GMP Documents), the Owner shall select materials and equipment covered by such allowances with reasonable promptness. Allowance amounts shall include the costs to Contractor of materials and equipment delivered at the Project Site and all required taxes, less applicable trade discounts. Allowance amounts shall also include the Contractor's costs for unloading and handling at the site, labor, installation, overhead, and profit.  If Contractor shall have been paid for any materials or equipment delivered to the Project Site as part of the Cost of the Work (by allowance or otherwise), but such materials or equipment are not incorporated into the Work, Contractor shall act reasonably to assist the Owner in its disposition of such excess materials as an Additional Service, provided that the proceeds of any sale or return of such surplus materials or equipment shall belong solely to the Owner.  Notwithstanding the foregoing, if such surplus materials or equipment are delivered to the Project Site as a result of any errors or omissions of the Contractor in performing the Contractor's procurements services pursuant to the GMP Documents, then the amount paid by the Owner for such surplus materials or equipment shall be deducted from the Cost of the Work, the Guaranteed Maximum Price shall be reduced accordingly, and such surplus materials and equipment shall belong solely to the Contractor and shall be removed from the Project Site prior to Substantial Completion of the Project.

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                          (1999859025)

35

Exhibit 2
Page 55

**§ 9.8.2** Unless otherwise provided in the GMP Documents,

.1 allowances shall cover the cost to the Contractor of materials and equipment delivered at the site and all required taxes, less applicable trade discounts;

.2 Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum but not in the allowances; and

.3 whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect the difference between actual costs and the allowances under Section 9.8.2.1 and Fee

**§ 9.8.3** Materials and equipment under an allowance shall be selected by the Owner with reasonable promptness.

**§ 9.9 SUPERINTENDENT**
**§ 9.9.1** The Contractor shall employ a competent superintendent and project manager approved by the Owner hereinafter provided, and as necessary assistants as are reasonably required for the proper supervision of the Work and ensuring compliance with legal requirements for the worksite condition of the Project site and performance of the Work, as well as Owner's Project Site safety and security requirements. The Owner approved superintendent shall be in attendance at the Project site during performance of the Work and the Owner-approved project manager shall make regular visits to the Project Site to review the condition of the Work and the conditions of the Project Site. The superintendent and project manager shall represent the Contractor, and communications given to the project manager shall be as binding as if given to the Contractor.

**§ 9.9.2** The Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner the name and qualifications of a proposed superintendent and proposed project manager. The Owner may reply within 14 days to the Contractor in writing stating (1) whether the Owner has reasonable objection to the proposed superintendent or (2) that the Owner requires additional time to review. Failure of the Owner to reply within the 14 day period shall constitute notice of no reasonable objection.

**§ 9.9.3** The Contractor shall not employ a proposed superintendent or project manager to whom the Owner has made reasonable and timely objection. The Contractor shall not change the superintendent or project manager without the Owner's consent, which shall not be unreasonably be withheld or delayed.

**§ 9.9.4** The Project superintendent will schedule and conduct progress meetings at least once every three (3) weeks during the construction phase of the Work (or more frequently as may be reasonably requested by Owner), which meetings shall be held at the Project Site. The Project superintendent will act reasonably in scheduling such meetings to accommodate the attendance at such meetings by the Contractor's superintendent and project manager, representatives of the MEP Subcontractors, Owner's authorized representative, and the Architect, the Engineer and any other design consultants engaged in the design of the Project. Progress meeting minutes will be recorded by the Contractor and distributed to the Owner, the Architect and the Engineer (and any representative of the Ground Lessor who may be in attendance at the progress meeting), within five (5) days following each progress meeting, which meeting minutes shall include documentation of any conditions identified as potential delays in completion of the Work and their anticipated effect on the scheduled Completion Date. Unless Owner approves the extension of the scheduled Completion Date (in Owner's sole and absolute discretion for any reason other than an Owner-caused delay or a Force Majeure Delay), corrective measures will be implemented by Contractor (as part of the Costs of the Work), and such corrective measures will be indicated in the progress meeting minutes, so that potential delays in the completion of the Work beyond the scheduled Completion Date are avoided. The Contractor shall maintain a three-week rolling construction schedule, which shall be updated after each progress meeting to reflect the timing of the corrective measures to be implemented, which shall be provided to the progress meeting participants as an attachment to the meeting minutes.

**§ 9.10 CONTRACTOR'S CONSTRUCTION SCHEDULES**
**§ 9.10.1** The Contractor shall perform the Work in accordance with the Construction Schedule.

**§ 9.10.2** If the GMP Documents require submittals during the Construction Phase, the Contractor shall prepare a submittal schedule, promptly after the Owner's acceptance of the Guaranteed Maximum Price and thereafter as necessary to maintain a current submittal schedule, and shall submit the schedule(s) for the Architect's approval. The Architect's approval shall not unreasonably be delayed or withheld. The submittal schedule shall (1) be coordinated

AIA Document A285™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                    (1999859025)

Init.

/

36

Exhibit 2
Page 56

with the Contractor's construction schedule, and (2) allow the Architect and Engineer reasonable time to review submittals. If the GMP Documents require that the Contractor provide a submittal schedule and the Contractor fails to submit a submittal schedule, the Contractor shall not be entitled to any increase in Contract Sum or extension of Contract Time based on the time required for review of submittals. Shop Drawings, Product Data, Samples and similar submittals required during the Construction Phase are not GMP Documents.

§ 9.10.3 The Contractor shall perform the Work in general accordance with the most recent construction schedules submitted to the Owner, Engineer and Architect.

§ 9.11 DOCUMENTS AND SAMPLES AT THE SITE
The Contractor shall maintain at the Project Site one hard copy of the GMP Documents, in good order and marked currently to indicate field changes and selections made during construction, in accordance with Sections 1.3.3 and 1.3.4 above, including, without limitation hard copies of any Owner-approved submittals upon their incorporation into the GMP Documents during Construction Phase.  The Project Site copies of the GMP Documents shall be available for review by the Architect, the Engineer and the Owner during work hours, and shall be delivered to the Architect for submittal to the Owner upon completion of the Work as a record of the Work as constructed.

§ 9.12 SHOP DRAWINGS, PRODUCT DATA AND SAMPLES
§ 9.12.1 Shop Drawings are drawings, diagrams, models, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

§ 9.12.2 Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

§ 9.12.3 Samples are physical examples that illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

§ 9.12.4 The purpose of Shop Drawings, Product Data, Samples and similar submittals is to demonstrate the way by which the Contractor proposes to conform to the information given and the design concept expressed in the GMP Documents for those portions of the Work for which the GMP Documents require submittals. Review by the Architect and Engineer is subject to the limitations of Section 9.26.5.2. Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the GMP Documents. Submittals that are not required by the GMP Documents may be returned by the Architect and Engineer without action.

§ 9.12.5 The Contractor shall review for compliance with the GMP Documents, approve and submit to the Architect and Engineer Shop Drawings, Product Data, Samples and similar submittals in accordance with the submittal schedule approved by the Architect or, in the absence of an approved submittal schedule, with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors.

§ 9.12.6 By submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents to the Owner, Engineer and Architect that the Contractor has (1) reviewed and approved them, (2) determined and verified materials, field measurements and field construction criteria related thereto, or will do so and (3) checked and coordinated the information contained within such submittals as consistent with the requirements of the Work and the GMP Documents.

§ 9.12.7 The Contractor shall perform no portion of the Work that requires submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect and the Engineer.

§ 9.12.8 The Work shall be in accordance with approved submittals.

§ 9.12.9 The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect and Engineer on previous submittals. In the absence of such written notice, the Architect's and Engineer's approval of a resubmission shall not apply to such revisions.

**Init.**

**/**

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                                 (1999859025)

Exhibit 2
Page 57

## § 9.13 USE OF SITE

The Contractor shall confine operations at the site to areas permitted by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities and the GMP Documents and shall not unreasonably encumber the site with materials or equipment.

## § 9.14 CUTTING AND PATCHING

**§ 9.14.1** The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly. All areas requiring cutting, fitting and patching shall be restored to the condition existing prior to the cutting, fitting and patching, unless otherwise required by the GMP Documents. Any cost of cutting, fitting, and patching caused by defective or ill-timed work shall be borne by Contractor.

**§ 9.14.2** The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the Owner or a separate contractor except with written consent of the Owner and of such separate contractor; such consent shall not be unreasonably withheld. The Contractor shall not unreasonably withhold from the Owner or a separate contractor the Contractor's consent to cutting or otherwise altering the Work.

## § 9.15 CLEANING UP

**§ 9.15.1** The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. Prior to Substantial Completion of each Project Component Phase, the Contractor shall remove waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials from and about that portion of the Project Site on which the Project Component Phase is located (except as are reasonably required for the Work of the Final Punch List items associated therewith).

**§ 9.15.2** If the Contractor fails to clean up as provided in the GMP Documents, the Owner may do so and Owner shall be entitled to reimbursement from the Contractor.

## § 9.16 ACCESS TO WORK

The Contractor shall provide the Owner, Engineer and Architect access to the Work in preparation and progress wherever located.

## § 9.17 ROYALTIES, PATENTS AND COPYRIGHTS

The Contractor shall pay all royalties and license fees. The Contractor shall defend suits or claims for infringement of copyrights and patent rights and shall hold the Owner, Engineer and Architect harmless from loss on account thereof, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the GMP Documents, or where the copyright violations are contained in Drawings, Specifications or other documents prepared by the Owner, Engineer or Architect. However, if the Contractor has reason to believe that the required design, process or product is an infringement of a copyright or a patent, the Contractor shall be responsible for such loss unless such information is promptly furnished to the Architect and Engineer. Additionally, the Contractor agrees that if in the course of performing the Services, Contractor, or any Subcontractor, or any employee, agent or consultant of any of them, incorporates into any particular design or specifications for the Work any invention, improvement, development, concept, discovery or other proprietary information owned by Contractor or in which Contractor has an interest (**"Proprietary Materials"**): (a) Contractor shall inform Owner in writing before incorporating any such Proprietary Materials into the Work; (b) Owner and Ground Lessor are each hereby granted and shall have a perpetual, royalty-free, fully paid, irrevocable, nonexclusive license coupled with their respective fee ownership and leasehold interests in the Project Site, which shall include the use thereof solely for the purposes of the ownership, use and occupancy of the Project by the Ground Lessor and the Owner and their respective agents, employees, assigns, subtenants, and successors in interest to their respective interests in the Project Site, including, without limitation, the right to prepare derivative works of, or make, or have made, modifications to the same, pursuant to any further development of the Project Site or alterations to the Project.

## § 9.18 INDEMNIFICATION

**§ 9.18.1** See Section 1.2.1 of the Owner-Contractor Agreement (AIA Document A195-2008).

*(Paragraph deleted)*

**AIA Document A295™ – 2008.** Copyright © 2008 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:56:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                 (1999859025)

§ 9.18.2 See Section 1.2 of the Owner-Architect Agreement (AIA Document B195-2008)

§ 9.18.3 See Section 1.2 of the Owner-Engineer Agreement (AIA Document B195-2008)

§ 9.18.4 See Section 1.2.2 of the Owner-Contractor Agreement (AIA Document A195-2008) and 1.2 of the Owner-Architect Agreement (AIA Document B195-2008) and 1.2 of the Owner-Engineer Agreement (AIA Document B195-2008)

§ 9.18.5 Should Contractor, Architect or Engineer incur any cost or expense on behalf of any person or entity indemnified by any of the them pursuant their respective indemnity obligations as referenced in Section 9.18.1, 9.18.2 or 9.18.3, respectively, and the costs and expenses so incurred are subsequently determined by a binding judgment or award rendered pursuant to Section 13.4 not to be the responsibility of the party who has incurred such indemnity obligation (the "Indemnitor"), then the person or entity indemnified by the Indemnitor (the "Indemnitee") shall reimburse the Indemnitor such amount as is expressly awarded to the Indemnitor in such action or arbitration as a reimbursement of the amount spent by the Indemnitor as a payment to or on behalf of the Indemnitee in satisfaction of such indemnity obligations, including, without limitation, that portion of any insurance deductibles and attorney's fees paid by the Indemnitor and so awarded.

§ 9.19 SUBCONTRACTORS
§ 9.19.1 DEFINITIONS
§ 9.19.1.1 A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the GMP Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or Subcontractors of a separate contractor.

§ 9.19.1.2 A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the GMP Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

§ 9.19.2 AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK
§ 9.19.2.1 During the Schematic Design Phase, Contractor shall furnish in writing to the Owner, Engineer and Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design, and the names of the prospective MEP Subcontractors and the MEP Suppliers in accordance with the requirements of Section 3.2.1A) proposed for each principal portion of the Work. The Owner may reply within 14 days to the Contractor in writing stating (1) whether the Owner has reasonable objection to any such proposed person or entity or (2) that additional time is required for review. Failure of the Owner to reply within the 14-day period shall constitute notice of no reasonable objection.

§ 9.19.2.2 The Contractor shall not contract with a proposed person or entity to whom the Owner has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

§ 9.19.2.3 If the Owner has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner has no reasonable objection. Except as otherwise provided in the Preliminary Project Schedule, the Contractor shall not prepare the Guaranteed Maximum Price proposal, unless requested in advance by the Owner, until all of the proposals of the Subcontractors required for the performance of the Work associated therewith (including, without limitation, the Subcontractors' Insurance Credit Worksheets and "add alternate bids" specifying the cost of providing the OCIP insurance coverages in accordance with the OCIP Manual requirements) have been received and recommended for award without reasonable and timely objection to any of them by the Owner.

§ 9.19.2.4 The Contractor shall not substitute a Subcontractor, person or entity previously approved by the Owner without first submitting to the Owner the name of the proposed replacement Subcontractor and the reason for replacement of the Subcontractor previously selected, and only after Owner has failed to make reasonable objection to such substitution. The MEP Subcontractors and the MEP Suppliers shall only be replaced by Contractor from the list of approved entities submitted to the Contractor pursuant to Section 3.2.1A.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410326020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                (1999859025)

Exhibit 2
Page 59

### § 9.19.3 SUBCONTRACTUAL RELATIONS

By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the GMP Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work, which the Contractor, by these Documents, assumes toward the Owner and Architect. Each subcontract agreement shall preserve and protect the rights of the Owner and Architect under the GMP Documents with respect to the Work to be performed by the Subcontractor so that subcontracting thereof will not prejudice such rights, and shall allow to the Subcontractor, unless specifically provided otherwise in the subcontract agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor, by the GMP Documents, has against the Owner. All subcontract agreements and purchase orders for trade services to the Project shall provide that they are freely assignable by Contractor to Owner and Ground Lessor as provided in Section 9.19.4.1 and every subcontract shall be written to provide the guarantee of materials and workmanship. Where appropriate, the Contractor shall require each Subcontractor to enter into similar agreements with Sub-subcontractors. The Contractor shall make available to each proposed Subcontractor, prior to the execution of the subcontract agreement, copies of the GMP Documents and other documents to which the Subcontractor will be bound.

*(Paragraph deleted)*
### § 9.19.4 ASSIGNMENT OF SUBCONTRACTS

§ 9.19.4.1 Contractor shall contract solely in its own name and behalf, and not in the name or behalf of Owner or Ground Lessor, with the specified Subcontractor or supplier. No contractual relation between Owner and any Subcontractor shall be created by the GMP Documents or by any subcontract or purchase order, except that Owner shall be named as a third party beneficiary in each subcontract or purchase order. Notwithstanding anything to the contrary in the Contract Documents, neither Owner nor the Ground Lessor shall exercise any of its right as a third party beneficiary or interfere with in any way with the Contractor's management of its Subcontractors, as long as this Agreement remains in effect with the Contractor, and provided that the Contractor acts in good faith to promptly and diligently enforce its rights under each subcontract agreement to the extent reasonably required to satisfy the Contractor's obligations under the GMP Documents. Copies of all subcontract agreements will be available for review at the Project Site. Each subcontract agreement for a portion of the Work is assigned by the Contractor to the Owner, provided that

    .1    assignment is effective only after termination of the Contract by the Owner for cause pursuant to Section 7.2.2 or Section 7.2.4 of the Owner-Contractor Agreement and only for those subcontract agreements that the Owner accepts by notifying the Subcontractor and Contractor in writing; and

    .2    assignment is subject to the prior rights of the surety, if any, obligated under bond relating to the Contract.

When the Owner accepts the assignment of a subcontract agreement after termination of the Contractor as provided in Section 9.19.4.1.1 above, the Owner assumes the Contractor's rights and obligations under the subcontract. All subcontract agreements and purchase orders shall provide that they are freely assignable by Contractor to Owner and Ground Lessor, and every subcontract shall be written to provide the guarantee of materials and workmanship, and free assignability thereof as provided in these General Conditions. It is further agreed and understood that such right of assignment is part of the consideration to Owner for entering into the Agreement with Contractor and may not be withdrawn prior to Final Completion.

§ 9.19.4.2 Upon such assignment, if the Work has been suspended for more than 30 days, the Subcontractor's compensation shall be equitably adjusted for increases in cost resulting from the suspension.

§ 9.19.4.3 Upon such assignment to the Owner under this Section 9.19.4, the Owner may further assign the subcontract to a successor contractor or other entity. If the Owner assigns the subcontract to a successor contractor or other entity, the Owner shall nevertheless remain legally responsible for all of the successor contractor's obligations under the subcontract.

### § 9.20 CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS
### § 9.20.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION AND TO AWARD SEPARATE CONTRACTS

§ 9.20.1.1 The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar to these including those

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                         (1999859025)

Exhibit 2
Page 60

portions related to insurance and waiver of subrogation. If the Contractor claims that delay or additional cost is involved because of such action by the Owner, the Contractor shall make such Claim as provided in Article 13.

§ 9.20.1.2 When separate contracts are awarded for different portions of the Project or other construction or operations on the site, the term "Contractor" in the GMP Documents in each case shall mean the Contractor who executes each separate contract.

§ 9.20.1.3 The Owner shall provide for coordination of the activities of the Owner's own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and the Owner in reviewing their construction schedules. The Contractor shall make any revisions to the construction schedule deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and the Owner until subsequently revised.

§ 9.20.1.4 Unless otherwise provided in the GMP Documents, when the Owner performs construction or operations related to the Project with the Owner's own forces, the Owner shall be deemed to be subject to the same obligations and to have the same rights that apply to the Contractor under the Contract.

§ **9.20.2 MUTUAL RESPONSIBILITY**
§ **9.20.2.1** The Contractor shall afford the Owner and separate contractors reasonable opportunity for introduction and storage of their materials and equipment and performance of their activities, and shall connect and coordinate the Contractor's construction and operations with theirs as required by the GMP Documents.

§ 9.20.2.2 If part of the Contractor's Work depends for proper execution or results upon construction or operations by the Owner or a separate contractor, the Contractor shall, prior to proceeding with that portion of the Work, promptly report to the Architect apparent discrepancies or defects in such other construction that would render it unsuitable for such proper execution and results. Failure of the Contractor so to report shall constitute an acknowledgment that the Owner's or separate contractor's completed or partially completed construction is fit and proper to receive the Contractor's Work, except as to defects not then reasonably discoverable.

§ 9.20.2.3 The Contractor shall reimburse the Owner for costs the Owner incurs that are payable to a separate contractor because of the Contractor's delays, improperly timed activities or defective construction. The Owner shall be responsible to the Contractor for costs the Contractor incurs because of a separate contractor's delays, improperly timed activities, damage to the Work or defective construction.

§ 9.20.2.4 The Contractor shall promptly remedy damage the Contractor wrongfully causes to completed or partially completed construction or to property of the Owner, separate contractors as provided in Section 9.25.2.5.

§ 9.20.2.5 The Owner and each separate contractor shall have the same responsibilities for cutting and patching as are described for the Contractor in Section 9.14.

§ **9.20.3 OWNER'S RIGHT TO CLEAN UP**
If a dispute arises among the Contractor, separate contractors and the Owner as to the responsibility under their respective contracts for maintaining the premises and surrounding area free from waste materials and rubbish, the Owner may clean up and the Owner will allocate the cost among those responsible.

§ **9.21 CHANGES IN THE WORK**
§ **9.21.1 GENERAL**
§ **9.21.1.1** Changes in the Work may be accomplished after execution of the Contract without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Section 9.21 and elsewhere in the GMP Documents.

§ 9.21.1.2 A Change Order shall be based upon agreement among the Owner, Contractor, Engineer and Architect; a Construction Change Directive requires agreement by the Owner, Engineer and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect and Engineer alone. Except as permitted in Section 9.21.4, a change in the Contract Sum or the Contract Time shall be accomplished only by written Change Order or a written Construction Change Directive, approved and executed by the Owner and

**Init.**

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
**User Notes:**                                                                                                              (1999859025)

**41**

Exhibit 2
Page 61

the Contractor. Accordingly, no course of conduct or dealings between the parties, nor expressed or implied acceptance of alterations or additions to the Work, and no claim that the Owner has been unjustly enriched by any alteration or addition to the Work whether or not there is, in fact, any unjust enrichment to the Work, shall be the basis of any Claim to an increase in any amounts due under the GMP Documents or a change in any time period provided for in the Contract Documents.

§ 9.21.1.3 Changes in the Work shall be performed under applicable provisions of the GMP Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work

§ 9.21.1.4 No Change in the Work shall be the basis of an addition to the Guaranteed Maximum Price of the Work, nor a change in the time for Substantial Completion of the Work, unless and until such change has been authorized in accordance with the GMP Documents. Changes in the Work may be made without notice to Contractor's sureties, and absence of such notice shall not relieve such sureties of any of their obligations to the Owner.

§ 9.21.1.5 Except as expressly provided by this Section 9.21, there shall be no change whatsoever in the Drawings or Specifications for the Work. The Contractor is not authorized to vary the Work of the GMP Documents, or to change, add to or, omit any element, component part or portion of the Project without the express written consent of Owner contained in an executed Change Order, or as directed by a fully-authorized Construction Change Directive.

§ 9.21.1.6 Failure of Contractor and Owner to agree on an adjustment of the Contract Sum or extension of schedule Substantial Completion Date shall not excuse the Contractor from proceeding with the prosecution and performance of the Work as changed. The Owner shall have the right, within its sole discretion, to require the Contractor to commence performance of Changes to the Work pending final determination of Change Order, and any amounts not in dispute for such Changes in the Work may be included in applications for payment submitted by the Contractor to the Owner.

### § 9.21.2 CHANGE ORDERS
§ 9.21.2.1 A Change Order is a written instrument prepared by the Architect or Engineer and signed by the Owner, Contractor, Engineer and Architect stating their agreement upon all of the following:

.1     The change in the Work;
.2     The amount of the adjustment, if any, in the Contract Sum; and
.3     The extent of the adjustment, if any, in the Contract Time.

When submitting a Change Order request to the Architect or Engineer, the Contractor shall include and set forth in clear and precise detail breakdowns of labor and materials, and Insurance Credit Worksheets, for all trades involved and for the Contractor if any self-performed work is included in the Change Order request (with the cost of the work of such Change Order request to exclude insurance costs covered by the Owner's OCIP insurance coverages, except to the extent that Owner accepts an "add alternate bid" for OCIP insurance coverage to be provided by any of the trades involved) and the estimated impact on the construction schedule. The Contractor shall furnish spread sheets from which the breakdowns were prepared, plus spread sheets if requested of any Subcontractors.

§ 9.21.2.2 At any time, and from time to time, Owner may, for any reason Owner deems sufficient, require that Architect and Engineer make changes in the Work, require additional Work or reduce the scope of Work previously ordered, and prepare a Change Order for such changes in the Work for submission to Contractor. Upon receipt of any such Change Order from Architect or Engineer, Contractor shall provide to Owner in writing a detailed estimate of the effect of the proposed change upon the Contract Sum, including a complete itemized cost breakdown of all labor and material showing actual quantities, hours and unit prices and labor rates priced to exclude the cost of OCIP provided insurance coverages (and on an "add alternative Bid" basis if requested by Owner) for all trades involved in the work required for the change and the effect upon the time for completion of the Work of such change (a "**Change Order Response**"). Contractor shall provide such Change Order Response promptly following receipt of the Architect's or Engineer's proposed Change Order, using all reasonable efforts, but in any event within ten (10) calendar days following Contractor's receipt of the proposed Change Order. In order that Contractor may make such estimate, the proposed Change Order shall delineate, in reasonable detail, the changes required and the reasons for the changes in terms of the results that the Owner desires to achieve as a result of such Change Order. When time does not permit the processing of a Change Order in advance of commencing the change in the Work, upon receipt of a written

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                          (1999859025)

Exhibit 2
Page 62

authorization from Owner, Contractor shall proceed with the change in the Work requested by the Owner, and Contractor shall concurrently proceed with submission to Owner of a Change Order Response.

### § 9.21.3 CONSTRUCTION CHANGE DIRECTIVES

§ **9.21.3.1** A Construction Change Directive is a written order prepared by the Architect, Engineer or Contractor, and signed by the Owner (and Architect or Engineer if so required by the Owner), directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

§ **9.21.3.2** A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

§ **9.21.3.3** If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:

.1   Mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;

.2   Unit prices stated in the GMP Documents or subsequently agreed upon;

.3   Cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

.4   As provided in Section 9.21.3.7.

§ **9.21.3.4** If unit prices are stated in the GMP Documents or subsequently agreed upon, and if quantities originally contemplated are materially changed in a proposed Change Order or Construction Change Directive so that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

§ **9.21.3.5** Upon receipt of a Construction Change Directive, the Contractor shall promptly prepare a written Change Order, which shall include and set forth in clear and precise detailed breakdowns of labor and materials and Insurance Credit Worksheets for all trades involved in the work of the Construction Change Directive and for the Contractor if any self-performed work is included in the Change Order request (with the cost of the work of such Change Order request to exclude insurance costs covered by the Owner's OCIP insurance coverages, except to the extent that Owner accepts an "add alternate bid" for any such insurance coverage to be provided by any of the trades involved,, and the estimated impact of the Construction Change Directive on the Project schedule. The Contractor shall furnish spread sheets from which the breakdowns were prepared, plus spread sheets of any Subcontractors, if requested. Upon Owner's approval and execution of the Contractor's Change Order, Contractor shall promptly proceed with the change in the Work involved and advise the Architect and Engineer of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

§ **9.21.3.6** A Construction Change Directive signed by the Contractor indicates the Contractor's agreement therewith, including adjustment in Contract Sum and Contract Time or the method for determining them as approved by the Owner in writing. Such agreement shall be effective immediately and shall be recorded as a Change Order. Accordingly, no course of conduct or dealings between the parties, nor expressed or implied acceptance of alterations or additions to the Work, and no claim that the Owner has been unjustly enriched by any alteration or addition to the Work whether or not there is, in fact, any unjust enrichment to the Work, shall be the basis of any Claim to an increase in any amounts due under the GMP Documents or a change in any time period provided for in the GMP Documents.

§ **9.21.3.7** If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the Owner t shall determine the method and the adjustment on the basis of actual expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, an amount for overhead and profit determined in the same manner as the Contractor's Fee is to be calculated pursuant to the GMP Documents. In such case, and also under Section 9.21.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the GMP Documents, costs for the purposes of this Section 9.21.3.7 shall be limited to the following:

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                (1999859025)

**43**

Exhibit 2
Page 63

.1 Costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, , exclusive of the cost of OCIP provided insurance coverages, if any ;

.2 Costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.3 Rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4 Costs of premiums for all bonds and insurance, exclusive of the cost of OCIP provided insurance coverages, if any, permit fees, and sales, use or similar taxes related to the Work; and

.5 Additional costs of supervision and field office personnel directly attributable to the change.

.6 Contractor's overhead and profit as set forth above.

§ 9.21.3.8 The amount of credit to be allowed by the Contractor to the Owner for a deletion or change that results in a net decrease in the Contract Sum shall be actual net cost. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit on the net decrease in the Contract Sum shall be figured on the basis of net increase, if any, with respect to that change.

§ 9.21.3.9 Pending final determination of the total cost of a Construction Change Directive to the Owner, the Contractor may request payment for Work completed under the Construction Change Directive in Applications for Payment. The Architect will make an interim determination for purposes of monthly certification for payment for those costs and certify for payment the amount that the Architect and the Engineer determines, in the Architect's and Engineer's professional judgment, to be reasonably justified. The Architect's and Engineer's interim determination of cost shall adjust the Contract Sum on the same basis as a Change Order, subject to the right of either party to disagree and assert a Claim in accordance with Article 13.

§ 9.21.3.10 When the Owner and Contractor agree with the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and the Architect or Engineer (as applicable in accordance with Section 9.21.2.2) will prepare a Change Order. Change Orders may be issued for all or any part of a Construction Change Directive.

§ 9.21.4 MINOR CHANGES IN THE WORK
Each of the Architect and the Engineer has authority to order minor changes in the Work not involving adjustment in the Contract Sum or extension of the Contract Time and not inconsistent with the intent of the GMP Documents. Prior to issuing a Minor Change, the Architect or Engineer shall notify the Contractor of the nature, extent and anticipated time of issuance of the proposed directive. The Architect or Engineer submitting the Minor Change and the Contractor shall make adjustments to the GMP Documents to reflect the proposed directive for the review of the Owner. The Contractor should determine the effect of the proposed directive on the cost and time of completion of the Work and on the Contractor's ability to construct the work in accordance with the revised GMP Documents and provide appropriate recommendations to the Owner, Engineer and Architect. Such changes will be effected by written order signed by the Architect (and, if such changes increase the cost or time of completion of the Work, which written order has been approved in writing by the Owner) shall be binding on the Owner and Contractor.

§ 9.22 TIME
§ 9.22.1 DEFINITIONS
§ 9.22.1.1 Unless otherwise provided, Contract Time is the period of time, including authorized adjustments, allotted in the GMP Documents for Substantial Completion of the entire Work of the Project after commencement of Construction.

§ 9.22.1.2 The Date of Substantial Completion with respect to each Project Component Phase is the date certified by the Architect in the applicable Certificate of Substantial Completion in accordance with Section 10.1.6.

§ 9.22.1.3 The term "day" as used in the GMP Documents shall mean calendar day unless otherwise specifically defined.

§ 9.22.2 PROGRESS AND COMPLETION
§ 9.22.2.1 Time limits stated in the GMP Documents for the Substantial Completion of the Work of the Project and each Project Component Phase are of the essence of the Contract. By executing the GMP Amendment the Contractor

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                              (1999859025)

confirms that the Contract Time and such time limits are reasonable periods for performing the Work of the Project and each Project Component Phase.

§ **9.22.2.2** The Contractor shall not knowingly, prematurely commence operations on the Project Site or elsewhere prior to the effective date of insurance required by Article 11 to be furnished by the Contractor and Owner. The date of commencement of the Work shall not be changed by the effective date of Contractor's insurance.

§ **9.22.2.3** The Contractor shall proceed expeditiously with adequate forces and shall achieve Substantial Completion of each Project Component Phase in accordance with the Construction Schedule and Substantial Completion of the entire Work of the Project within the Contract Time.

§ **9.22.3 DELAYS AND EXTENSIONS OF TIME**
§ **9.22.3.1** If the Contractor is delayed at any time in the commencement or progress of the Work by an act or neglect of the Owner, Architect or Engineer, or of an employee of either, or of a separate contractor employed by the Owner; or by delays due to inclement weather in excess of the days of Included Delays set forth in Section 13.1.5.2 below; or by changes ordered in the Work; or by Concealed or Unknown Conditions, or by Delays caused by governing authorities having jurisdiction over the Work; or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties or other causes beyond the Contractor's control; or by delay authorized by the Owner pending mediation and arbitration; or by other causes that the Architect determines to be beyond the control of Contractor, and which justify delay, then the Contract Time shall be extended by Change Order for such reasonable time as mutually agreed to by Owner and Contractor; provided that no such extension of the Contract Time shall be required unless (a) within seven (7) days after the Contractor's discovery (or receipt of notice from the Owner, Architect or Engineer) of such delay, Contractor delivers to Owner a written notice of such delay, stating the nature thereof, and (b) within seven (7) days following the expiration of any such delay Contractor delivers to Owner a written request for an extension of the Contract Time as reasonably required by such delay (a **"Delay Request"**). Owner shall have 5 days following receipt of any Delay Request to approve or reasonably disapprove the extended Contract Time proposed by the Contractor in such Delay Request by written notice to the Contractor, and if the Owner fails to timely approve or reasonably disapprove the extended Contract Time proposed in the Delay Request, then such Delay Request shall be deemed to have been approved by the Owner and the Contract Time shall be extended and the Construction Schedule modified to reflect such extension. The Contractor's failure to timely deliver notice of the commencement of any occurrence or event causing a delay permitted under this Section 9.22.3.1 to timely deliver a Delay Request to the Owner within the required period following the expiration of the cause of any such permitted delay shall constitute an irrevocable waiver by Contractor of the right to claim any extension of the scheduled Contract Time by reason of such delay. The Contractor further acknowledges and agrees that adjustments in the Contract Time will be permitted for a delay, only to the extent such delay (a) is not caused or could not have reasonably been prevented by the Contractor, or (b) could not be limited or avoided by the Contractor's timely notice to the Owner of the delay.

§ **9.22.3.2** Claims relating to time shall be made in accordance with applicable provisions of Article 13. Extension of Contract Time shall be Contractor's sole remedy for any alleged delay, unless delay is caused by act or neglect of the Owner, Engineer or Architect, or of an employee of any of them, or of a separate contractor employed by any of them; or by changes ordered in the Work; or by Concealed or Unknown Conditions, or by Delays of governing authorities having jurisdiction over the Work. In the event of such, the Guaranteed maximum amount and the Contract Time shall be equitably adjusted. The Owner's exercise of any of its rights under Section 9.25 regardless of the extent or number of such changes, or Owner's exercise of any of its remedies of correction or re-execution of any defective Work, shall not under any circumstances be construed as an Owner's delay of the Work.

§ **9.22.3.3** This Section 9.22.3 does not preclude recovery of damages for delay by either party under other provisions of the GMP Documents.

§ **9.23 PAYMENTS**
§ **9.23.1 CONTRACT SUM**
The Contract Sum is the total amount payable by the Owner to the Contractor for performance of the Work under the GMP Documents, subject to the Guaranteed Maximum Price.

§ **9.23.2 SCHEDULE OF VALUES**
The Contractor shall submit to the Owner, before the first Application for Payment submitted for construction of the Work, a schedule of values allocating the entire Contract Sum to the various portions of the Work and prepared in such

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                          (1999859025)

Exhibit 2
Page 65

form and supported by such data to substantiate its accuracy as the Owner may require. This schedule, unless objected to by the Owner, shall be used as a basis for reviewing the Contractor's Applications for Payment.

### § 9.23.3 APPLICATIONS FOR PAYMENT

**§ 9.23.3.1** At least ten days before the date established for each progress payment, the Contractor shall submit to the Owner an itemized Application for Payment prepared in accordance with the schedule of values, if required under Section 9.23.2, for completed portions of the Work. Such application shall be notarized, if required, and supported by such data substantiating the Contractor's right to payment as the Owner may require, such as copies of requisitions from Subcontractors and material suppliers, and shall reflect retainage if provided for in the GMP Documents. . In order to expedite monthly payments during the course of the Project, the Contractor shall review a preliminary draft of each Application for Payment with the Architect before a final Application for Payment is submitted to the Owner. With each Application for Payment, the Contractor shall submit statutory compliant conditional waivers and releases of liens for the amount in the current Application for Payment and statutory compliant unconditional waivers and release of liens for payments previously made by the Owner to the Contractor.

**§ 9.23.3.1.1** As provided in Section 9.21.3.9, such applications may include requests for payment on account of changes in the Work that have been properly authorized by Construction Change Directives, or by interim determinations of the Architect, but not yet included in Change Orders.

**§ 9.23.3.1.2** Applications for Payment shall not include requests for payment for portions of the Work for which the Contractor does not intend to pay a Subcontractor or material supplier, unless such Work has been performed by others whom the Contractor intends to pay. Notwithstanding the foregoing, should any Subcontractor, supplier or other person or Contractor or any of them make, record or file, or maintain any action on or respecting a claim of mechanic's lien, stop-notice, equitable lien, payment or performance bond, or a lis pendens, relating to the Work for which Contractor has been previously paid, the Contractor shall immediately and at no additional cost to the Owner procure, furnish and record appropriate statutory release bonds which shall extinguish or expunge said claim, stop-notice or lis pendens.

**§ 9.23.3.2** Unless otherwise provided in the GMP Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. The Contractor warrants that title to all materials and equipment covered by each Application for Payment will pass to the Owner upon the receipt of payment by the Contractor, free and clear of all liens, claims, security interests or encumbrances.

**§ 9.23.3.3** The Contractor warrants that title to all Work covered by an Application for Payment will pass to the Owner at the time of payment. The Contractor further warrants that upon submittal of an Application for Payment all Work for which Certificates for Payment have been previously issued and payments received from the Owner shall, to the best of the Contractor's knowledge, information and belief, be free and clear of liens, claims, security interests or encumbrances in favor of the Contractor, Subcontractors, material suppliers, or other persons or entities making a claim by reason of having provided labor, materials and equipment relating to the Work. If any claim of lien or stop-notice or any other demand for payment or security therefor, including claims or demands upon performance and payment bond sureties for this Contract, is made or filed with the Owner or the Project by any person claiming that Contractor or any Subcontractor, Sub-subcontractor or supplier or any other person claiming under any of them has failed to perform its contractual obligations or to make payment for any labor, services, trust fund contribution, materials, equipment, taxes or other item furnished or obligation incurred for, or in connection with, the Work for which Contractor has been previously paid, or if at any time there shall be evidence of such nonperformance or nonpayment of any claim or lien or stop-notice or other demand for which, if established, the Owner or the Project might become liable, except to the extent that such non-performance is caused by the default of the Owner under this Agreement, then the Owner shall have the right to retain from any payment then due or thereafter to become due under the Agreement or to be reimbursed by Contractor for an amount sufficient to (i) satisfy, discharge and defend against any such claim or lien or stop-notice or other demand, or any action or proceeding thereon which may be brought to judgment or award; (ii) make good any such nonpayment, nonperformance, damage, failure or default; and (iii) compensate the Owner for and indemnify it against any and all loss, liability, damage, cost and expense (including attorneys' and consultants' fees and costs) which may be sustained or incurred in connection therewith.

### § 9.23.4 CERTIFICATES FOR PAYMENT

**§ 9.23.4.1** The Owner will, within twenty (20) days after receipt of the Contractor's Application for Payment, either issue a Certificate for Payment which indicates intent of Owner to make payment on the Contractor's Application

**AIA Document A295™ – 2008.** Copyright © 2008 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes: (1999859025)

Exhibit 2
Page 66

thirty days from receipt of the same, with a copy to the Contractor, for such amount as is properly due, or notify the Contractor in writing the reasons for withholding certification in whole or in part as provided in Section 9.23.5.1.

**§ 9.23.4.2** The issuance of a Certificate for Payment will constitute a representation by the Owner, based on the Owner's evaluation of the Work and the data comprising the Application for Payment, that, to the best of the Owner's knowledge, information and belief, the Work has progressed to the point indicated and that the quality of the Work is in accordance with the GMP Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the GMP Documents upon Substantial Completion, to results of subsequent tests and inspections, to correction of minor deviations from the GMP Documents prior to completion and to specific qualifications expressed by the Owner. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Owner has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment, or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**§ 9.23.4.3** The Owner shall maintain a record of the Applications and Certificates for Payment.

**§ 9.23.5 DECISIONS TO WITHHOLD CERTIFICATION**
**§ 9.23.5.1** The Owner may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Owner's opinion the representations required by Section 9.23.4.2 cannot be made. If the Owner is unable to certify payment in the amount of the Application, the Owner will notify the Contractor as provided in Section 9.23.4.1. If the Contractor and Owner cannot agree on a revised amount, the Owner will promptly issue a Certificate for Payment for the amount for which the Owner is able to make such representations to the Contractor. The Owner may also withhold a Certificate for Payment or, because of subsequently discovered evidence, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Owner's opinion to protect the Owner from loss for which the Contractor is responsible, including loss resulting from acts and omissions described in Section 9.3.2, because of

    .1    defective Work not remedied;
    .2    third party claims filed or reasonable evidence indicating probable filing of such claims unless security acceptable to the Owner is provided by the Contractor;
    .3    failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;
    .4    damage to the Owner or a separate contractor;
    .5    reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or
    .6    repeated failure to carry out the Work in accordance with the GMP Documents.

**§ 9.23.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

**§ 9.23.5.3** If the Owner withholds certification for payment under Section 9.23.5.1.3, the Owner may, at its sole option, issue joint checks to the Contractor and to any Subcontractor or material or equipment suppliers to whom the Contractor failed to make payment for Work properly performed or material or equipment suitably delivered. If the Owner makes payments by joint check, the Owner shall notify the Contractor and the Owner will reflect such payment on the next Certificate for Payment. In such instance, the Contractor and such Subcontractor shall be responsible for the allocation and disbursement of funds as part of any such joint payment. In no event shall any joint payment be construed to create (a) any contract between the Owner and a Subcontractor of any tier; (b) obligations from the Owner to such Subcontractor; or (c) rights in such Subcontractor against the Owner.

**§ 9.23.6 PROGRESS PAYMENTS**
**§ 9.23.6.1** After the Owner has issued a Certificate for Payment or thirty (30) days after Owner's receipt of Contractor's Application for Payment, the Owner shall make payment in the manner and within the time provided in the GMP Documents.

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:59:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                              (1999859025)

Exhibit 2
Page 67

**§ 9.23.6.2** The Contractor shall pay each Subcontractor upon receipt of payment from the Owner, in accordance to the terms of their subcontract agreements, the amount to which the Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of the Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in a similar manner.

**§ 9.23.6.3** The Owner may, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Owner on account of portions of the Work done by such Subcontractor.

**§ 9.23.6.4** The Owner has the right to request written evidence from the Contractor that the Contractor has properly paid Subcontractors and material and equipment suppliers amounts paid by the Owner to the Contractor for subcontracted Work. If the Contractor fails to furnish such evidence within seven days, the Owner shall have the right to contact Subcontractors to ascertain whether they have been properly paid. The Owner shall not have an obligation to pay or to see to the payment of money to a Subcontractor, except as may otherwise be required by law.

**§ 9.23.6.5** Contractor payments to material and equipment suppliers shall be treated in a manner similar to that provided in Sections 9.23.6.2, 9.23.6.3 and 9.23.6.4.

**§ 9.23.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the GMP Documents.

**§ 9.23.6.7** Unless the Contractor provides the Owner with a payment bond in the full penal sum of the Contract Sum, payments received by the Contractor for Work properly performed by Subcontractors and suppliers shall be held by the Contractor for those Subcontractors or suppliers who performed Work or furnished materials, or both, under contract with the Contractor for which payment was made by the Owner. Nothing contained herein shall require money to be placed in a separate account and not commingled with money of the Contractor, shall create any fiduciary liability or tort liability on the part of the Contractor for breach of trust or shall entitle any person or entity to an award of punitive damages against the Contractor for breach of the requirements of this provision.

**§ 9.23.7 FAILURE OF PAYMENT**
If the Owner does not pay the Contractor as established in the GMP Documents the amount certified by the Owner or awarded by binding dispute resolution, then the Contractor may, upon fifteen additional days' written notice to the Owner, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, plus interest as provided for in the GMP Documents. Notwithstanding anything to the contrary in this Agreement, Contractor shall not be obligated to remove or be liable for liens recorded due to payment default by the Owner or for liens recorded solely due to expiration of lien rights caused by recordation of a Notice of Completion prior to final payment.

**§ 9.23.8 PARTIAL OCCUPANCY OR USE**
**§ 9.23.8.1** The Owner may occupy and use each Project Component Phase of the Project upon the Substantial Completion thereof.  The Owner's occupancy or use of any portion of a Project Component Phase prior to the Substantial Completion thereof shall only be permitted by separate agreement between the Owner and the Contractor, and only to the extent such prior occupancy or use is permitted by the insurance policies as provided in Section 11.3.1.5 and is authorized by public authorities having jurisdiction over the Project. Such occupancy or use of a partially-completed Project Component Phase shall be subject to Owner and Contractor agreeing in writing as to the responsibilities assigned to each of them for security, maintenance, heat, utilities and damage to, and insurance coverage of, the occupied and unoccupied portions of the partially-completed Project Component Phase. Commencement of warranties for any portion of a Project Component Phase occupied prior to its Substantial Completion shall commence upon Owner's occupancy thereof as documented by the agreement between Owner and Contractor made pursuant to this Section 9.23.8.1. Consent of the Contractor to the Owner's request to occupy any portion of a Project Component Phase prior to the Substantial Completion thereof shall not be unreasonably withheld.

**§ 9.23.8.2** Immediately prior to such occupancy of a portion of a Project Component Phase prior to its Substantial Completion, the Owner, Contractor, Engineer and Architect shall jointly inspect the area to be occupied and the portion of the Work to be used in order to determine and record the condition thereof. The Contractor shall control and

**AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:** (1999859025)

Exhibit 2
Page 68

supervise the performance of the remaining Work of the Project (Component Phase) partially occupied by Owner pursuant to this Section 9.23.8 in such a manner as will reasonably minimize disturbance of the occupants of such Project Component Phase prior to Substantial Completion thereof.

§ 9.23.8.3 Unless otherwise agreed upon, in the written agreement for early occupancy of a Project Component Phase between Owner and Contractor made pursuant to Section 9.23.8.1, occupancy or use of a portion or portions of any Project Component Phase shall not constitute acceptance of Work in the applicable Project Component Phase not complying with the requirements of the GMP Documents.

§ 9.24 PROTECTION OF PERSONS AND PROPERTY
§ 9.24.1 SAFETY PRECAUTIONS AND PROGRAMS
The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract. Any employees, independent consultants, agents, representatives, and contractors of Contractor who perform any portion of the Work of this Contract shall be made fully aware of the Owner's Contractor Safety Program attached hereto as **Appendix 1**, the Owner's Toxic and Hazardous Substances Disclosure Requirements attached hereto as **Appendix 2**. Before engaging in any Work on the Project Site, all Subcontractors engaged by Contractor for the Work must have agreed in writing to observe the applicable terms and conditions of Appendices 1 and 2 attached hereto in performing such Work. Concurrently herewith and from time to time, the Owner may require that the individual employees, independent consultants, agents and representatives of Contractor who have access to the Project Site sign an acknowledgement with respect Appendices 1 and 2 attached hereto.

§ 9.24.2 SAFETY OF PERSONS AND PROPERTY
§ 9.24.2.1 The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to

    .1    employees on the Work and other persons who may be affected thereby;
    .2    the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and
    .3    other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

§ 9.24.2.2 The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

§ 9.24.2.3 The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities. The Contractor shall not interfere in any manner with the operation of any business adjacent to the Project Site including, without implied limitation, any interference with traffic, access or egress, parking, utilities and cleanliness of the properties adjacent to the Project Site.

§ 9.24.2.4 When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

§ 9.24.2.5 The Contractor shall promptly remedy damage or loss to property referred to in Sections 9.24.2.1.2 and 9.24.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Sections 9.24.2.1.2 and 9.24.2.1.3, provided, however, that to the extent that any such person or persons are acting at the time of such damage or loss in the capacity of the Contractor or Subcontractor on the Project and the cause of such damage or loss is included in those perils normally insured under the "all risk" policy of Builder's Risk insurance, the cost of remedying such damage and loss shall be paid from the proceeds of Owner's OCIP Insurance Policies (but only to the extent such damage and loss exceeds the Contractor's retained obligation of $25,000 for any damage or loss to property referred to in Sections 9.24.2.1.2 and 9.24.2.1.3 for which the Contractor,

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                         (1999859025)

Exhibit 2
Page 69

or any Subcontractor, Sub-subcontractor, or anyone else directly or indirectly employed by Contractor, or by anyone for whose acts Contractor is liable under the GMP Documents, is primarily responsible except damage or loss attributable to acts or omissions of the Owner, Engineer or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Section 9.18.

§ 9.24.2.6 The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

§ 9.24.2.7 The Contractor shall not permit any part of the construction or site to be loaded so as to cause damage or create an unsafe condition.

§ 9.24.2.8 INJURY OR DAMAGE TO PERSON OR PROPERTY
If Owner or Contractor suffers injury or damage to person or property because of an act or omission of the other, or of others for whose acts such party is legally responsible, written notice of such injury or damage, whether or not insured, shall be given to the other and the Site Safety Manager for the Project within 24 hours after knowledge of such injury or damage occurs, and the party legally responsible for any person injured during the performance of any portion of the Work shall comply with the claims procedures of Section 6 of the OCIP Manual (to the extent such injury involves the employee of an Enrolled Party) or otherwise promptly comply with the claims of such party's workers' compensation insurance carrier and provide copies of all filed claims within 24 hours following knowledge of the occurrence of such injury . The notice shall provide sufficient detail to enable the other to investigate the matter.

§ 9.24.3 HAZARDOUS MATERIALS
§ 9.24.3.1 The Contractor is responsible for compliance with any requirements included in the GMP Documents regarding hazardous materials. If the Contractor encounters a hazardous material or substance not addressed in the GMP Documents and if reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to the Owner and Architect in writing, and such hazardous material or substance shall be treated as a Concealed or Unknown Condition as provided in Section 9.7.4 of these General Conditions.

§ 9.24.3.2 Upon receipt of the Contractor's written notice delivered pursuant to Section 9.24.3.1, unless (a) the Owner elects to terminate the Owner-Contractor Agreement with the Contractor as provided in Section 9.7.4 or (b) the Contractor elects to terminate the Owner-Contractor Agreement in accordance with Section 7.2.1 thereof (but without any obligation to delay such decision for the 30-day period set forth in Section 7.2.1.1), the Owner shall obtain the services of a licensed laboratory to verify the presence or absence of the material or substance reported by the Contractor and, in the event such material or substance is found to be present, to cause it to be rendered harmless. Unless otherwise required by the GMP Documents, the Owner shall furnish in writing to the Contractor and Architect the names and qualifications of persons or entities who are to perform tests verifying the presence or absence of such material or substance or who are to perform the task of removal or safe containment of such material or substance. The Contractor and the Architect will promptly reply to the Owner in writing stating whether or not either has reasonable objection to the persons or entities proposed by the Owner. If either the Contractor or Architect has an objection to a person or entity proposed by the Owner, the Owner shall propose another to whom the Contractor and the Architect have no reasonable objection. When the material or substance has been rendered harmless, Work in the affected area shall resume upon written agreement of the Owner and Contractor. By Change Order, the Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shut-down, delay and start-up.

§ 9.24.3.3 If, following Owner's receipt of the Contractor's written notice delivered pursuant to Section 9.24.3.1,, neither the Owner nor the Contractor elects to terminate the Owner-Contractor Agreement for convenience in accordance with Section 9.7.4 of these General Conditions or  Section 7.2.1.1 of the Owner-Contractor Agreement (as modified by Section 9.24.3.2 above), and Owner directs the Contractor to resume performance of the Work at the Project Site, then to the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Subcontractors, Architect, Architect's consultants, Engineer, Engineer's consultants and agents and employees of any

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                                    (1999859025)

Exhibit 2
Page 70

of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area following the Owner's determination and representation to the Contractor that the material or substance has been rendered harmless pursuant to Section 9.24.3.2, if in fact the material or substance presents the risk of bodily injury or death as described in Section 9.24.3.1 and has not been rendered harmless, provided that (a) such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), and (b) such damage, loss or expense is due to the fault or negligence of the party seeking indemnity.

§ 9.24.3.4 The Owner shall not be responsible under this Section 9.24.3 for materials or substances the Contractor brings to the site unless such materials or substances are required by the GMP Documents. The Owner shall be responsible for materials or substances required by the GMP Documents, except to the extent of the Contractor's fault or negligence in the use and handling of such materials or substances.

§ 9.24.3.5 The Contractor shall indemnify the Owner for the cost and expense the Owner incurs (1) for remediation of a material or substance the Contractor brings to the site and negligently handles, or (2) where the Contractor fails to perform its obligations under Section 9.24.3.1, except to the extent that the cost and expense are due to the Owner's fault or negligence.

§ 9.24.3.6 If, without negligence on the part of the Contractor, the Contractor is held liable by a government agency for the cost of remediation of a hazardous material or substance solely by reason of performing Work as required by the GMP Documents, the Owner shall indemnify the Contractor for all cost and expense thereby incurred.

§ 9.24.4 EMERGENCIES
In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Article 13 and Section 9.21.

§ 9.25 UNCOVERING AND CORRECTION OF WORK
§ 9.25.1 UNCOVERING OF WORK
§ 9.25.1.1 If a portion of the Work is covered contrary to the Architect's and Engineer's request or to requirements specifically expressed in the GMP Documents, it must, if requested in writing by the Architect and Engineer, be uncovered for the Architect's and Engineer's examination and be replaced at the Contractor's expense without change in the Contract Time.

§ 9.25.1.2 If a portion of the Work has been covered that the Architect and Engineer has not specifically requested to examine prior to its being covered, the Architect and Engineer may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the GMP Documents, costs of uncovering and replacement shall, by appropriate Change Order, be at the Owner's expense. If such Work is not in accordance with the GMP Documents, such costs and the cost of correction shall be at the Contractor's expense unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

§ 9.25.2 CORRECTION OF WORK
§ 9.25.2.1 BEFORE OR AFTER SUBSTANTIAL COMPLETION
The Contractor shall promptly correct Work rejected by the Architect and Engineer or failing to conform to the requirements of the GMP Documents, whether discovered before or after Substantial Completion and whether or not fabricated, installed or completed. Costs of correcting such rejected Work, including additional testing and inspections, the cost of uncovering and replacement, and compensation for the Architect's and Engineer's services and expenses made necessary thereby, shall be at the Contractor's expense. Such obligation of the Contractor to correct the Work shall include restoration and repair of any loss or damage to any portion of the Work as provided in Section 9.24.2.5.

§ 9.25.2.2 AFTER SUBSTANTIAL COMPLETION
§ 9.25.2.2.1 In addition to the Contractor's obligations under Section 9.5, if, within one year after the date of Substantial Completion of each Project Component Phase or after the date for commencement of warranties established under Section 9.23.8.1, or by terms of an applicable special warranty required by the GMP Documents, any of the Work of such Project Component Phase is found to be not in accordance with the requirements of the GMP Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner to do so unless the

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                    (1999859025)

Init.

/

Exhibit 2
Page 71

Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition. During such one-year period for correction of the applicable Work, if the Owner fails to notify the Contractor and give the Contractor an opportunity to make the correction, the Owner waives the rights to require correction by the Contractor of the Work of the applicable Project Component Phase and to make a claim for breach of warranty with respect to such Work. When called upon to perform under this warranty, Contractor shall respond and provide an action plan within seven (7) days of written notification and shall thereafter act diligently and in good faith to completely correct the Work of such warranty. Upon failure of Contractor to do so, Owner may cause such defects to be remedied by a person other than Contractor at Contractor's expense, including furnishing such supervision, materials and/or labor as are necessary to bring the Work up to the required standard. In the event such defect is in the nature of or causes an emergency condition (within Owner's reasonable judgment), Owner may undertake the work of correction and replacement on behalf of and without notice to Contractor. All reasonable and necessary costs incurred by Owner to remedy such defects (including, without limitation, the cost of emergency work) shall be deducted from any amounts due Contractor, or if such costs exceed the amounts due, Contractor shall promptly pay Owner such excess immediately upon demand. Contractor shall, at Owner's request, assign to Owner all assignable warranties it obtains from manufacturers or suppliers with respect to any materials, equipment or fixtures incorporated in the Work.

**§ 9.25.2.2.2** The one-year period for correction of Work of each Project Component Phase shall be extended with respect to portions of Work first performed after the applicable Date of Substantial Completion by the period of time between the applicable Date of Substantial Completion and the actual completion of that portion of the Work.

**§ 9.25.2.2.3** The one-year period for correction of Work shall not be extended by corrective Work performed by the Contractor pursuant to this Section 9.25.2.

**§ 9.25.2.3** The Contractor shall remove from the Project Site portions of the Work that are not in accordance with the requirements of the GMP Documents and are neither corrected by the Contractor nor accepted by the Owner.

**§ 9.25.2.4** The Contractor shall bear the cost of correcting destroyed or damaged construction, whether completed or partially completed, of the Owner or separate contractors caused by the Contractor's correction or removal of Work that is not in accordance with the requirements of the GMP Documents.

**§ 9.25.2.5** Nothing contained in this Section 9.25.2 shall be construed to establish a period of limitation with respect to other obligations the Contractor has under the GMP Documents. Establishment of the one-year period for correction of Work as described in this Section 9.25.2. relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the obligation to comply with the GMP Documents may be sought to be enforced, nor to the time within which proceedings may be commenced to establish the Contractor's liability with respect to the Contractor's obligations other than specifically to correct the Work.

**§ 9.25.2.6 OWNER'S RIGHT TO STOP THE WORK**
Upon commencement of the Work, if the Contractor fails to correct Work that is not in accordance with the requirements of the GMP Documents as required by Section 9.25.2 or repeatedly fails to carry out Work in accordance with the GMP Documents, the Owner may issue a written order to the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Section 9.20.1.3. Owner shall have the right to stop Work, at the Owner's discretion, if any unsafe Work conditions are observed or Contractor is not addressing obligations noted in Section 9.24.1 and 9.24.2. Owner shall the right to stop Work, at the Owner's discretion, if conditions or performance are deemed to have the potential to damage the Site or environment or Contractor is not addressing obligations noted in Section 9.24.3.

**§ 9.25.2.7 OWNER'S RIGHT TO CARRY OUT THE WORK**
Upon commencement of the Work, if the Contractor defaults or neglects to carry out the Work in accordance with the GMP Documents and fails within a ten-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the reasonable cost of correcting such deficiencies, including Owner's expenses and compensation for the Architect's and Engineer's additional services

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                        (1999859025)

Exhibit 2
Page 72

made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect and Engineer. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

### § 9.25.3 ACCEPTANCE OF NONCONFORMING WORK
If the Owner prefers to accept Work that is not in accordance with the requirements of the GMP Documents, the Owner may do so instead of requiring its removal and correction, in which case the Contract Sum will be reduced as appropriate and equitable. Such adjustment shall be effected whether or not final payment has been made.

### § 9.25.4 EXTENT OF OWNER'S RIGHTS
**§ 9.25.4.1** The rights of Owner stated in this Section 9.25 and elsewhere in the GMP Documents are cumulative and not in limitation of any other rights of the Owner granted in the GMP Documents or at law or in equity.  The Ground Lessor and any mortgagee of the Ground Lessor's interest in the Project Site are intended third-party beneficiaries of all of the Owner's rights under the GMP Documents.

**§ 9.25.4.2** In no event shall the Owner be deemed to have control over, charge of or any responsibility for Contractor's construction means, methods, techniques, sequences or procedures or for safety precautions and programs in connection with the Project or the Work.

### § 9.26 ARCHITECT'S ADMINISTRATION OF THE CONTRACT
**§ 9.26.1** The Architect shall provide administration of the Contract as set forth below.

**§ 9.26.2** The Architect shall advise and consult with the Owner during the Construction Phase. The Architect shall have authority to act on behalf of the Owner only to the extent provided in this Agreement. The Architect and Engineer shall not have control over, charge of, or responsibility for the construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, nor shall the Architect or Engineer be responsible for the Contractor's failure to perform the Work in accordance with the requirements of the GMP Documents. The Architect and Engineer shall be responsible for their negligent acts or omissions, but shall not have control over or charge of, and shall not be responsible for, acts or omissions of the Contractor or of any other persons or entities performing portions of the Work.

**§ 9.26.3** The Architect responsibility to administer the Contract terminates on the date the Architect issues the final Certificate for Payment.

### § 9.26.4 EVALUATIONS OF THE WORK
**§ 9.26.4.1** The Architect and the Engineer shall visit the site at intervals appropriate to the stage of construction, or as otherwise required in Section 1.5.4 in the Agreement between the Owner and Architect and between the Owner and Engineer, respectively, to become generally familiar with the progress and quality of the portion of the Work completed, and to determine, in general, if the Work observed is being performed in a manner indicating that the Work, when fully completed, will be in accordance with the GMP Documents. However, the Architect nor the Engineer shall be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of the site visits, the Architect and the Engineer shall keep the Owner reasonably informed about the progress and quality of the portion of the Work completed, and report to the Owner (1) known deviations from the GMP Documents and from the most recent construction schedule, and (2) defects and deficiencies observed in the Work.

**§ 9.26.4.2** Each the Architect and the Engineer has the authority to reject Work that does not conform to the GMP Documents. Whenever the Architect or Engineer considers it necessary or advisable, the Architect and Engineer shall each have the authority to require inspection or testing of the Work in accordance with the provisions of the GMP Documents, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect or Engineer to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees or other persons or entities performing portions of the Work.

**§ 9.26.4.3** The Architect, in consultation with the Engineer and other Project participants, shall interpret and decide matters concerning performance under, and requirements of, the GMP Documents on written request of either the

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                                                (1999859025)

**53**

Exhibit 2
Page 73

Owner or Contractor. The Architect's response to such requests shall be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

§ 9.26.4.4 Interpretations and decisions of the Architect shall be consistent with the intent of and reasonably inferable from the GMP Documents and shall be in writing or in the form of drawings. When making such interpretations and decisions, the Architect shall not show partiality to either, and shall not be liable for results of interpretations or decisions rendered in good faith. The Architect's decisions on matters relating to aesthetic effect shall be final if consistent with the intent expressed in the GMP Documents.

§ 9.26.5 SUBMITTALS
§ 9.26.5.1 The Architect shall review the Contractor's submittal schedule, if any, and shall not unreasonably delay or withhold approval. The Architect's action in reviewing submittals shall be taken in accordance with the approved submittal schedule or, in the absence of an approved submittal schedule, with reasonable promptness while allowing sufficient time in the Architect's professional judgment to permit adequate review.

§ 9.26.5.2 In accordance with the Architect-approved submittal schedule, the Architect shall review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the GMP Documents. Review of such submittals is not for the purpose of determining the accuracy and completeness of other information such as dimensions, quantities, and installation or performance of equipment or systems, which are the Contractor's responsibility. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

§ 9.26.5.3 If the GMP Documents specifically require the Contractor to provide professional design services or certifications by a design professional related to systems, materials or equipment, the Architect shall specify the appropriate performance and design criteria that such services must satisfy. The Architect shall review shop drawings and other submittals related to the Work designed or certified by the design professional retained by the Contractor that bear such professional's seal and signature when submitted to the Architect. The Architect shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications and approvals performed or provided by such design professionals.

§ 9.26.5.4 The Architect shall review and respond to requests for information about the GMP Documents. The Architect shall set forth in the GMP Documents the requirements for requests for information. Requests for information shall include, at a minimum, a detailed written statement that indicates the specific Drawings or Specifications in need of clarification and the nature of the clarification requested. The Architect's response to such requests shall be made in writing within any time limits agreed upon, or otherwise with reasonable promptness. If appropriate, the Architect shall prepare and issue supplemental Drawings and Specifications in response to requests for information.

§ 9.26.5.5 The Architect shall maintain a record of submittals and copies of submittals supplied by the Contractor in accordance with the requirements of the GMP Documents.

ARTICLE 10   CLOSEOUT PHASE
§ 10.1 PROJECT COMPLETION
§ 10.1.1 The Architect and the Engineer shall conduct joint inspections to determine the date or dates of Substantial Completion of each of the Project Component Phases and the date of final completion of the last Project Component Phase to be completed; issue Certificates of Substantial Completion for each Project Component Phase; receive from the Contractor and forward to the Owner, for the Owner's review and records, written warranties and related documents required by the GMP Documents and assembled by the Contractor; and issue a final Certificate for Payment based upon a final inspection indicating the Work complies with the requirements of the GMP Documents.

§ 10.1.2 INTENTIONALLY OMITTED

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                    (1999859025)

Exhibit 2
Page 74

§ **10.1.3** The Architect's and Engineer's joint inspections shall be conducted with the Owner to check conformance of the Work with the requirements of the GMP Documents and to verify the accuracy and completeness of the list submitted by the Contractor of Work to be completed or corrected.

§ **10.1.4** When the Contractor considers that the Work, of a Project Component Phase is substantially complete, the Contractor, Architect, Engineer and Owner shall perform a joint walk-through inspection of the Work of the Project Component Phase, and Contractor shall prepare and submit to the Architect, Engineer and Owner a comprehensive list of items to be completed or corrected prior to final payment for the Work of the applicable Project Component Phase (the "**Inspection List**"). Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the GMP Documents.

§ **10.1.5** Upon receipt of the Contractor's Inspection List for each Project Component Phase, the Architect, Engineer and Owner will determine whether such list accurately reflects the joint walk-through inspection of the Work of such Project Component Phase and (a) if the Architect's, Engineer's and Owner's review of the Inspection list discloses any item not included on the Inspection's list (as the same may be modified by the Architect and Engineer pursuant to this clause (a), the "**Final Punch-List**"), which shall be submitted by the Architect to the Owner and Contractor within (10) days following the Contactor's delivery of the Inspection List to the Architect, Engineer and Owner pursuant to Section 10.1.4, and (b) if the Architect's and Engineer's inspection of the Work discloses any item, whether or not included on the Inspection List submitted by the Contractor, which is not sufficiently complete in accordance with the GMP Documents so that the Owner can occupy or utilize the applicable Project Component Phase for its intended use, the Contractor shall then submit a request for another inspection by the Owner, Architect and Engineer in order to determine whether Substantial Completion of the applicable Project Component Phase has occurred, and a new Inspection List shall be prepared by the Contractor following such inspection in accordance with Section 10.1.4. The Contractor's failure to object to any changes made to the Inspection List and incorporated into the Final Punch-List associated therewith within ten (10) days following Contractor's receipt of the Final Punch-List from the Architect shall be deemed to constitute the Contractor's unconditional promise to complete all of the punch-list repair items on the Final Punch-List within a reasonable time thereafter.

§ **10.1.6** When the Work of each Project Component Phase is substantially complete, the Architect will prepare a Certificate of Substantial Completion that shall establish the date of Substantial Completion for each Project Component Phase (and with respect to the last Project Component Phase completed, the date of Substantial Completion of the Project), shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities and damage to , and insurance coverage for, the applicable Project Component Phase, shall inform the Owner about the balance of the Contract Sum remaining to be paid the Contractor with respect to such Project Component Phase, including the amount to be retained from the Contract Sum, if any, for final completion or correction of the Work of the final Project Component Phase, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. The Owner may retain a sum equal to one hundred fifty percent (150%) of the estimated cost of completing all of the punch-list repair items on the Final Punch-List associated with each Project Component Phase, as such items reasonably estimated by Contractor on the Contractor's List and confirmed by the Architect on the Final-Punch-List. Such retainage shall be paid to the Contractor as part of the Final Payment (as defined in Section 5.3.4 of the Owner-Contractor Agreement) for each Project Component Phase. Warranties required by the GMP Documents, as applicable to the Work of a particular Project Component Phase, shall commence on the date of Substantial Completion of the Work of such Project Component Phase unless otherwise provided in the applicable Certificate of Substantial Completion.

§ **10.1.7** The Architect shall forward to the Owner the following information received from the Contractor: (1) consent of surety or sureties, if any, to reduction in or partial release of retainage or the making of final payment; (2) affidavits, receipts, releases and waivers of liens or bonds indemnifying the Owner against liens; and (3) any other documentation required of the Contractor under the GMP Documents.

§ **10.1.8** Upon request of the Owner, and prior to the expiration of one year from the date of Substantial Completion of the last Project Component Phase of the Project, the Architect shall, without additional compensation, conduct a meeting with the Owner to review the operations and performance of the Project facilities.

*(Paragraph deleted)*
§ **10.1.9** Each Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any,

**Init.**

**/**

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                          (1999859025)

Exhibit 2
Page 75

the Owner shall make payment of retainage applying to such Work or designated portion thereof. Such payment shall be adjusted for Work that is incomplete or not in accordance with the requirements of the GMP Documents.

§ 10.2 FINAL COMPLETION AND FINAL PAYMENT

§ 10.2.1 Upon receipt of the Contractor's written notice that the Work of each Project Component Phase is ready for final inspection and acceptance and upon receipt of a final Application for Payment associated with the Work thereof , the Owner will promptly make such inspection and, shall make payment on such final Application for Payment no later than 30 days after the latest of (a) issuance of the Owner's final Certificate for Payment for such Project Component Phase, (b) remediation of all punch list items on the Final Punch List for such Project Component Phase,(c) satisfactory completion of testing and balancing of all building systems installed as part of the Work of such Project Component Phase (in accordance with the applicable manufacturers' standards), (d) Contractor's satisfaction of the final payment requirements of Section 10.2.1.3 and (e) delivery of the complete closeout package for the Project Component Phase as required by the GMP Documents. The final Application for Payment for each Project Component Phase shall show, in such form and detail as the Owner shall reasonably require, the remaining Guaranteed Maximum Price and any other amounts reimbursable to the Contractor pursuant to this Contract or any Change Order approved by Owner in accordance with this Contract. The Contractor's final Application for Payment for each Project Component Phase will constitute a further representation that conditions listed in Section 10.2.2 have been fulfilled.

§ 10.2.1.2 Upon the Owner's issuance of the final Certificate of Payment for the Project, the entire balance found to be due to the Contractor as noted in such final Certificate shall be due and payable (the **"Final Payment"**). The Final Payment to the Contractor shall be made no later than 30 days after the latest of (a) issuance of the Owner's final Certificate for Payment for the entire Work of the Project, (b) remediation of all punch list items on list approved generated by Contractor and approved by Architect pursuant to Section 10.1.5 for the final Project Component Phase, (c) satisfactory completion of testing and balancing of all building systems installed as part of the Work (in accordance with the applicable manufacturers' standards), (d) Contractor's satisfaction of the final payment requirements of Section 10.2.1.3 for the entire Project, and (e) delivery of the complete Project closeout package required by the GMP Documents. The Application for Payment relating to the Final Payment shall show, in such form and detail, as the Owner shall reasonably require, the remaining Guaranteed Maximum Price and any other amounts reimbursable to the Contractor pursuant to this Contract or any Change Order approved by Owner in accordance with this Contract. If the aggregate amount is greater than the total of previous payments, the Owner will pay the balance due as provided in this Section 10.2.12. If the aggregate amount is less than the total of previous payments, the amount due to the Owner will be remitted with such final statement. The Contractor's Application for Payment for the Final Payment will constitute a further representation that conditions listed in Section 10.2.2 have been fulfilled with respect to the entire Work.

§ 10.2.2 Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Owner (1) an affidavit that all bills for labor, materials and equipment, and other indebtedness connected with the Work for which the Owner or the Owner's property might be responsible or encumbered (less amounts withheld by Owner) have been paid or otherwise satisfied, (2) a certificate evidencing that any insurance required to be maintained by the Contractor or any of its Subcontractors or Sub-subcontractors pursuant to the GMP Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner along with a written statement that the Contractor knows of no substantial reason that such insurance will not be renewable to cover the period required by the GMP Documents, (3) consent of surety, if any, to final payment and (4), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, conditional final payment releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as required by the Contract Documents; and (5), evidence of compliance with all requirements of the GMP Documents (such as notices, certificates, affidavits, other requirements to complete obligations under the GMP Documents), including but not limited to, (a) delivery to Owner of each written warranty and assignment thereof and certificates of inspections for Architect's review and delivery to Owner; (b) delivery to Owner of operating, servicing and maintenance instructions for all equipment included in the Work, including parts lists and special tools for any mechanical Work; and (c) delivery to Owner of a Conditional Final or Unconditional Final Waiver of Liens (the Unconditional Final to be delivered by Contractor following receipt of Final Payment) (AIA Document G-706 or other form satisfactory to Owner) covering all of the Work, including that of all Subcontractors, vendors, labor, materials and services, executed by an authorized officer; (7) copy/ies of permit sign-off(s) from the City of San Diego; and (8) as-built plans in print and electronic format, and any related equipment manuals or binders for the Project in print format. If a Subcontractor refuses to furnish a release

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                                                (1999859025)

or waiver required by the Contract, the Contractor may furnish a bond satisfactory to the Owner to indemnify the Owner against such lien. If such lien remains unsatisfied after payments are made, the Contractor shall refund to the Owner all money that the Owner may be compelled to pay in discharging such lien, including all costs and reasonable attorneys' fees.

§ **10.2.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Owner, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the GMP Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Owner prior to certification of such payment. Such payment shall be made under terms and conditions governing the Final Payment except that it shall not constitute a waiver of claims.

§ **10.2.4** The making of the Final Payment shall constitute a waiver of Claims by the Owner except those arising from

.1    liens, Claims, security interests or encumbrances arising out of the Contract and unsettled;
.2    failure of the Work to comply with the requirements of the GMP Documents; or
.3    terms of special warranties required by the GMP Documents.

§ **10.2.5** Acceptance of the Final Payment by the Contractor, (and of final payment of amounts due and payable to each Subcontractor and material supplier ) shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of the applicable final Application for Payment.

## ARTICLE 11   INSURANCE AND BONDS
### § 11.1 CONTRACTOR'S LIABILITY INSURANCE
§ **11.1.1** Unless such insurance is maintained by the Owner pursuant to an Owner Controlled Insurance Program in accordance with Section 11.1.5 (in which case all references to the insurance required to be carried by Contractor pursuant to this Article 11 or this Section 11.1.1 shall mean insurance coverage protecting the Contractor from the claims set forth in this Section 11.1.1 as maintained by the Owner pursuant to such an Owner Controlled Insurance Program), the Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below, by Contractor's operations and completed operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

.1    Claims under workers' compensation, disability benefit and other similar employee benefit acts that are applicable to the Work to be performed;
.2    Claims for damages because of bodily injury, occupational sickness or disease, or death of the Contractor's employees;
.3    Claims for damages because of bodily injury, sickness or disease, or death of any person other than the Contractor's employees;
.4    Claims for damages insured by usual personal injury liability coverage;
.5    Claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;
.6    Claims for damages because of bodily injury, death of a person or property damage arising out of ownership, maintenance or use of a motor vehicle;
.7    Claims for bodily injury or property damage arising out of completed operations;
.8    Claims involving contractual liability insurance applicable to the Contractor's obligations under Section 9.18; and
.9    All major divisions of coverage on a comprehensive basis including:
      .1    Premises operations (including XCU coverages as applicable);
      .2    Independent Contractors' protective;
      .3    Products and completed operations;
      .4    Personal injury liability with employment exclusion deleted;
      .5    Contractual, liability including specified provision for the Contractor's obligation under Section 9.18;

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:59:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                         (1999859025)

Exhibit 2
Page 77

.6      Owned, non-owned and hired motor vehicles;

.7      Broad form property damage, including completed operations; and

.8      Umbrella excess liability.

**§ 11.1.2** The insurance required by Section 11.1.1 shall be written for not less than limits of liability specified in the GMP Documents or required by law, whichever coverage is greater. Coverages, whether written on an occurrence or claims-made basis, shall be maintained without interruption from the date of commencement of the Work until the date of final payment and termination of any coverage required to be maintained after final payment, and, with respect to the Contractor's completed operations coverage, until the expiration of the period for correction of Work or for such other period for maintenance of completed operations coverage as specified in the GMP Documents. Notwithstanding the foregoing, the insurance coverage required by subparagraph 11.1.1 shall be maintained pursuant to a policy of comprehensive general liability insurance, including property damage, naming Owner, Ground Lessor, and their respective designated affiliates, employees and agents as additional insureds, by endorsement (on an ISO form 2010 07/04, or its equivalent). Contractor shall require that all Subcontractors carry such insurance as well. A "modified occurrence" policy will not be acceptable for any of Contractor's or any Subcontractor's insurance policies required under the GMP Documents. Contractor's insurance shall be maintained at all times during Contractor's performance of the Work, except for the products and completed operation coverage, which coverage is to provide an expiration of coverage not less than ten (10) years following Substantial Completion of the last Project Component Phase of the Project. Furthermore, such insurance shall preclude or waive subrogation claims by the insurer against Owner and Ground Lessor, and their respective affiliates, and their agents, employees, or representatives. Such insurance shall also provide that it is primary insurance with respect to Owner and Ground Lessor and that any other insurance maintained by Owner or Ground Lessor is excess and noncontributing with the insurance required hereunder.

**§ 11.1.3** Certificates of insurance acceptable to the Owner shall be filed with the Owner prior to commencement of the Work and thereafter upon renewal or replacement of each required policy of insurance. These certificates and the insurance policies required by this Section 11.1 shall contain a provision that coverages afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner except that ten (10) days shall apply in the event of cancellation for non-payment of premium. An additional certificate evidencing continuation of liability coverage, including coverage for completed operations, shall be submitted with the final Application for Payment as required by Section 10.2 and thereafter upon renewal or replacement of such coverage until the expiration of the time required by Section 11.1.2. Information concerning reduction of coverage on account of revised limits or claims paid under the General Aggregate, or both, shall be furnished by the Contractor with reasonable promptness. In no event shall any failure of the Owner to receive certified copies or certificates of policies required under this Section 11.1.3, or to demand receipt of such certified copies or certificates prior to the Contractor commencing the Work, be construed as a waiver by the Owner of the Contractor's obligations to obtain insurance pursuant to this Article 11. The obligation to procure and maintain any insurance required by this Article 11 is a separate responsibility of the Contractor and independent of the duty to furnish the certified copy or such certificate of such insurance policies.

**§ 11.1.4** If the Contractor fails to purchase and maintain or cause to be purchased and maintained any insurance required to be maintained by the Contractor pursuant to this Article 11 any time during the performance of the Work, when such insurance is required to be purchased and maintained by the Contractor (including, without limitation, within a reasonable period following notice from the Owner that some or all of the Owner's OCIP insurance coverage satisfying the Contractor's obligation to maintain the insurance policies required by this Section 11.1 will be modified or terminated such that Contractor is required to obtain replacement insurance coverage as a reimbursable cost or as ay be otherwise provided pursuant to an applicable Change Order), the Owner may, but shall not be obligated to, upon 5 days written notice to the Contractor, purchase such insurance on behalf of the Contractor and shall be entitled to deduct the cost of such insurance from any amounts payable to Contractor for the Work.

**§ 11.1.5 OWNER CONTROLLED AND CONTRACTOR CONTROLLED INSURANCE PROGRAMS**

**§ 11.1.5.1** The Owner, at its election may, from time to time, elect to implement an Owner Controlled Insurance Program ("OCIP"), or the Owner and the Contractor may mutually agree to implement a Contractor Controlled Insurance Program ("CCIP"), to furnish one or more of the insurance coverages required to be maintained by Owner or Contractor under this Article 11 with respect to Project Site risks and liabilities, and to replace (or to cause to be replaced) all or any such OCIP or CCIP insurance coverages with independent policies of insurance as are otherwise required under this Article 11. None of the Contractor, Architect and Engineer shall have the right to object to the

**AIA Document A285™ – 2008.** Copyright © 2008 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                               (1999859025)

Init.

/

Exhibit 2
Page 78

Owner's election to implement an OCIP in lieu of the existing insurance coverage maintained by Owner or Contractor as long as the OCIP satisfies the OCIP requirements attached hereto as Appendix 3. If the Owner and the Contractor agree to implement a CCIP to furnish any insurance coverage required under this Article 11, neither the Architect nor the Engineer shall have the right to object to the Owner's and Contractor's mutual agreement to implement a CCIP in lieu of the existing insurance coverage maintained by Owner, Contractor or any of them as long as the CCIP satisfies similar coverage requirements to those set forth in Appendix 3 to this Agreement as the OCIP requirements.

§ 11.1.5.2 General Liability and Excess coverage included in an OCIP or a CCIP shall be written on an occurrence basis and shall be maintained, without interruption, from the date of commencement of the Work of Construction until the date of Final Completion and shall provide for a products and completed operations extended coverage against damage or loss suffered by the Owner arising out of defects in the Work for a period of not less than 10 years or the applicable statute of repose, whichever is longer. Each OCIP or CCIP shall provide coverage for the Contractor, Subcontractors of every tier and extend to Owner and any of its agents engaged in supervision of work as well as to provide the Owner, Ground Lessor and their respective designated affiliates, employees and agents additional insured status on ISO form 2010 07 04, or its equivalent. With respect to any CCIP, the Contractor shall also waive subrogation claims by the insurer against Owner and Ground Lessor, and their respective affiliates, and their agents, employees, or representatives. Such insurance shall be primary insurance for the project and that any other similar insurance maintained by the Contractor, Subcontractors, Owner or Ground Lessor is excess and noncontributing with the CCIP insurance provided. Workers Compensation coverage within the CCIP, if any, shall meet statutory requirements and provide employers liability coverage. Additionally, Contractor and Subcontractors of every tier shall be required to procure and maintain off-site coverage for any off-site loss or damage to property or injury to or death of personal related to the Work of the Project equal to what is specified in 11.1 and evidence such coverage as specified in 11.1.3.

### § 11.1.5.3 OCIP SPECIFIC REQUIREMENTS
§ 11.1.5.3.1   The OCIP will be for the benefit of the Owner and Contractor and Subcontractors of all tiers (unless specifically excluded), who have on-site employees at the Project Site, . Such coverage shall apply only to Work performed under the Contract Documents at the Project Site. The OCIP shall not include, and the Owner shall not be responsible for providing, any insurance coverage other than those specifically identified in an OCIP Manual, which shall be provided to the other parties at the time of the Owner's notice to them of its election to implement an OCIP for the Project. If the OCIP covers the Contractor's and Subcontractors' liability insurance required by Section 11.1.1, the first $25,000 of each loss or damage that would be otherwise covered under such insurance coverage and any uninsured losses shall be paid for by the Contractor or Subcontractor who is primarily responsible for such loss or damage.  Owner's builder's risk insurance coverage included as part of the OCIP will not cover loss of, or damage to, any tools, implements, equipment, scaffolds, formwork, machinery, cranes, consumables, office trailers, tool sheds, temporary structures or anything else which is not intended to become a permanent part of the finished Project. The Contractor and the Subcontractors must provide their own insurance coverage for loss or damage to their personal property while located at the Project Site activities, as well as for any off-site activities related to the Project and any automobile liability coverage required under the Contract Documents, provided that to the extent the costs of such insurance would be otherwise covered by the insurance requirements of this Article 11, the cost of such insurance shall be included in the Cost of the Work payable by the Owner. To the extent Contractor and or any Subcontractor becomes ineligible for the OCIP or is no longer covered by the OCIP, Contractor and such Subcontractor shall provide all insurance required to be maintained by them under this Article 11 as a Cost of the Work.

§ 11.1.5.3.2  Subject to the terms and conditions of this Section 11.1.5, participation in the OCIP by the Contractor and its Subcontractors is mandatory but not automatic. Contractor shall, and Contractor shall cause all Subcontractors to, complete all forms, submit the information required and abide by the requirements of Appendix 3   mandates established in the OCIP Manual.

§ 11.1.5.3.3   The Contract Sum shall exclude the cost of OCIP provided insurance coverage from the cost of the work performed by Subcontractors of every trade (with the exception of any Subcontractors acting in the capacity of an Excluded Party in the performance of any design elements of the Work) and any self-performed work of the Contractor, except to the extent that Owner elects Contractor to maintain OCIP provided insurance coverage on any self-performed work, or any Subcontractor to maintain OCIP provided insurance coverage on the work of a particular subcontract, pursuant to Owner's approval of Contractor's or such Subcontractor's respective "add alternate bid" for

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                         (1999859025)

Exhibit 2
Page 79

the cost of such work with insurance provided by the Contractor or such Subcontractor. Contractor shall use its best efforts to carefully review all Subcontractor Insurance Credit Worksheets (as required to be completed by the OCIP Manual) and pricing information to ensure that the Owner is not required to pay a second time as part of Cost of the Work, for OCIP provided insurance coverages. Contractor shall also ensure that any Change Orders entered into pursuant to the Contract Documents are priced so as to include all Subcontractor Insurance Credit Worksheets (as well as for any self-performed of the Contractor) calculating the discounted cost of the work pursuant to the OCIP insurance coverages being provided by the Owner.

### § 11.1.5.4 CCIP CRITERIA
If the Owner and Contractor mutually agree to have the Contractor implement a CCIP or if the Owner and the Contractor agree to mutually implement any combination of an OCIP and a CCIP for the Project, the CCIP shall be maintained by the Contractor in accordance with CCIP requirements that are substantially similar to the OCIP requirements set forth in Appendix 3 to this Agreement, unless the Owner and the Contractor agree to different requirements set forth in a CCIP Manual approved by the Owner and provided to the Architect and Engineer when the Owner provides them with notice of the Owner's and Contractor's agreement to implement a CCIP pursuant to this Section 11.1.5.4 with respect to some or all of the on-site risks that would be covered by an OCIP if the Owner had elected to implement an OCIP; provided that the CCIP shall be limited to the Contractor's and Subcontractors' liability insurance requirements of Section 11.1.1 and/or Excess and Workers Compensation coverage. CCIP coverage shall be procured and maintained with a company or companies lawfully authorized to do business in the State of California.

### § 11.2 OWNER'S LIABILITY INSURANCE
The Owner shall be responsible for purchasing and maintaining the Owner's usual liability insurance.

### § 11.3 PROPERTY INSURANCE
§ 11.3.1 Unless otherwise provided, the Owner shall purchase and maintain, before exposure to a covered loss may occur, in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located, property insurance written on a builder's risk "all-risk" or equivalent policy form in the amount of the initial Contract Sum, plus value of subsequent Contract Modifications and cost of materials supplied or installed by Owner or others, comprising total value for the entire Project at the site on a replacement cost basis, including cost to cover professional fees, without optional deductibles. Such property insurance shall be maintained, unless otherwise provided in the GMP Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made as provided in Section 10.2 or until no person or entity other than the Owner has an insurable interest in the property required by this Section 11.3 to be covered, whichever is later. This insurance shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project. Loss of or damage to construction materials and equipment, which have been or are to be incorporated into the Work and which are stored at the Project Site, off-site locations approved by Owner in advance and solely dedicated to the storage of materials to be incorporated in the Work in storage or in transit, due to fire, weather and all other adversity generally covered by the form of Builder's Risk insurance coverage specified in this Section 11.3.1 for the market in which the Project is located, shall be the responsibility of Owner. All other loss or damage to construction materials and equipment, any and all personal property of Contractor or any Subcontractor, at the Project Site, and any additional cost of clean-up, personnel protective measures and other remedial expenses required for completion of the Work as a result of fire, water penetration and mold conditions resulting from the Work, or disturbance of hazardous materials arising out of Contractor's negligent failure to ascertain the presence thereof (based on the age and the existing condition of the Project Site), is solely the responsibility of the Contractor as provided in Section 9.24.2.1.2, and no loss thereof shall increase the Cost of the Work nor shall such loss be payable from the Owner's or Contractor's Contingency except as otherwise provided therein. Contractor, subcontractors, and sub-subcontractors shall be named as additional insureds under such property policy.

§ 11.3.1.1 Property insurance shall be on an "all-risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, including resulting damage arising out of any faulty workmanship, design error or omission, earthquake, flood, windstorm, falsework, testing and startup, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's, Engineer's and Contractor's services and expenses required as a result of such insured loss.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                          (1999859025)

Init.

/

60

Exhibit 2
Page 80

§ **11.3.1.1.1** If Owner chooses not to purchase property insurance covering damage to Work caused by the perils of earthquake, windstorm, terrorism or flood, the Owner shall be responsible for the cost of any damage and repair to the Work resulting from such perils. The Owner, furthermore, waives claims against the Contractor for damage caused by such perils and agrees to indemnify the Contractor from any and all such claims.

§ **11.3.1.2** If the Owner does not intend to purchase such property insurance required by the Contract and with all of the coverages in the amount described above, the Owner shall so inform the Contractor in writing prior to commencement of the Work. The Contractor may then effect insurance that will protect the interests of the Contractor, Subcontractors and Sub-subcontractors in the Work, and by appropriate Change Order the cost thereof shall be charged to the Owner. If the Contractor is damaged by the failure or neglect of the Owner to purchase or maintain insurance as described above, without so notifying the Contractor in writing, then the Owner shall bear all reasonable costs properly attributable thereto.

§ **11.3.1.3** If the property insurance requires deductibles, the Owner shall pay costs not covered because of such deductibles; however, this amount shall not include any Contractor Obligation

§ **11.3.1.4** This property insurance shall cover portions of the Work stored off the site, and also portions of the Work in transit.

§ **11.3.1.5** Occupancy or use of any Project Component Phase prior to the Substantial Completion thereof in accordance with Section 9.23.8 shall not commence until the insurance company or companies providing property insurance have consented to such occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

§ **11.3.1.6** The Contractor shall be responsible for all damages to its Work that is an excluded peril under the Builders Risk Policy due to Contractor's or Subcontractor's willful misconduct or gross negligence.

§ **11.3.2 BOILER AND MACHINERY INSURANCE**
The Owner shall purchase and maintain boiler and machinery insurance required by the GMP Documents or by law, which shall specifically cover such insured objects during installation and until final acceptance by the Owner; this insurance shall include interests of the Owner, Contractor, Subcontractors and Sub-subcontractors in the Work, and the Owner and Contractor shall be named insureds.

§ **11.3.3 LOSS OF USE INSURANCE**
The Owner, at the Owner's option, may purchase and maintain such insurance as will insure the Owner against loss of use of the Owner's property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of the Owner's property, including consequential losses due to fire or other hazards however caused.

§ **11.3.4** If the Contractor requests in writing that insurance for risks other than those described herein or other special causes of loss be included in the property insurance policy, the Owner shall, if possible, include such insurance, and the cost thereof shall be charged to the Contractor by appropriate Change Order.

§ **11.3.5** If during the Project construction period the Owner insures properties, real or personal or both, at or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Section 11.3.7 for damages caused by fire or other causes of loss covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

§ **11.3.6** Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Section 11.3. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be canceled or allowed to expire, and that its limits will not be reduced, until at least 30 days' prior written notice has been given to the Contractor. . If the Owner has not provided acceptable evidence of property insurance coverage required herein before exposure to a covered loss may occur, then the Contractor may, in the event

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                               (1999859025)

Exhibit 2
Page 81

Owner fails to obtain such insurance coverage within 30 days following written notice that Contractor intends to obtain such coverage on the Owner's behalf, obtain such coverage and by appropriate Change Order the cost thereof shall be charged to the Owner. If adequate coverage is later obtained by the Owner, then the Contractor shall terminate any property insurance coverage so obtained.

### § 11.3.7 WAIVERS OF SUBROGATION
The Owner and Contractor waive all rights against (1) each other and any of their Subcontractors, Sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, Engineer, Engineer's consultants, separate contractors described in Section 9.20, if any, and any of their Subcontractors, Sub-subcontractors, agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, Engineer, Engineer's consultants, separate contractors described in Section 9.20, if any, and the Subcontractors, Sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

§ 11.3.8 A loss insured under the Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Section 11.3.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

§ 11.3.9 If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary to the extent such costs are covered under the policy. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or as determined in accordance with the method of binding dispute resolution selected in the Agreement between the Owner and Contractor. If after such loss no other special agreement is made and unless the Owner terminates the Contract for convenience, replacement of damaged property shall be performed by the Contractor after notification of a Change in the Work in accordance with Section 9.21.

§ 11.3.10 The Owner as fiduciary shall have power to adjust and settle a loss with insurers, subject to Contractor's agreement of such adjustment and settlement and only in the event that the Contractor's and/or its subcontractors' interests are affected. Any disputes shall be resolved as provided in Sections 15.3 and 15.4. The Owner as fiduciary shall, in the case of arbitration, make settlement with insurers in accordance with directions of the arbitrators. If distribution of insurance proceeds by arbitration is required, the arbitrators will direct such distribution.
§ 11.3.11 Notwithstanding anything to the contrary in this Contract, Contractor's performance of any replacement of the Work shall be performed pursuant to the Change Order provisions of Article 7, to the extent that; (i) the damage is covered by the property insurance provisions of the Contract; or (ii) the damage is not due to the negligence or willful misconduct of the Contractor.

### § 11.4 PERFORMANCE BOND AND PAYMENT BOND
§ 11.4.1 The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the GMP Documents on the date of execution of the Contract.

§ 11.4.2 Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall authorize a copy to be furnished.

### § 11.5 SUBCONTRACTOR DEFAULT INSURANCE
§ 11.5.1 The Contractor shall have the right to provide subcontractor default insurance for eligible Projects.

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                            (1999859025)

62

Exhibit 2
Page 82

**ARTICLE 12   MISCELLANEOUS PROVISIONS**
**§ 12.1 SUCCESSORS AND ASSIGNS**
§ 12.1.1 The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to covenants, agreements and obligations contained in the GMP Documents. Except as provided in Section 12.1.2, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

§ 12.1.2 The Owner may, without consent of the Contractor, assign the Contract to any affiliate of Owner to whom the Owner's leasehold interest in the Project Site is assigned, the Ground Lessor or any mortgagee of Ground Lessor's fee interest in the Project Site, or to a lender providing construction financing for the Project, but only if Ground Lessor or such mortgagee or the lender assumes the Owner's payment obligations under the GMP Documents. The Contractor shall execute all consents reasonably required to facilitate such assignment.

**§ 12.2 WRITTEN NOTICE**
Written notice (which shall include electronic transmission, but only if receipt is confirmed by the intended recipient by electronic response within 24 hours following transmission to the intended recipient) shall be deemed to have been duly served when delivered in person to the individual, to a member of the firm or entity, or to an officer of the corporation for which it was intended; or three (3) business days after deposit in the United States Mail, if sent by registered or certified mail, return receipt requested, or if transmitted before 5:00 p.m. local time, on a business day, on the date transmitted by electronic mail or facsimile (as evidenced by facsimile confirmation), otherwise on the next business day, or when delivered by a reputable courier service providing proof of delivery to, the last business address known to the party giving notice.

**§ 12.3 RIGHTS AND REMEDIES**
§ 12.3.1 Duties and obligations imposed by the GMP Documents and rights and remedies available thereunder shall be in addition to and not a limitation of duties, obligations, rights and remedies otherwise imposed or available by law.

§ 12.3.2 No action or failure to act by the Owner, Architect, Engineer or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach there under, except as may be specifically agreed in writing.

§ 12.3.3 No consent or waiver, express or implied, by either party to the Agreement to or of any breach or default by the other in the performance of any obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default by such party hereunder. Inspection by, payment by, or tentative approval or acceptance by Owner or the failure of Owner to perform any inspection hereunder shall not constitute a final acceptance of the Work or any part thereof and shall not release Contractor of any of its obligations hereunder.

**§ 12.4 TESTS AND INSPECTIONS**
§ 12.4.1 Tests, inspections and approvals of portions of the Work shall be made as required by the GMP Documents and by applicable laws, statutes, ordinances, codes, rules and regulations or lawful orders of public authorities. Unless otherwise provided, the Contractor shall make arrangements for such tests, inspections and approvals with an independent testing laboratory or entity acceptable to the Owner, or with the appropriate public authority, and shall bear all related costs of tests, inspections and approvals as provided for in the Contract. The Contractor shall give the Architect and Engineer timely notice of when and where tests and inspections are to be made so that the Architect and Engineer may be present for such procedures. The Owner shall bear costs of (1) tests, inspections or approvals that do not become requirements until after bids are received or negotiations concluded, and (2) tests, inspections or approvals where building codes or applicable laws or regulations prohibit the Owner from delegating their cost to the Contractor.

§ 12.4.2 If the Architect, Engineer, Owner or public authorities having jurisdiction determine that portions of the Work require additional testing, inspection or approval not included under Section 12.4.1, the Architect and Engineer will, upon written authorization from the Owner, instruct the Contractor to make arrangements for such additional testing, inspection or approval by an entity acceptable to the Owner, and the Contractor shall give timely notice to the Architect and Engineer of when and where tests and inspections are to be made so that the Architect and Engineer may be present for such procedures. Such costs, except as provided in Section 12.4.3, shall be at the Owner's expense.

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410326020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                      (1999859025)

Exhibit 2
Page 83

§ **12.4.3** If such procedures for testing, inspection or approval under Sections 12.4.1 and 12.4.2 reveal failure of the portions of the Work to comply with requirements established by the GMP Documents, all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's and Engineer's services and expenses shall be at the Contractor's expense.

§ **12.4.4** Required certificates of testing, inspection or approval shall, unless otherwise required by the GMP Documents, be secured by the Contractor and promptly delivered to the Architect.

§ **12.4.5** If the Architect or Engineer is to observe tests, inspections or approvals required by the GMP Documents, the Architect or Engineer will do so promptly and, where practicable, at the normal place of testing.

§ **12.4.6** Tests or inspections conducted pursuant to the GMP Documents shall be made promptly to avoid unreasonable delay in the Work.

§ **12.5 INTEREST**
Payments due and unpaid under the GMP Documents shall bear interest from the date payment is due at five percent (5%) per annum over the prime rate of the Wells Fargo Bank of San Francisco prevailing on the 25th day of the month preceding the date that payment was due .

§ **12.6 TIME LIMITS ON CLAIMS**
The Owner and Contractor shall commence all claims and causes of action, whether in contract, tort, breach of warranty or otherwise, against the other arising out of or related to the Contract in accordance with Article 13 within the time period specified by applicable law, but in any case not more than 10 years after the date of Substantial Completion of the Work. The Owner and Contractor waive all claims and causes of action not commenced in accordance with this Section 12.6.

§ **12.7 INVALIDITY**
The invalidity of any part of provision of the GMP Documents shall not impair or affect in any manner whatsoever the validity, enforceability or effect of the remainder of the Contract Documents.

§ **12.8 PROFESSIONAL LICENSES**
So long as Contractor is obligated to render any services to Owner under this Contract, and in any event until completion by Contractor of all Work, Contractor shall maintain in full force and effect, and shall cause its employees so to obtain and maintain, such professional or business licenses, certificates, or other professional, governmental or other approvals or permits necessary to perform Work hereunder in the state where the Project Site is located.

§ **12.9 INDEPENDENT CONTRACTOR**
Contractor acknowledges that it is an independent contractor engaged by Owner to perform construction services in accordance with the terms and conditions of this Contract and that the agency relationship thereby created is specifically governed by, limited to and subject to all of the terms, covenants and conditions contained in this Contract. Nothing contained in the GMP Documents shall entitle Contractor or its agents or employees, to the status or benefits of an employee of Owner or entitle Contractor to the right or authority to make any representation on behalf of or bind Owner to others in any manner, except as herein specifically provided. Nothing contained in this Contract shall be construed to create any type or manner of partnership, joint venture or enterprise with or between Contractor and Owner. Any direction or instruction by Owner with respect to the Work shall relate to the results the Owner desires to obtain from the Work, and shall in no way affect Contractor's independent contractor status as described herein.

§ **12.10 ASSIGNMENT**
Contractor hereby consents to the collateral assignment of the GMP Documents by the Owner to the Ground Lessor and any mortgagee of the Ground Lessor's interest in the Project Site, provided that such assignment shall not relieve the Owner of any of the covenants, duties, or obligations contained in the GMP Documents, nor alter or impair any of the Contractor's rights contained therein. The Contractor and all Subcontractors shall execute and deliver any instruments reasonably required by the Owner, Landlord or any mortgagee of Landlord's interest in the Project Site in connection with such assignment.

§ **12.11 ADVERTISEMENTS/PUBLICITY**

**Init.**

**/**

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                 (1999859025)

**64**

Exhibit 2
Page 84

The Contractor shall make no representation of having performed services for the Owner in any advertisement or promotional material nor shall the Contractor make any publicity release concerning its services performed under this Agreement without the written approval of Owner and Contractor shall instruct its employees and Subcontractors of the existence of this provision and that the existence of this Agreement is not to be revealed in the solicitation of any business.

### § 12.12 REMEDIES CUMULATIVE
All rights and remedies of Owner under this Contract, and each and every provision hereof, are cumulative and not alternative, and may be exercised separately or concurrently in accordance with the provisions of this Agreement or as permitted by law.

### § 12.13 OWNER'S RIGHTS TO TERMINATE THIS CONTRACT
### § 12.13.1 TERMINATION FOR CONVENIENCE
The Owner may terminate this Contract with respect to any or all of the Contractor, Architect and Engineer for convenience at any time for reasons other than for cause, without prejudice to any claims that the Owner may have against any of them so terminated, by giving the terminated party at least 7 days prior written notice thereof. In the event a terminated party is the Contractor, and such termination occurs after the establishment of the GMP, the Owner shall pay the Contractor such portions of the Guaranteed Maximum Price as are due and properly invoiced for Work performed prior to the effective date of such termination, together with reasonable termination expenses necessarily incurred by Contractor, and Contractor shall comply with the requirements for final payment with respect to Owner's payment of such amount. In the event a terminated party is the Architect or the Engineer, or the Contractor prior to the establishment of the GMP, the Owner shall pay the terminated party for the services performed pursuant to the Services Contract of the terminated party prior to termination, together with any Reimbursable Expenses then due and a termination fee equivalent to two (2) weeks of compensation based on the weekly average of fees for professional services provided by the terminated party (as averaged over the 6-week period immediately preceding termination). In exchange for the termination fee payable to the Architect and Engineer upon such a termination, the terminated party will perform closeout services as required for a coordinated transition of the Services to the replacement Services provider identified by the Owner over a period of up to two weeks following Owner's delivery of notice of termination to the terminated party. Neither Contractor, Architect nor Engineer shall be paid their anticipated profits or revenues for Work not performed or for economic losses relating to the termination of the Contract by Owner with respect to any of them.

### § 12.13.2 TERMINATION FOR CAUSE
Should Contractor, or the Architect or Engineer at any time:
   .1   Fail to perform the Work or their respective Services with reasonable promptness and diligence, or
   .2   Repeatedly fail to make prompt payment of undisputed balances to Subcontractors or consultants engaged in the Work or Services of the project, or
   .3   Repeatedly fail or refuse to supply a sufficient number of qualified personnel, or
   .4   Become insolvent or be unable to pay its debts as they mature, or
   .5   Make a general assignment for the benefit of creditors, or
   .6   Fail to cause the dismissal of any receiver appointed for the whole or any substantial part of Contractor's assets within 60 days following such appointment, or
   .7   Become in any way the subject of a bankruptcy petition, or
   .8   Breach any material provision of this Contract, then Owner may, in addition to all other rights and remedies provided by this Contract, terminate this Contract for cause by giving the terminated party 7 days prior written notice thereof. If the terminated party cures such breach within 7 days of receiving said notice, the notice of termination of default to such terminated party will be promptly rescinded.

In the event a terminated party is the Architect or the Engineer, or the Contractor prior to the establishment of the GMP, the Owner shall pay the terminated party for the services performed pursuant to the Services Contract of the terminated party prior to termination, together with any Reimbursable Expenses then due and a termination fee equivalent to two (2) weeks of compensation based on the weekly average of fees for professional services provided by the terminated party (as averaged over the 6-week period immediately preceding termination). In exchange for the termination fee payable to the Architect and Engineer upon such a termination, the terminated party will perform closeout services as required for a coordinated transition of the Services to the replacement Services provider identified by the Owner over a period of up to two weeks following Owner's delivery of notice of termination to the terminated party. Neither Contractor, Architect nor Engineer shall be paid their anticipated profits or revenues for

Init.

AIA Document A295™ – 2008. Copyright © 2006 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:56:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                              (1999859025)

65

Exhibit 2
Page 85

Work not performed or for economic losses relating to the termination of the Contract by Owner with respect to any of them.

### § 12.13.3 CESSATION AND PROTECTION OF WORK

Should the Owner exercise any right afforded to it to terminate this Contract, the Contractor shall, unless otherwise directed by the Owner:

.1  Immediately discontinue the Work, and, if requested by the Owner, make every reasonable effort to procure cancellation of all existing orders and subcontracts on terms satisfactory to Owner;

.2  Proceed with such work (and only such work) as may be necessary to preserve and protect that portion of the Work then in place in the Project Site, and to protect material and equipment in transit, in storage on the Project Site; and

.3  Remove itself and all its tools and equipment from the Project Site as soon as practicable, except as otherwise directed by the Owner.

### § 12.13.4 COMPLETION AND PAYMENT

**§ 12.13.4.1** Should this Contract be terminated for cause under Paragraph 12.13.2, the Owner may perform the Work by whatever method or means it deems appropriate, and Owner shall be entitled to deduct the cost of performance thereof from any amount owed to Contractor, to the extent such cost of performance exceeds the total Guaranteed Maximum Price under this Contract. In such event, the Contractor shall not be entitled to any further payments until the Work is performed, at which time Contractor shall prepare a Requisition for Payment for completion earned to the date of termination. The amount of such Requisition for Payment shall become due and payable when approved by the Owner after completion of the remainder of the Work by Owner or its agents, and subject to any deduction for any increase in the total cost of performing the remainder of the Work.

**§12.13.4.1** In the event the amount deducted under Paragraph 12.13.4.1 does not fully compensate the Owner for an increase in the total cost of performing the remainder of the Work, the Contractor shall be liable to Owner for the excess amount thereof, which shall be subject to Indemnity under Section 9.18.1 above.

### §12.13.5 WRONGFUL TERMINATION

If at any time after a termination of this Contract for cause under Section 12.13.2, it is determined through a dispute resolution under Article 13 that such termination was wrongful, such Termination for Cause shall be deemed to have occurred under the provisions of Section 12.13.1 as a Termination for Convenience.

### § 12.14 CONFIDENTIALITY

**§ 12.14.1** "Confidential Information" means any proprietary information of Owner, including, without limitation, any technical data, trade secrets, research, product plans, products, services, suppliers, employee lists and employees, customers lists and customers (including but not limited to customers of Owner with whom Contractor may become acquainted during the performance of the Work), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, budgets or other business information disclosed by Owner either directly or indirectly in writing, orally or by drawings or inspection of parts or equipment.  Confidential Information does not include information which: (i) is known to Contractor at the time of disclosure to Contractor by Owner as evidenced by Contractor's written records, (ii) has become publicly known and made generally available through no wrongful act of Contractor, or (iii) has been rightfully received by Contractor from a third party who is authorized to make such disclosure.

**§ 12.14.2** Contractor shall prevent disclosure and shall not, during or subsequent to the term of this Agreement, use Owner's Confidential Information for any purpose whatsoever other than the performance of the Services on behalf of Owner or disclose Owner's Confidential Information to any third party except on an as needed basis to complete the Services. It is understood that said Confidential Information shall remain the sole property of Owner. Contractor further agrees to take all reasonable precautions to prevent any violation of these provisions (or the other provisions of this Agreement), including, without limitation, requiring, all of Contractor's employees, independent consultants, agents, representatives and contractors performing any services pursuant to the GMP Documents to execute a written agreement protecting Confidential Information received by Contractor and containing provisions at least as restrictive as those set forth in this Agreement.

**Init.**

**/**

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                           (1999859025)

Exhibit 2
Page 86

§ 12.14.3 Contractor recognizes that Owner may receive confidential or proprietary information of third parties from Owner during the term of this Agreement which is subject to a duty of confidentiality on Owner's and to be used only for certain limited purposes. In the event Owner notifies Contractor that any information that Owner discloses to Contractor is subject to the Owner's duty of confidentiality to a third party, Contractor agrees that Contractor shall owe such third parties, during the term of this Agreement and thereafter, a similar duty to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation, and not to use it except as necessary in carrying out the Services.

§ 12.14.4 Contractor agrees that Contractor will not, during the term of this Agreement, improperly use or disclose any proprietary information or trade secrets of any former or current client or other person or entity with which Contractor has an agreement or duty to keep in confidence information acquired by Contractor, if any, and that Contractor will not bring onto the premises of Owner any unpublished document or proprietary information belonging to such employer, person or entity unless consented to in writing by such employer, person or entity. Contractor also agrees that the employees provided by Contractor will not use the resources of Contractor's former or current clients. Contractor will indemnify Owner and hold it harmless from and against all claims, liabilities, damages and expenses, including reasonable attorney's fees and costs of suit, arising out of or in connection with any violation or claimed violation of a third party's rights resulting in whole or in part from Owner's use of the work product of Contractor's under this Agreement.

## ARTICLE 13   CLAIMS AND DISPUTES
### § 13.1 CLAIMS
### § 13.1.1 DEFINITION
A Claim is a demand or assertion by the Owner, or Contractor seeking, as a matter of right, payment of money, or other relief with respect to disputes and matters in question between arising out of or relating to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim.

### § 13.1.2 NOTICE OF CLAIMS
Claims by either the Owner or Contractor must be initiated by written notice to the other party and to the appropriate Initial Decision Maker as determined in accordance with Section 1.3.12, with a copy sent to the Architect or Engineer, who is not serving at the Initial Decision Maker. Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.

### § 13.1.3 CONTINUING CONTRACT PERFORMANCE
Pending final resolution of a Claim, except as otherwise agreed in writing or as provided in Section 9.23.7 and Article 7 of the Owner-Contractor Agreement, the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the GMP Documents. The Architect will prepare Change Orders and issue Certificates for Payment in accordance with the decisions of the Initial Decision Maker.

### § 13.1.4 CLAIMS FOR ADDITIONAL COST
If the Contractor wishes to make a Claim for an increase in the Contract Sum, written notice as provided herein shall be given before proceeding to execute the Work. Prior notice is not required for Claims relating to an emergency endangering life or property arising under Section 9.24.4.

### § 13.1.5 CLAIMS FOR ADDITIONAL TIME
### § 13.1.5.1 If the Contractor wishes to make a Claim for an increase in the Contract Time, written notice as provided herein shall be given in accordance with Section 9.22.3.1. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one Claim is necessary.

### § 13.1.5.2 Included in the Contract Time and Guaranteed Maximum Price are ten (10) work days which are anticipated to be lost due to inclement weather (the "**Included Delays**"). The Contractor will advise the Owner monthly as to the status of the delays claimed to be lost due to inclement weather. At such time as the accumulated number of lost days exceeds the allotment of the Included Delays, that difference shall constitute a time extension and the Owner shall issue a Change Order to this Contract extending the Contract Time the required number of days and adjusting the

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:59:11 on 11/27/2012 under Order No.3410326020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                      (1999859025)

Exhibit 2
Page 87

Guaranteed Maximum Price (including the Contractor's Fee) by an amount the Contractor reasonably estimates the delay has cost.

**§ 13.1.6**
*(Paragraphs deleted)*
INTENTIONALLY OMITTED.

**§ 13.2 INITIAL DECISION**

**§ 13.2.1** Claims arising after the commencement date of the Work, excluding those arising under Sections 9.24.3, 9.24.4, 11.3.9, and 11.3.10, shall be referred to the Initial Decision Maker for initial decision. The Architect will serve as the Initial Decision Maker for initial decisions relating to those portions of the Project and Work primarily associated with the Architectural Services, unless otherwise indicated in the Owner-Contractor Agreement. The Engineer will serve as the Initial Decision Maker for initial decisions relating to those portions of the Project and Work primarily associated with the MEP Services, unless otherwise indicated in the Owner-Contractor Agreement. Except for those Claims excluded by this Section 13.2.1, an initial decision shall be required as a condition precedent to mediation of any such Claim arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Initial Decision Maker with no decision having been rendered. Unless the Initial Decision Maker and all affected parties agree, the Initial Decision Maker will not decide disputes between the Contractor and persons or entities other than the Owner.

**§ 13.2.2** The Initial Decision Maker will review Claims and within ten days of the receipt of a Claim take one or more of the following actions: (1) request additional supporting data from the claimant or a response with supporting data from the other party, (2) reject the Claim in whole or in part, (3) approve the Claim, (4) suggest a compromise, or (5) advise the parties that the Initial Decision Maker is unable to resolve the Claim if the Initial Decision Maker lacks sufficient information to evaluate the merits of the Claim or if the Initial Decision Maker concludes that, in the Initial Decision Maker's sole discretion, it would be inappropriate for the Initial Decision Maker to resolve the Claim.

**§ 13.2.3** In evaluating Claims, the Initial Decision Maker may, but shall not be obligated to, consult with or seek information from either party or from persons with special knowledge or expertise who may assist the Initial Decision Maker in rendering a decision. The Initial Decision Maker may request the Owner to authorize retention of such persons at the Owner's expense.

**§ 13.2.4** If the Initial Decision Maker requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either (1) provide a response on the requested supporting data, (2) advise the Initial Decision Maker when the response or supporting data will be furnished or (3) advise the Initial Decision Maker that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Initial Decision Maker will either reject or approve the Claim in whole or in part.

**§ 13.2.5** The Initial Decision Maker will render an initial decision approving or rejecting the Claim, or indicating that the Initial Decision Maker is unable to resolve the Claim. This initial decision shall (1) be in writing; (2) state the reasons therefor; and (3) notify the parties and the Architect, if the Architect is not serving as the Initial Decision Maker, of any change in the Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject to mediation and, if the parties fail to resolve their dispute through mediation, to binding dispute resolution.

**§ 13.2.6** Either party may file for mediation of an initial decision at any time, subject to the terms of Section 13.2.6.1.

**§ 13.2.6.1** Either party may, within 30 days from the date of an initial decision, demand in writing that the other party file for mediation within 60 days of the initial decision. If such a demand is made and the party receiving the demand fails to file for mediation within the time required, then both parties waive their rights to mediate or pursue binding dispute resolution proceedings with respect to the initial decision.

**§ 13.2.7** In the event of a Claim against the Contractor, the Owner may, but is not obligated to, notify the surety, if any, of the nature and amount of the Claim. If the Claim relates to a possibility of a Contractor's default, the Owner may, but is not obligated to, notify the surety and request the surety's assistance in resolving the controversy.

Init.

*I*

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                   (1999859025)

§ **13.2.8** If a Claim relates to or is the subject of a mechanic's lien, the party asserting such Claim may proceed in accordance with applicable law to comply with the lien notice or filing deadlines.

### § 13.3 MEDIATION
§ **13.3.1** Claims, disputes, or other matters in controversy arising out of or related to the Project except those waived as provided for in Sections 10.2.4, 10.2.5, and 13.1.6 shall be subject to mediation as a condition precedent to binding dispute resolution.

§ **13.3.2** If a dispute arises out of or relating to this Contract or the breach thereof, and if said dispute cannot be settled through direct discussions, the parties shall endeavor to resolve their Claims by mediation which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Mediation Procedures in effect on the date of the Owner-Contractor Agreement. The parties shall endeavor in good faith to settle the dispute in an amicable manner within 45 days of submission to mediation. A request for mediation shall be made in writing, delivered to the other party to the Contract, and filed with the person or entity administering the mediation. The request may be made concurrently with the filing of binding dispute resolution proceedings but, in such event, mediation shall proceed in advance of binding dispute resolution proceedings, which shall be stayed pending mediation for a period of 60 days from the date of filing, unless stayed for a longer period by agreement of the parties or court order. If an arbitration is stayed pursuant to this Section 13.3.2, the parties may nonetheless proceed to the selection of the arbitrator(s) and agree upon a schedule for later proceedings.

§ **13.3.3** The parties shall share the mediator's fee and any filing fees equally. The mediation shall be held in the place where the Project is located, unless another location is mutually agreed upon. Agreements reached in mediation shall be enforceable as settlement agreements in any court having jurisdiction thereof.

### § 13.4 ARBITRATION/FINAL RESOLUTION
§ **13.4.1** The Contractor, the Architect, the Engineer and the Owner shall not be obligated to resolve any Claim or dispute related to the Contract by arbitration.  Any reference herein to arbitration is deemed void.

*(Paragraph deleted)*
§ **13.4.2** If the parties are unable to resolve the Claim through mediation, then either party may initiate litigation in the appropriate court for San Diego County, California having jurisdiction over the Claim and no other judicial forum. This Contract shall be construed in accordance with the laws of the State of California.

*(Paragraph deleted)*
### § 13.4.4 CONSOLIDATION OR JOINDER
§ **13.4.4.1** The Owner and Contractor, at their individual discretion, may consolidate an arbitration conducted under Owner-Contractor Agreement with any other arbitration to which they are a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation, (2) the arbitrations to be consolidated substantially involve common questions of law or fact, and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).

§ **13.4.4.2** The Owner and Contractor, at their individual discretion, may include by joinder persons or entities substantially involved in a common question of law or fact whose presence is required if complete relief is to be accorded in arbitration, provided that the party sought to be joined consents in writing to such joinder. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent.

§ **13.4.4.3** The Owner and Contractor grant to any person or entity made a party to an arbitration conducted under this Section 13.4, whether by joinder or consolidation, the same rights of joinder and consolidation as the Owner and Contractor under the Owner-Contractor Agreement.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410326020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                     (1999859025)

Init.

/

Exhibit 2
Page 89

## APPENDIX 1

### OWNER'S SITE SAFETY PROGRAM

1.  The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract. The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

   (a)  employees on the Work and other persons who may be affected thereby;

   (b)  the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and

   (c)  other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

2.  The Contractor shall maintain a construction site safety poster or sign clearly displayed at entrance to the Project Site, providing (a) appropriate OSHA site safety reminders relating to Personal Protective Equipment (PPE) Requirements; (b) contact information of person in charge of safety for the Project; (c) local emergency contact information and other essential safety information. The Contractor shall also comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities bearing on safety of persons and property and their protection from damage, injury or loss. The cost of such compliance obligations of Contractor is included in the Contract Sum, including, without limitation, Contractor's obligation to satisfy all PPE requirements for persons entering within construction zone(s)/area(s) of the Project Site. Contractor shall have PPE available for visitors entering into construction zone(s)/area(s) of the Project Site (e.g., spare hard hats and ANSI approved safety glasses), and shall ensure that all of Contractor's employees, Subcontractors, sub-Subcontractors and Site visitors comply with PPE requirements at the Site.

3.  The Contractor shall maintain policy and enforcement procedures to prevent the Contractor's and its Subcontractors' employees, agents and affiliates from using, introducing or being under the influence of controlled substances (as hereinafter defined) or possessing any weapon or firearm on the site ("Site Safety Policy"). A copy of the Contractor's Site Safety Policy will be provided to Owner prior to the commencement of any work at the Site, and at Owner's request, Contractor will substantiate the dissemination of the Site Safety Policy to all personnel engaged in the Work and acknowledgement of the Site Safety Policy requirements by all such personnel. "Controlled substances" specifically include, but are not limited to, alcohol; opiates; hallucinogens, including marijuana and cocaine; PCP; and prescription drugs which are not obtained and used under a prescription lawfully issued to the person possessing them; and any other substance included in the Federal Controlled Substances Act or its regulations. As used herein, "under the influence of" alcohol is defined as having a blood alcohol concentration (BAC) of 0.04% or above. The Contractor's enforcement procedures shall, at a minimum, remove from the site any of the Contractor's or its Subcontractors' employees or agents found to be in violation of the Contractor's Site Safety Policy. In addition, if Contractor is notified that Owner's landlord of the Site requires compliance with construction safety guidelines by all workers engaged in construction work at the Site, Contractor shall certify to the Owner's landlord that such additional construction safety guidelines have been provided to all Site supervisors engaged in the Work.

4.  The Contractor agrees that, consistent with safe and reasonable construction practices, it will employ equipment, machinery and techniques of a kind which will minimize detrimental impact on the environmental condition of the site and the surrounding environment. Without limiting the generality of the foregoing, the Contractor agrees that it (a) will not create excessive noise or unnecessary air pollution from dust, demolition or machinery exhaust; (b) will carry out no open burning on the Project site; (c) will take reasonable measures to avoid the introduction of mold into the site (including, but not limited to, providing suitable ventilation when spraying or applying any wet materials or substances within a closed building, and sealing any building penetrations to maintain a watertight condition at the site); and (d) will dispose of waste material only at authorized disposal sites for the type of waste produced.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:56:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                                (1999859025)

Exhibit 2
Page 90

## APPENDIX 2

### TOXIC AND HAZARDOUS SUBSTANCES DISCLOSURE REQUIREMENTS

1.   The Contractor is responsible for compliance with the requirements of the GMP Documents regarding Hazardous Materials.  As part of the Contractor's evaluation of local conditions prior to commencing any Work at the Project Site, Contractor shall determine whether the Project Site contains or is reasonably likely to contain any pre-existing Hazardous Materials (as defined below), including but not limited to asbestos or polychlorinated biphenyls (PCBs) (which may include PCBs in caulking), and shall determine whether and how appropriate handling of any such Hazardous Materials affect the Project and Project costs.  The cost and time of handling and disposal of any Hazardous Materials at the Site, and any related expenses of personnel protection, that could have been reasonably determined to exist (or be likely to exist) at the Site, shall be included in the Contract Sum payable by Owner for the Project.  If, however, during the course of the Work, the Contractor encounters Hazardous Materials not addressed in the Project Documents, and if reasonable precautions will be inadequate to prevent foreseeable bodily injury or death to persons resulting from a material or substance, including but not limited to asbestos or polychlorinated biphenyl (PCB), encountered on the site by the Contractor, the Contractor shall, upon recognizing the condition, immediately stop Work in the affected area and report the condition to Owner in writing.  In the event that such Hazardous Materials were not reasonably subject to identification by Contractor during its evaluation of local conditions, then by Change Order the Contract Time shall be extended appropriately and the Contract Sum shall be increased in the amount of the Contractor's reasonable additional costs of shutdown, delay and start-up, and handling of the Hazardous Materials. Contractor shall not be eligible for such Change Order if the cause of the Hazardous Materials condition is attributable to the introduction of such Hazardous Materials to the Project Site by Contractor, Subcontractor, and sub-Subcontractor, by material or equipment vendor under contract with any of the foregoing, or by any of their respective employees, agents or invitees, or is attributable to errors by Contractor in performance of the Work..

2.   In the event that handling or remediation of Hazardous Materials is required as part of, or in order to permit, the Work of the Project, Owner shall have the right to approve the Subcontractor engaged by Contractor for such work, or to engage a separate Subcontractor if Owner and Contractor cannot agree upon an acceptable qualified Subcontractor to perform the remediation work.  Owner's designated employee or consultant shall have the right to participate in all meetings and discussions relating to the work of remediation of Hazardous Materials that may be included in the Work to ensure proper procedures are followed when handling Hazardous Materials.  If Owner's designated employee or consultant is a Certified Industrial Hygienist, such Owner employee or consultant shall have the right to approve all containment, remediation and abatement efforts related to asbestos or PCB removal.

3.   In the event Contractor encounters at the Project any Hazardous Materials that are not anticipated by the Project Addendum or any related agreement or Change Order, or as a result of the performance of the Work by Contractor or any Subcontractor, Contractor shall immediately stop Work in the affected area and report the condition to Owner in writing.  The work in the affected area shall not be resumed until the Hazardous Material condition in the affected area has been rendered harmless and only upon written agreement of the Owner and Contractor (or as determined by arbitration in accordance with the Agreement).

4.   The Contractor is also responsible for remaining informed throughout the course of the Work of all governmental notices relating to any materials contracted for incorporation into the Project, and shall notify Owner in the event that any such materials are placed on a list of potentially hazardous materials by any governmental agency.  No materials that are likely to contain Hazardous Materials shall be incorporated into the Project without the Owner's prior express approval in writing of such materials following disclosure of such potential condition by Contractor.  Without limiting the foregoing, Contractor shall also ensure that:  (a) none of the drywall incorporated into the Project is sourced from China, and (b) no lead-based paint is incorporated into the Project.  Contractor shall consult with Owner regarding any decision to depart from LEED materials standards that are likely to result in Formaldehyde, PM (PM 10), TVOC, 4-phenylcyclohexene and CO concentrations being exceeded when conducting IAQ studies for LEED certification of the Project.

5.   In addition to the foregoing, Contractor shall submit to Owner a copy its health and safety program for the Work of the Project for Owner's approval prior to Contractor commencing any construction work at the Project Site.  The health and safety program shall include the following:

• Procedures for conducting hot work, welding and/or burning/fire watch
• Lock Out/Tag Out Procedures
• Fire Protection and Prevention Plan

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410326020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                          (1999859025)

71

Exhibit 2
Page 91

- Fall Protection Safety Program
- Confined space entry procedures
- Electrical safety programs
- Chemical safety programs, including means of determining whether materials or equipment contain and are likely to release Hazardous Materials
- How workplace injuries are managed
- Employee training records

6.   Contractor shall provide Owner with Material Safety Data Sheets (MSDSs) in English for all chemicals that are used at the Site during the Work or that will remain within the completed Project improvements, and shall provide Owner with a description of the locations of such chemicals at the Site.

7.       If any portion of the Work may involve stormwater affected by construction activities, then to the extent required by applicable Laws, Contractor shall implement a storm water pollution prevention plan (which shall be submitted for review by the Owner and the Architect) for the Site as part of the Work.

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                     (1999859025)

## APPENDIX 3

### OWNER CONTROLLED INSURANCE PROGRAM REQUIREMENTS

1. **Overview.** Owner has arranged with Aon Risk Insurance Services West, Inc. (the "OCIP Administrator") for Project to be insured under its Owner Controlled Insurance Program ("OCIP"). The OCIP is more fully described in the insurance manual (the "OCIP Manual") for the Project, which is incorporated herein and into the Contract Documents by this reference. Parties performing labor or services at the Project site are eligible to enroll in the OCIP, unless they are Excluded Parties (as defined below). The OCIP will provide to Enrolled Parties (as defined below) Workers' Compensation and Employer's Liability insurance, Commercial General Liability insurance, and Excess Liability insurance, as summarily described below, in connection with the performance of the Work ("OCIP Coverages").

2. **Enrolled Parties and Their Insurance Obligations.** OCIP Coverages shall cover Enrolled Parties. Enrolled Parties are: the Owner, the OCIP Administrator, Contractor and eligible Subcontractors of all tiers that enroll in the OCIP, and such other persons or entities as Owner may designate, in its sole discretion (each party insured under the OCIP is an "Enrolled Party.") Enrolled Parties shall obtain and maintain, and shall require each of its or their Subcontractors to obtain and maintain, the insurance coverage specified in Section 9 below.

3. **Excluded Parties and Their Insurance Obligations.** The OCIP Coverages do not cover the following "Excluded Parties":
  (a) Hazardous materials remediation, removal and/or transport companies and their consultants;
  (b) Architects, surveyors, engineers, and soil testing engineers, and their consultants;
  (c) Vendors, suppliers, fabricators, material dealers, truckers, haulers, drivers and others who merely transport, pick up, deliver, or carry materials, personnel, parts or equipment, or any other items or persons to or from the Project site;
  (d) Contractor and each of its or their respective Subcontractors of all tiers that do not perform any actual labor on the Project site; and
  (e) Any parties or entities not specifically identified in this Appendix 3 or excluded by Owner in its sole discretion, even if they are otherwise eligible.
Excluded Parties and parties no longer enrolled in or covered by the OCIP shall obtain and maintain, and shall require each of its or their Subcontractors of all tiers to obtain and maintain, the insurance coverage specified in Section 9, below for all on-site and off-site operations.

4. **OCIP Insurance Policies Establish the OCIP Coverages.** The OCIP Coverages and exclusions summarized in this Appendix 3 and in the other Contract Documents are set forth in full in their respective insurance policies. The summary descriptions of the OCIP Coverages in this Appendix 3 or the OCIP Manual are not intended to be complete or to alter or amend any provision of the actual OCIP Coverages. In the event that any provision of this Appendix 3, the summary below, the OCIP Manual, or the Contract Documents conflicts with the OCIP insurance policies, the provisions of the actual OCIP insurance policies shall govern.

5. **Summary of OCIP Coverages.** OCIP Coverages shall apply only to those operations of each Enrolled Party performed at the Project site in connection with the Work, and only to Enrolled Parties that are eligible for the OCIP. OCIP coverages shall not apply to ineligible parties, even if they are erroneously enrolled in the OCIP. An Enrolled Party's operations away from the Project site, including product manufacturing, assembling, or otherwise, shall only be covered if such off-site operations are identified and are dedicated solely to the Project. The OCIP shall provide only the following insurance to eligible and Enrolled Parties:

**Summary Only**
| | | |
|---|---|---|
| (1) | Workers' Compensation Insurance | Statutory Limit |
| | This insurance is primary for all occurrences at the Project site | |
| (2) | Employer's Liability Insurance | |
| | Bodily Injury by Accident, each accident | $2,000,000 |
| | Bodily Injury by Disease, each employee | $2,000,000 |
| | Bodily Injury by Disease, policy limit | $2,000,000 |

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                     (1999859025)

73

Exhibit 2
Page 93

This insurance is primary for all occurrences at the Project site.

(3)  **Commercial General Liability Insurance** Equivalent to ISO Occurrence Form, or its equivalent.

| | |
|---|---|
| Each Occurrence Limit | $2,000,000 |
| General Aggregate Limit **for all Enrolled Parties** | $4,000,000 |
| Ten (10) Years Products & Completed Operations Extension | |
| Products & Completed Operations Aggregate | |
|   **for all Enrolled Parties** | $4,000,000 |

This insurance is primary for all occurrences at the Project site.

The OCIP Commercial General Liability policy shall not provide coverage for any claim that is covered under a Property or Builder's Risk policy.

(4)  **Excess Liability Insurance** (over Employer's Liability & General Liability)

| | |
|---|---|
| Combined Single Limit | $100,000,000 |
| General Annual Aggregate **for all Enrolled Parties** | $100,000,000 |
| Ten (10) Years Products & Completed Operations Extension | |
| Products & Completed Operations Aggregate | |
|   **for all Enrolled Parties** | $100,000,000 |

6.  **Owner's Insurance Obligations.**  Owner shall pay the costs of premiums for the OCIP Coverages. Owner will receive or pay, as the case may be, all adjustments to such costs, whether by way of dividends, retroactive adjustments, return premiums, other moneys due, audits or otherwise. Contractor hereby assigns to Owner the right to receive all such adjustments, and shall use its best efforts to ensure that each of its Subcontractors of every tier assigns to Owner the right to receive all such adjustments. Owner assumes no obligation to provide insurance other than that specified in this Appendix 3, and in the OCIP insurance policies. Owner's furnishing of OCIP Coverages shall in no way relieve or limit, or be construed to relieve or limit, Contractor or any of its Subcontractors of any tier of any responsibility, liability, or obligation imposed by the Contract Documents, the OCIP insurance policies, or by law, including, without limitation, any indemnification obligations which Contractor or any of its Subcontractors has to Owner thereunder. Owner reserves the right at its option, without obligation to do so, to furnish other insurance coverage of various types and limits provided that such coverage is not less than that specified in the Contract Documents.

7.  **Contractor's OCIP Obligations.**  Contractor shall:

(a)  Enroll in the OCIP within five (5) days of receipt of a Notice to Proceed, shall maintain enrollment in the OCIP, and shall ensure that its eligible Subcontractors of all tiers enroll in the OCIP, and maintain enrollment in the OCIP, within five (5) days of their receipt of a Notice to Proceed, and prior to the commencement of Work at the Project site.

(b)  Review and promulgate internally the requirements of the OCIP Manual applicable to the Contractor's duties and responsibilities thereunder with respect to the Project and comply with all of the administrative, safety, insurance, and other requirements outlined therein, as well as in this Appendix 3 and in the Contract Documents.

(c)  Incorporate the terms of this Appendix 3 into all subcontract agreements as if each subcontractor was the Contractor for purposes of the Contractor's obligations under this Appendix 3.

(d)  Provide to each of its Subcontractors of all tiers a copy of the OCIP Manual and ensure such Subcontractors' compliance with the provisions of the OCIP insurance policies, the OCIP Manual, this Appendix 3, and the Contract Documents, and ascertain their review and internal promulgation of the OCIP requirements as they apply to their respective duties and responsibilities thereunder with respect to the Project. The failure of Contractor to provide each of its eligible Subcontractors with a copy of the same shall not relieve Contractor, or any such Subcontractors of any of the obligations contained therein.

(e)  Acknowledge, and require all of its Subcontractors to acknowledge, in writing, that Owner and the OCIP Administrator are not agents, partners, or guarantors of the insurance companies providing the OCIP Coverages (each

**Init.**

*i*

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                    (1999859025)

Exhibit 2
Page 94

such insurer is an "OCIP Insurer"), that neither the Owner nor the OCIP Administrator is responsible for any claims or disputes between or among Contractor, its Subcontractors, and any OCIP Insurer(s), and that neither Owner nor the OCIP Administrator guarantees the solvency, or the availability of limits, of any OCIP Insurer(s).  Additional insurance coverage or limits of liability in addition to the OCIP Coverages addressed in the OCIP that Contractor or its Subcontractors of any tier require for its or their own protection, or that is required by applicable laws or regulations, shall be Contractor's or its Subcontractors' sole responsibility and expense, and shall not be billed to Owner.  Other coverage, not provided in the OCIP, can be included as a cost of the project and billed to the Owner after Owner review and approval of the same.

(f)   Comply, and require all of its Subcontractors to comply with OCIP Administrator's instructions for electronically enrolling in the OCIP using "Aon Wrap" and for electronically reporting payroll using "AonWrap."

(g)   Cooperate fully with the reasonable requests of the OCIP Administrator and the OCIP Insurers, as applicable, in its or their administration of the OCIP.

(h)   Provide, within five (5) business days of Owner's or the OCIP Administrator's request, all documents or information as requested.  Such information may include, but may not be limited to, payroll records, certified copies of insurance coverages, declaration pages of coverages, rating pages, certificates of insurance, underwriting data, prior loss history information, safety records or history, OSHA citations, or such other data or information as Owner, the OCIP Administrator, or OCIP Insurers may request in the administration of the OCIP, or as required by the OCIP Manual.

(i)   Contractor and each Subcontractor of every tier will be responsible for a $25,000 minimum deductible (the "General Liability Obligation") per occurrence for any general liability claim due to Contractor's or its Subcontractor's negligence for any damages or injuries caused by the Work, acts or omissions or of the Contractor, the Work, acts or omissions of its Subcontractors of all tiers or the Work, acts or omissions of any third party for whom Contractor or its Subcontractors are responsible.  This deductible requirement shall be subject to change pending any formal changes to their respective subcontracts.  The General Liability Obligation shall remain uninsured by Contractor and its Subcontractors of all tiers, and shall not be covered by the OCIP Coverages.

(j)   Contractor shall institute a modified return to work program for any injured employee who is covered or entitled to coverage under the Workers' Compensation insurance provided in the OCIP.

8.     **Identification of Insurance Costs – Bid Net of OCIP Insurance Costs.**  Contractor and each Subcontractor shall bid the Project 'net' of insurance costs due to eligibility for the OCIP.  Contractor shall exclude the Cost of OCIP Coverages from its bid, and ensure that each Subcontractor of every tier excludes the Cost of OCIP Coverages from their respective bids.  The "Costs of OCIP Coverages" is defined as the amount of Contractor's and its Subcontractors' reduction in insurance costs due to eligibility for OCIP Coverages, as determined by using Aon Form 1(a), Aon Form 1(b), Aon Form 1(c), and Aon Form-2, which are located in the OCIP Manual.  The Costs of OCIP Coverages includes reduction in insurance premiums, related taxes and assessments, markup on the insurance premiums and losses retained through the use of the self-funded program, self-insured retention, or deductible program.  The Cost of OCIP Coverages must include expected losses within any retained risk.  Contractor must deduct the Cost of OCIP Coverages for all Subcontractors in addition to their own Cost of OCIP Coverages.  Change orders must also be priced to exclude the Cost of OCIP Coverages.

9.     **Additional Insurance Required From Enrolled Parties and Excluded Parties.**  Contractor shall obtain and maintain, and shall require each of its Subcontractors of all tiers to obtain and maintain, the insurance coverage specified in this Section 9 in a form and from insurance companies reasonably acceptable to Owner.  The insurance limits may be provided through a combination of primary and excess policies, including the umbrella form of policy.  Each policy required under this Section 9, except the Workers' Compensation policy, shall name Owner, the OCIP Administrator, their respective officers, agents and employees, and any additional entities as Owner may request as additional insureds.  The additional insured endorsement shall state that the coverage provided to the additional insureds is primary and non-contributory with respect to any other insurance available to the additional insureds. Contractor shall provide certificates of insurance coverage to Owner or the OCIP Administrator as required by the Contract Documents.

Init.

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                          (1999859025)

Exhibit 2
Page 95

**Enrolled Parties** are to provide evidence of Worker's Compensation, Employer's Liability, General Liability, and Excess Liability insurance, as set out below, for off-site activities, and evidence of Automobile Liability insurance for all activities, both on-site and off-site.

**Excluded Parties** must provide evidence of all insurance set out below for both on-site and off-site activities.

(a)   Standard Commercial Automobile Liability insurance covering all owned, non-owned and hired automobiles, trucks, and trailers with a combined single limit of not less than $1,000,000 (Contactor shall provide $2,000,000.

(b)   Workers' Compensation insurance and Employer's Liability insurance:

| | |
|---|---|
| Workers' Compensation: | Statutory Limit |
| Employer's Liability: | |
| Bodily Injury by Accident, Each Accident | $1,000,000 |
| Bodily Injury by Disease, Each Employee | $1,000,000 |
| Bodily Injury by Disease, Policy Limit | $1,000,000 |

(c)   Commercial General Liability insurance in a form providing coverage no less than the standard ISO Commercial General Liability insurance policy ("Occurrence Form").  The limits shall not be less than identified below but could be more based on the subcontractor's scope of work:

| | Enrolled Parties/Excluded Parties |
|---|---|
| Each Occurrence | $1,000,000/$1,000,000 |
| General Aggregate | $2,000,000/$2,000,000 |
| Products/Completed Operations Aggregate | $2,000,000/$2,000,000 |
| Personal/Advertising Injury Aggregate | $1,000,000/$1,000,000 |

Products and Completed Operations Extension, including coverage applicable to additional insureds (as required by this agreement) with Completed Operations coverage to remain in force, whether by endorsement or renewal of coverage, including the Owner, any party required to be indemnified by this Contract and any other party required by this Contract to be named as an additional insured, from the date of final completion of the Work until at least ten (10) years after final completion of the Project or the expiration of the applicable statute of repose of the State in which the Project is located (whichever is greater/longer);

(d)   Excess/Umbrella Liability Insurance        $TBD – Based on subcontractor's scope of work

(e)   If submitted by Contractor and approved by Owner, or if requested by Owner, Aviation and/or Watercraft Liability Insurance, or any other insurance, in form and with limits of liability and from an insuring entity reasonably satisfactory to the Owner.

(f)   If Subcontractor or any Sub-subcontractor of any tier is providing professional services, including but not limited to, design, engineering or design/build services on the Project, Professional liability (errors and omissions) insurance, with limits of liability of not less than $2,000,000 per claim, and not less than $2,000,000 annual aggregate, with a deductible of not greater than $25,000 per claim is required.  Such insurance shall be written on a claims made form, and shall include, without limitation, prior acts coverage.

(g)   If required by Contractor and approved by Owner or if requested by Owner, Contractor's Pollution Liability Insurance for required Parties:

| | |
|---|---|
| Combined Single Limit per Occurrence | $2,000,000 |
| General Annual Aggregate | $2,000,000 |

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                    (1999859025)

Exhibit 2
Page 96

Subcontractor Trades required to provide Pollution Liability:

| | |
|---|---|
| Infection Control | Lath & Plaster |
| Tilt-Up Concrete | Tile |
| Glass-Fiber-Reinforced Concrete | Louvers & Vents |
| Stone/Marble (Adhered) | Environmentally Controlled Rooms |
| Stone/Marble (Mechanically Fastened) | Clean Rooms |
| Expansion Control | Pre-Engineered Structures |
| Dampproofing and Waterproofing | Hydraulic Elevators and Lifts |
| Exterior Insulation and Finish Systems | Process Piping |
| (EIFS) | Medical Gases |
| Metal Roof and Wall Panels | Fire Protection |
| Roofing | Pre-Action Fire Suppression |
| Flashing and Sheet Metal | Plumbing |
| Joint Sealants | Heating Ventilating Air Conditioning |
| Entrances and Storefronts | Electrical |
| Automatic Entrance Doors | Instrumentation & Controls |
| Windows - Wood & Vinyl | Building Systems Controls |
| Skylights | Site Remediation & HazMat |
| Glass & Glazing (Exterior) | Abatement |

Subcontractor Trades with Conditional Pollution Requirements:

| | |
|---|---|
| Groundwater Treatment Systems | Concrete Restoration and Cleaning |
| Demolition | Masonry |
| Dewatering | Wood Framing |
| Tunneling, Boring and Jacking | Glass & Glazing (Interior) |
| Fountains & Water Features | Specialty Glazing |
| Landscaping & Irrigation | Framing & Drywall |
| Cast-in-Place Concrete | Painting & Wallcovering |
| (Contractors) | Commercial Laundry & Dry Cleaning |
| Pneumatically Placed Concrete | Food Service Equipment |
| (Shotcrete) | Residential Laundry/Kitchen |
| Sand & Water Blasting | Equipment |
| Precast Concrete | Swimming Pools and Spas |
| Cementitious Decks and Underlayment | |

If transporting hazardous waste/materials from the Project site, an appropriate MCS-90 Endorsement must be attached and supplied to Owner on a primary basis with $5,000,000 limits of liability.

(h) If required by Contractor, any subcontractor's work that includes providing Crane Services shall require the excluded crane services vendor to carry limits of no less than:

Init.

AIA Document A295™ –2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                        (1999859025)

$10,000,000 Each occurrence
$10,000,000 Personal Injury
$10,000,000 aggregate for Products – Completed Operations
$10,000,000 general aggregate
** Including Coverage for Riggers Liability

Contractor's failure to procure or maintain the insurance required to be maintained by the Enrolled Parties pursuant to this Section 9, or to ensure that all of its Subcontractors of all tiers maintain such required insurance during the entire term of the Agreement shall constitute a material breach of the Owner-Contractor Agreement under which the Owner may immediately suspend or terminate the Owner-Contractor Agreement or, at its discretion, procure or renew such insurance to protect the Owner's interests, and pay any and all premiums in connection therewith, and withhold or recover all monies so paid from Contractor.

Any other insurance or any increase of limits of liability not described herein which Contractor or a Subcontractor of any tier requires for its or their own protection or pursuant to any statute shall be its own responsibility and expense.

10.     **Contractor's Representations and Warranties to Owner.**  Contractor represents and warrants to Owner, and shall use its best efforts to ensure that each of its Subcontractors of every tier represent and warrant to Owner that:

(a)     All information they submit to Owner, or to the OCIP Administrator, shall be accurate and complete.

(b)     They have had the opportunity to read and analyze copies of the OCIP insurance policies that are on file in Owner's office, and that they understand the OCIP Coverages.  Any reference or summary in the Agreement, this Appendix 3, the OCIP Manual, or elsewhere in any other Contract Document as to amount, nature, type or extent of OCIP Coverages and/or potential applicability to any potential claim or loss is for reference only.  Contractor and its Subcontractors of all tiers have not relied upon said reference, but solely upon their own independent review and analysis of the OCIP Coverages in formulating any understanding and/or belief as to amount, nature, type or extent of any OCIP Coverages and/or its potential applicability to any potential claim or loss.

(c)     The Costs of OCIP Coverages were not included in Contractor's bid or proposal for the Work, the Contract Price/Contract Sum, and will not be included in any change order or any request for payment for the Work or extra work.

(d)     Contractor acknowledges that Owner shall not pay or compensate Contractor or any Subcontractor of any tier, in any manner, for the Costs of OCIP Coverages.

11.     **Audits.**  Contractor agrees that Owner, the OCIP Administrator, and/or any OCIP Insurer may audit Contractor's or any of its Subcontractors' payroll records, books and records, insurance coverages, insurance cost information, bid estimates, pricing for any cost in the Contract Price/Contract Sum or any subcontracted Work, or any information that Contractor provides to Owner, the OCIP Administrator, or the OCIP Insurers to confirm their accuracy, and to ensure that the Costs of OCIP Coverages are not included in any payment for the Work.

12.     **Owner's Election to Modify or Discontinue the OCIP.**  Owner may, for any reason, modify the OCIP Coverages, discontinue the OCIP, or request that Contractor or any of its Subcontractors of any tier withdraw from the OCIP upon thirty (30) days written notice.  Upon such notice Contractor and/or one or more of its Subcontractors, as specified by Owner in such notice, shall obtain, to the extent available in the marketplace, and thereafter maintain during the performance of the Work, all (or a portion thereof as specified by Owner) of the OCIP Coverages.  The form, content, limits of liability, cost, and the insurer issuing such replacement insurance shall be subject to Owner's approval.  The cost of the replacement coverage shall be at Owner's expense, but only to the extent of the applicable Costs of OCIP Coverages, and shall be based on the cost to replace the coverage in the marketplace.

13.     **Withholding Payments.**  Owner may withhold from any payment owed or owing to Contractor or its Subcontractors of any tier the Costs of OCIP Coverages if they are included in a request for payment.  In the event of an Owner audit of Contractor's records and information as permitted in the Contract, this Appendix 3, or in other Contract Documents reveals a discrepancy in the insurance, payroll, safety, or any other information required by the

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                          (1999859025)

**78**

Exhibit 2
Page 98

Contract Documents to be provided by Contractor to Owner, or to the OCIP Administrator, or reveals the inclusion of the Cost of OCIP Coverages in any payment for the Work, Owner shall have the right to full deduction from the Contract Price/Contract Sum of all such Costs of OCIP Coverages and all audit costs. Audit costs shall include, but shall not be limited to, the fees of the OCIP Administrator, and the fees of attorneys and accountants conducting the audit and review. If the Contractor or its Subcontractors fail to timely comply with the provisions of this Appendix 3, Owner may withhold any payments due to Contractor and/or its Subcontractors of any tier until such time as they have performed the requirements of this Appendix 3. Such withholding by Owner shall not be deemed to be a default under the Contract Documents.

14.     **Waiver of Subrogation.** Where permitted by law, Contractor hereby waives all rights of recovery by subrogation because of deductible clauses, inadequacy of limits of any insurance policy, limitations or exclusions of coverage, or any other reason against Owner, the OCIP Administrator, its or their officers, agents, or employees, and any other contractor or Subcontractor performing Work or rendering services on behalf of Owner in connection with the planning, development and construction of the Project. Owner shall also require that all Contractor maintained insurance coverage related to the Work, include clauses providing that each insurer shall waive all of its rights of recovery by subrogation against Contractor together with the same parties referenced immediately above in this Section 1.13. Where permitted by law, Contractor shall require similar written express waivers and insurance clauses from each of its Subcontractors. A waiver of subrogation shall be effective as to any individual or entity even if such individual or entity (a) would otherwise have a duty of indemnification, contractual or otherwise, (b) did not pay the insurance premium directly or indirectly, and (c) whether or not such individual or entity has an insurable interest in the property damaged.

15.     **Duty of Care.** Nothing contained in this Appendix 3 or the OCIP Manual shall relieve the Contractor or any of its Subcontractors of any tier of their respective obligations to exercise due care in the performance of their duties in connection with the Work, and to complete the Work in strict compliance with the Contract Documents.

16.     **Safety.** Contractor shall be solely responsible for safety on the project. Contractor shall establish a safety program that, at a minimum, complies with all local, state and Federal safety standards, and any safety standards established by Owner for the Project.

17.     **Project site.** Project site shall include all areas in which work is done under the terms of the construction contract including the site itself and any offsite areas dedicated to the project in which there has been agreement to provide coverage.

Init.

/

AIA Document A295™ – 2008. Copyright © 2008 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                              (1999859025)

79

Exhibit 2
Page 99

### Certification of Document's Authenticity
*AIA® Document D401™ – 2003*

I, Katy Martinez, hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 13:58:11 on 11/27/2012 under Order No. 3410328020_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A295™ – 2008, General Conditions of the Contract for Integrated Project Delivery, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____
(Signed)

Contract Administrator_____
(Title)

11/28/12_____
(Dated)

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 13:58:11 on 11/27/2012 under Order No.3410328020_1 which expires on 01/20/2013, and is not for resale.
User Notes:                                                                                                (1999859025)

1

Exhibit 2
Page 100