UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DPR CONSTRUCTION, a general partnership,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SHIRE REGENERATIVE MEDICINE, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>　　　　Defendants. | Civil No. 14-cv-2399-JAH (MDD)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 21)** |

## INTRODUCTION

Pending before the Court is Defendant Shire Regenerative Medicine, Inc.'s ("Defendant") motion for summary judgment or, in the alternative, summary adjudication on all claims alleged in Plaintiff DPR Construction's ("Plaintiff") first amended complaint ("FAC"). (Doc. # 21). For the reasons set forth below, the Court GRANTS Defendant's motion for summary judgment in its entirety.

## FACTUAL BACKGROUND

Plaintiff is a general contractor with offices in San Diego, California. Defendant is a wholly owned subsidiary of Shire Plc, a pharmaceutical company based in Dublin, Ireland. In 2012, Defendant hired Plaintiff to build a large life sciences campus in San Diego (the "Project"). The Project included construction of two buildings spanning over 240,000

square feet. The Project was estimated to cost more than $150 million and would require approximately eighteen months of preparation and two years of construction to complete.

Between June and November of 2012, the parties negotiated the contract for the Project ("Contract") by revising and exchanging drafts of the Contract via email. To form the Contract, the parties customized various model contract forms published by the American Institute of Architects ("AIA"), including AIA forms A195 and A295.[1]

## A. Pertinent Contract Provisions

Form A195, entitled Standard Form of Agreement Between Owner and Contractor for Integrated Project Delivery, governs the agreement for the Project between only Plaintiff and Defendant. (See Doc. # 21-15, pg. 2).[2] Article 7 of form A195 is entitled "Termination or Suspension," and is further split into two sections. Id. at 14. Section 7.1 of form A195 governs termination or suspension of the Contract *prior* to the establishment of the Guaranteed Maximum Price[3] ("GMP"), and section 7.2 governs termination or suspension of the Contract *after* the GMP is established. Id. at 14–15. Both sections 7.1 and 7.2 are divided into additional subsections. Section 7.1.5 sets forth parameters if the Project owner (Defendant) terminates the Contract with the contractor (Plaintiff) for convenience prior to the establishment of the GMP. Id. at 15. Section 7.1.5 states:

> The Owner may terminate this Agreement upon not less than seven days' written notice to the Contractor for the Owner's convenience and without cause in accordance with the terms and conditions of Section 12.13.1 of the Project General Conditions.

Id. Sections 7.2.4.1 and 7.2.4.3 of form A195 apply if Defendant terminates the Contract with Plaintiff for convenience *after* the GMP is established. Id. Section 7.2.4.1 states:

> The Owner may, at any time, terminate the Contract...for the Owner's convenience and without cause in accordance with the

---

[1] The Contract consisted of several documents. (See Doc. # 21-16, § 1.3.9). Forms A195 and A295 are the relevant documents in this action.

[2] Page numbers referenced herein are those assigned by CM ECF.

[3] The GMP is defined in section 1.3.7 of form A295 as "an amount that the Contract Sum shall not exceed as agreed to by the Owner and Contractor." (Doc. # 21-16, pg. 16).

2

terms and conditions of Section 12.13.1 of the Project General Conditions.

Id. at 17. Section 7.2.4.3 states:

> In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

Id.

Form A295 governs the agreement between Plaintiff, Defendant, the Project architect, the Project engineer, and the ground lessor. (See Doc. # 21-16, pg. 2). Section 12.13 of form A295 is entitled "Owner's Rights to Terminate This Contract." Id. at 66. Section 12.13.1, which is referenced in sections 7.1.5 and 7.2.4.1 of form A195, governs Defendant's termination of the Contract for convenience and reads in pertinent part:

> The Owner may terminate this Contract with respect to any or all of the Contractor, Architect and Engineer for convenience at any time for reasons other than for cause, without prejudice to any claims that the Owner may have against any of them so terminated, by giving the terminated party at least 7 days prior written notice thereof. In the event a terminated party is the Contractor, and such termination occurs after the establishment of the GMP, the Owner shall pay the Contractor such portions of the [GMP] as are due and properly invoiced for Work performed prior to the effective date of such termination, together with reasonable termination expenses necessarily incurred by Contractor, and Contractor shall comply with the requirements for final payment with respect to Owner's payment of such amount. In the event a terminated party is the Architect or the Engineer, or the Contractor prior to the establishment of the GMP, the Owner shall pay the terminated party for the services performed pursuant to the Services Contract of the terminated party prior to termination, together with any Reimbursable Expenses then due and a termination fee equivalent to two (2) weeks of compensation based on the weekly average of fees for professional services provided by the terminated party (as averaged over the 6-week period immediately preceding termination)....*Neither Contractor, Architect nor Engineer shall be paid their anticipated profits or*

3

> *revenues for Work not performed or for economic losses relating to the termination of the Contract by Owner with respect to any of them.*

Id. (emphasis added).

### B. Contract Revision

To assist in drafting and negotiating the Contract, Defendant hired contract negotiator Jim Winiarski and retained the law firm of Mintz Levin. Frank Jones, a DPR project executive, was primarily responsible for negotiating the Contract on behalf of Plaintiff. Jones was assisted by a contract administrator and Plaintiff's risk assessor.

Plaintiff and Defendant revised the Contract numerous times.[4] On August 19, 2012, Defendant sent Plaintiff a draft containing sections 7.1.5 and 7.2.4.1 of form A195 (the pre- and post-GMP termination for convenience clauses) and section 12.13.1 of form A295 (the universal termination clause incorporated into sections 7.1.5 and 7.2.4.1). (See Doc. # 21-20; Doc. # 21-21, pg. 59–60; Doc. # 21-22; Doc. # 21-23, pg. 12, 14). Notably, this draft did not contain section 7.2.4.3, the provision providing that Plaintiff would receive its profit on unperformed work if Plaintiff terminated the Contract for convenience post-GMP, because Defendant had deleted that provision in light of adding section 12.13.1. (Doc. # 21-1, pg. 11). The parties continued to circulate drafts of the Contract from August 19, 2012, until October 24, 2012, none of which included section 7.2.4.3 in form A195. On October 24, 2012, and on behalf of Plaintiff, the DPR contract administrator emailed Winiarski a Contract draft in which section 7.2.4.3 had been reinserted, but section 12.13.1 remained. (See Doc. # 21-48; Doc. # 21-49). This reinsertion of section 7.2.4.3 was not made evident in tracked changes despite the parties' prior use of tracked changes to mark revisions to the Contract.[5] (See Doc. # 21-49, pg. 5). Instead, the contract administrator

---

[4] For example, the parties circulated drafts of the Contract on August 19, 29, 31, September 20, 21, 26, and October 1, 3, 5, 17, 22, and 24, 2012. (See Doc. # 21-26 through Doc. # 21-49).

[5] The Court notes Plaintiff's argument that it did not surreptitiously reinsert section 7.2.4.3 into the Contract. Rather, no red-line tracked change appeared because tracked changes denote deletions and changes, and here the original tracked change striking section 7.2.4.3 was effectively being rejected and withdrawn. (See Doc. # 26, pg. 11). However, the circumstances surrounding why no tracked change appeared have no bearing on the Court's decision in the instant action.

4

noted in the email, to which the Contract draft was attached, that the following changes had been made:

> Section 1.2 — reference to Exhibit C deleted.
> Section 1.2.1 and 1.2.2 — Indemnification language transferred from A295.
> Section 1.4.2 — Approved LD language added specifying dollar amount per day.
> Section 7.2.4.3 — Original AIA language had been deleted. Did not strike the language.
> Exhibits C — Insurance requirements are no longer applicable as insurance outlined in Article 11 of the Project General Conditions and Appendix 3. Exhibit C has been intentionally omitted.

(Doc. # 21-48, pg. 2). Aside from the email notation, Plaintiff's and Defendant's representatives never discussed the reinsertion of section 7.2.4.3 into form A195. (Doc. # 21-1, pg. 14). The final Contract was executed on November 28, 2012, and included both section 7.2.4.3 in form A195 and section 12.13.1 in form A295. (See Doc. # 21-15, pg. 17, 20–21; Doc. # 21-16, pg. 66).

Plaintiff began construction in October, 2012, with a target completion date in December, 2014. (Doc. # 1-9, ¶ 14; Doc. # 26-20, ¶ 8, 11). However, in October, 2013, Defendant notified Plaintiff that it was suspending the Contract for convenience. (Doc. # 21-3, pg. 2). Later, on April 24, 2014, Defendant terminated the Contract with Plaintiff. (Doc. # 21-7). Defendant paid Plaintiff for work completed, but Plaintiff sought to collect from Defendant the overhead and profit Plaintiff would have received had Defendant not terminated the Project early. Defendant refused. (Doc. # 1-9, ¶ 16–23). Plaintiff then initiated the instant lawsuit. (Doc. # 1-9).

## PROCEDURAL BACKGROUND

On July 10, 2014, Plaintiff filed a complaint against Defendant in San Diego Superior Court, Case No. 37-2014-00022796-CU-BC-CTL. (See Doc. # 1-5). On September 5, 2014, Plaintiff filed the operative FAC asserting claims for breach of contract,

quantum meruit, and declaratory relief. (See Doc. # 1-9). On October 6, 2014, Defendant filed its answer to the FAC. (See Doc. # 1-10). Then, on October 8, 2014, Defendant removed the action to this Court based on diversity jurisdiction. (See Doc. # 1). On April 8, 2015, Defendant filed a motion for summary judgment or, in the alternative, summary adjudication on all claims alleged in the FAC. (Doc. # 21). Plaintiff filed its opposition brief on May 19, 2015, and Defendant filed its reply brief on June 23, 2015. (See Docs. # 26, 32). On September 1, 2015, this Court heard oral argument and took Defendant's motion for summary judgment or adjudication under submission. (See Doc. # 38).

## LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the nonmoving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party would bear the burden of proof at trial, that party satisfies its initial burden by producing evidence that would entitle it to a directed verdict if uncontroverted at trial. See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). If the party moving for summary judgment would not bear the burden of proof at trial, that party satisfies its initial burden by (1) presenting evidence that negates an essential element of the nonmoving party's case, or (2) demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Celotex, 477

U.S. at 322–23. If the moving party fails to discharge its initial burden, the court must deny summary judgment and need not consider the nonmoving party's evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 159–60 (1970).

If, however, the moving party meets its initial burden, the nonmoving party must produce admissible evidence showing that a genuine issue of material fact exists. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000). The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (citing FED. R. CIV. P. 56(e)) (internal quotations omitted). If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323.

"Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). "The district court may limit its review to the documents submitted for purpose of summary judgment and those parts of the record specifically referenced therein." Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court need not "scour the record in search of a genuine issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).

## CHOICE OF LAW

The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. In a diversity action, a federal court must apply the choice-of-law rules of the state in which the action was filed, thus the Court applies California choice-of-law rules. Trans Meridian Trading Inc. v. Empresa Nacional de Comercializacion de Insumos, 829 F.2d 949, 953 (9th Cir.1987). Under California choice-of-law rules, California state law applies unless the

parties raise an objection. Hurtado v. Superior Court, 11 Cal.3d 574, 581 (1974); see also; Plaspro GMBH v. Gens, No. C 09–04302 PSG, 2011 WL 1000755, at *3 (N.D. Cal. Mar. 21, 2011). Here, neither party objects to the application of California law. Rather, both raise arguments based on California state law. Therefore, the Court applies California law.

## DISCUSSION

### A. Breach of Contract Claim

Plaintiff's FAC alleges that Defendant breached the Contract "by failing to pay [Plaintiff] after terminating the Agreement for convenience after the establishment of a guaranteed maximum price." (Doc. # 1-9, ¶ 28). Essentially, Plaintiff alleges that Defendant violated section 7.2.4.3 of form A195 by refusing to pay Plaintiff anticipated overhead and profit on unperformed work after Defendant terminated the Contract. (See id. at 4–5).[6] In California, a plaintiff alleging a breach of contract claim must establish: (1) the existence of a contract, (2) defendant's breach of the contract, (3) plaintiff's performance or excuse for non-performance, and (4) damage to the plaintiff as a result of the defendant's breach. McDonald v. John P. Scripps Newspaper, 210 Cal. App. 3d 100, 104 (2d Dist.1989).

Defendant moves for summary judgment on the ground that it did not breach the Contract. First, Defendant contends that it did not breach the Contract because section 12.13.1 of form A295 controls over section 7.2.4.3 of form A195, thus Plaintiff was never entitled to profits or overhead on unperformed work. Second, Defendant contends that it

---

[6] Section 7.2.4.3 of form A195 calls for payment for the following items upon post-GMP termination for convenience: (1) work completed, (2) termination costs, (3) reasonable overhead for work not executed, and (4) profit on work not executed. (See Doc. # 21-15, pg. 17). However, Plaintiff limits its breach of contract claim to Defendant's non-payment of the latter two items. (See Doc. # 1-9, pg. 3, 5 (stating that Plaintiff "asked [Defendant] to pay [Plaintiff] its reasonable anticipated overhead and profit it would have received if Shire had not terminated the project 15-months early…. [Defendant] refused. [Plaintiff] sues to enforce its rights under its contract with [Defendant]" and "[Defendant] refused to pay [Plaintiff] the reasonable overhead and profit that Plaintiff would have earned had the Project been completed"). Further, Plaintiff does not object to Defendant's assertion that it paid Plaintiff for work completed and termination costs upon termination of the Contract. In its opposition brief, Plaintiff also notes that the alleged breach inquiry is limited to reasonable overhead and profit for unperformed work. (See Doc. # 26, pg. 6). Therefore, the Court finds that the alleged breach involves only claims for reasonable overhead and profit for unperformed work, and the Court need not address payment for work completed or termination costs.

8

did not breach the Contract because the GMP was never established, so section 7.2.4.3 is inapplicable and Plaintiff was not entitled to profit or overhead on unperformed work. In opposition, Plaintiff does not argue the existence of an issue of material fact. Instead, Plaintiff argues that the Court should find that, as a matter of law, sections 12.13.1 and 7.2.4.3 can be harmonized or, in the alternative, that section 7.2.4.3 controls over section 12.13.1, such that Plaintiff is entitled to payment for profit and overhead on unperformed work. Plaintiff further argues that the GMP was established before Defendant terminated its Contract with Plaintiff, so section 7.2.4.3 is applicable. For the reasons set forth below, the Court finds there is no triable issue of material fact and that Defendant is entitled to judgment as a matter of law in its favor on Plaintiff's breach of contract claim.

1. There Was No Breach Because Section 12.13.1 Controls

    (a)    Defendant's Arguments

Defendant argues that section 12.13.1 of form A295 and section 7.2.4.3 of form A195 are "repugnant and irreconcilable," therefore one provision controls and the other must be disregarded. (Doc. # 21-1, pg. 21). Defendant contends that section 12.13.1 controls and the repugnant language in section 7.2.4.3 must be disregarded for three reasons. First, Defendant asserts that section 12.13.1 is a universal provision because it is incorporated by sections 7.1.5 and 7.2.3.1 and portions of the Contracts between Defendant, the Project engineer, and the Project architect, whereas section 7.2.4.3 is not referenced elsewhere in the Contract. Id. at 21–22. According to Defendant, this shows a "deliberate effort" to have the various Contract forms work together and demonstrates the parties' intent to be bound by section 12.13.1. Id. at 22. Second, Defendant contends that section 12.13.1 controls because it is a specially drafted clause and section 7.2.4.3 is a form language from an AIA form contract. Id. at 22–23 (citing CAL. CIV. CODE § 1651). In support, Defendant cites to cases in which specially drafted contract clauses were enforced over contradictory form language. (Doc. # 21-1, pg. 23 (citing Gutzi Assocs. v. Switzer, 215 Cal. App. 3d 1636, 1642–43, 1647 (6th Dist. 1989); Am. City Bank v. Zetlen, 253

Cal. App. 2d 548, 553 (2d Dist. 1967); Fid. & Deposit Co. v. Charter Oak Fire Ins. Co., 66 Cal. App. 4th 1080, 1087 (2d Dist. 1998)).

Finally, Defendant contends that section 12.13.1 controls because Plaintiff created uncertainty in the Contract by reinserting section 7.2.4.3, and contracts should be interpreted against the party who caused the uncertainty. (Doc. # 21-1, pg. 24 (citing Victoria v. Superior Court, 40 Cal. 3d 734, 745 (1985); McNeely v. Claremont Mgmt. Co., 210 Cal. App. 2d 749, 753 (1st Dist. 1962)). Defendant argues that it did not create the confusion in the Contract because Defendant deleted section 7.2.4.3 upon adding section 12.13.1, so the Contract did not contain contradictory language until Plaintiff reinserted section 7.2.4.3 into the Contract months later without deleting either the reference to section 12.13.1 in section 7.2.4.1 or the conflicting language in section 12.13.1. (Doc. # 21-1, pg. 24–25). Therefore, Defendant asserts that the conflicting language should be interpreted against Plaintiff as the party that created the conflict. Id. at 25.

### (b) Plaintiff's Arguments

Plaintiff provides abundant arguments in opposition. Plaintiff first argues that Defendant signed the Contract and therefore agreed to its terms, including section 7.2.4.3. (Doc. # 26, pg. 14). Further, Plaintiff notes that Defendant has not disputed that it agreed to section 7.2.4.3, which Plaintiff deems "a critical concession." Id.

Second, Plaintiff contends that sections 12.13.1 and 7.2.4.3 can and should be harmonized. Id. at 15. Plaintiff asserts that contract terms should be reconciled rather than discarded. Id. (citing Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc., 596 F. Supp. 2d 1351, 1363 (E.D. Cal. 2009)). Plaintiff argues that section 12.13.1 can be harmonized with sections 7.2.4.1 and 7.2.4.3 by "recogniz[ing] that section 12.13.1…describes the process and protocol of termination (filling in gaps not covered in A195)…." (Doc. # 26, pg. 15). Plaintiff further states that sections 12.13.1 and 7.2.4.3 apply to different scenarios. Id. at 16. According to Plaintiff, section 12.13.1 addresses what happens to itself as the contractor, the architect, and the engineer if any or all of the parties are terminated and replaced pre-GMP but with the Project continuing. Id. Conversely, section 7.2.4.3 applies

when Defendant terminates Plaintiff post-GMP and completely shuts down the Project, which is what Plaintiff contends happened here. Id. Although the final sentence of section 12.13.1, which prohibits Plaintiff, the architect, and the engineer from receiving anticipated profit on unperformed work, does not specify whether it applies to termination post- or pre-GMP, Plaintiff posits that it should apply only pre-GMP because that is how sections 12.13.1 and 7.2.4.3 can be harmonized. Id.

Third, should the Court determine that sections 12.13.1 and 7.2.4.3 cannot be harmonized, Plaintiff argues that form A195, which includes section 7.2.4.3, trumps form A295, which includes section 12.13.1. Id. at 17. Plaintiff asserts that section 1.3.9[7] of form A295 prioritizes form A195 and section 7.2.4.3 over form A295 and section 12.13.1 because section 12.13.1 is noted, but not incorporated, into form A195. Id. at 18. Plaintiff also notes that section 7.2.4.3 does not mention section 12.13.1, thus establishing section 7.2.4.3 as controlling under section 1.3.9. Id. at 19.

Fourth, Plaintiff asserts that if form A295 controls over form A195, then "absurdities result." Id. Plaintiff notes that, if form A295 controls, section 12.13.1 negates any distinction between pre- and post-GMP remedies, which is illogical because contractors have expended sizable resources by the time the GMP is established and should receive greater compensation if terminated at that stage. Id. Plaintiff then argues that if form A295 controls, Plaintiff would receive greater compensation if Plaintiff terminated itself post-GMP under section 7.2.1.3 than if Defendant terminated Plaintiff post-GMP under section 12.13.1. Id. at 20–21. Plaintiff further notes that, under section 12.13.1, if Defendant

---

[7] Section 1.3.9 of form A295 sets forth a hierarchy amongst different Contract documents should a conflict among the documents arise. Section 1.3.9 prioritizes form A195 over form A295, which is referred to as the General Conditions. However, section 1.3.9 also states:

> Notwithstanding the foregoing, where the terms and conditions of these General Conditions are expressly referred to or incorporated in any of the GMP Documents (or in any of the Services Contracts) of higher priority, such incorporated terms and conditions of these General Conditions shall have the same priority as the document into which they are incorporated.

(Doc. # 21-16, pg. 17–18).

terminates Plaintiff post-GMP Plaintiff would only be entitled to payment for work performed prior to termination plus expenses, but would receive that amount plus two weeks of compensation if terminated by Defendant pre-GMP. Plaintiff argues this interpretation is absurd because Plaintiff is left better off if terminated pre-GMP. Id. at 20.

Fifth, Plaintiff contends that section 7.2.4.3 controls because it is specific whereas section 12.13.1 is general, and specific clauses trump conflicting general clauses. Id. at 20–21 (citing CAL. CIV. CODE § 3534; Natural Res. Def. Council v. Kempthorne, 621 F. Supp. 2d 954, 983 n. 18 (E.D. Cal. 2009)). Plaintiff argues that section 7.2.4.3 is specific because it binds only Plaintiff and Defendant, while section 12.13.1 applies to Plaintiff, Defendant, the architect, the engineer and the ground lessor. (Doc. # 26, pg. 21). Plaintiff further asserts that section 7.2.4.3 speaks specifically to Plaintiff's remedy post-GMP, and section 12.13.1 covers multiple parties' remedies under various circumstances. Id.

Sixth, Plaintiff contends that, because section 12.13.1 was drafted by Defendant, it should be construed against Defendant. Id. at 22. Plaintiff asserts that it did not create the contract's ambiguity by re-inserting section 7.2.4.3 because that clause is industry standard. Id.

Finally, Plaintiff argues that section 1651 of California Civil Code, which dismisses conflicting form contract language in favor of specially drafted provisions, is inapplicable because section 7.2.4.3 is not a boilerplate form language. Id. at 24. Plaintiff contends that because section 7.2.4.3 was re-inserted in the Contract at the "the special direction of the parties" and with "a special view to their intention," it is a separately negotiated term to which California Civil Code section 1651 does not apply. Id.

(c) Contract Interpretation Under California Law

Contract interpretation is a judicial function that is appropriately resolved on summary judgment. Cachil Dehe Band of Wintun Indians v. California, 618 F.3d 1066, 1073 (9th Cir. 2010)(citing Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 69 Cal. 2d 33, 39–40) (1968)); see also Am. City Bank v. Zetlen, 253 Cal. App. 2d 548, 552 (2d Dist. 1967). Courts must interpret a contract "to give effect to the mutual intention

of the parties as it existed at the time of contracting." CAL. CIV. CODE § 1636. Where the contract is in writing, "the intention of the parties is to be ascertained from the writing alone…." CAL CIV. CODE § 1639. Parol or extrinsic evidence may be admitted to resolve ambiguity in a contract. Winet v. Price, 4 Cal. App. 4th 1159, 1165 (4th Dist. 1992). In such cases, the court engages in a two-step process. "First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' *i.e.*, whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract." Id. Furthermore, where an ambiguity arises in contracts that involve both standardized form and customized components, the customized components control. CAL. CIV. CODE § 1651; Fid. & Deposit Co. v. Charter Oak Fire Ins. Co., 66 Cal. App. 4th 1080, 1087 (2d Dist. 1998) ("Where a contract is partly written or printed under the special direction of the parties, and the remainder is copied from a form prepared without reference to the particular contract in question, the parts which are original control those which are not.").

### (d) Analysis

Terms of a contract should be harmonized if possible. CAL. CIV. CODE § 1652; see also In re Marriage of Williams, 29 Cal. App. 3d 368, 379 (4th Dist. 1972). However, here it is not possible so to do because sections 12.13.1 and 7.2.4.3 are irreconcilable and destroy each other's meaning. See S. Pac. Land Co. v. Westlake Farms, Inc., 188 Cal. App. 3d 807, 822 (5th Dist. 1987) (stating that courts shall harmonize apparently contradictory contract provisions "unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part"). Put simply, section 12.13.1 expressly precludes Plaintiff from recovering expected profits and overhead on unperformed work if terminated for convenience by Defendant at any time, whereas section 7.2.4.3 allows Plaintiff to recover expected profits and overhead if terminated for convenience by Defendant post-GMP. This direct conflict cannot be reconciled.

Neither party argues that extrinsic evidence is necessary to resolve the ambiguity caused by these contradictory clauses. Instead, Plaintiff and Defendant vie for the application of different contract interpretation rules. Section 1651 of the California Civil Code applies and resolves the Contract's ambiguity. Section 1651 states, in pertinent part,

> [W]here part of [a contract] is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and the particular contact in question...the parts which are purely original control those which are copies from a form. And if the two are absolutely repugnant, the latter must be so far disregarded.

Here, the language in section 12.13.1 was specially drafted. (See Doc. # 21-1, pg. 23; Doc. # 26, pg. 8–9). Conversely, the language in section 7.2.4.3 is form language taken verbatim from AIA form A195. Therefore, under section 1651, the language in section 12.13.1 precluding Plaintiff from recovering profit and overhead on unperformed work controls, and section 7.2.4.3 is disregarded. See Integrated, Inc. v. Alec Fergusson Elec. Contractors, 250 Cal. App. 2d 287, 294–95 (4th Dist. 1967); Gollaher v. Midwood Constr. Co., 194 Cal. App. 2d 640, 648 (2d Dist.1961). Further in support of the determination that section 12.13.1 controls over section 7.2.4.3 is the fact that sections 7.1.5 and 7.2.4.1 contain specially drafted references to section 12.13.1. These references demonstrate that sections 7.1.5, 7.2.4.1, and 12.13.1 were crafted to fit together like pieces in a puzzle whereas the form language in section 7.2.4.3 stands alone and disrupts the relation of the specially drafted and incorporated provisions.

Plaintiff presses the Court to harmonize the conflicting provisions by limiting the sentence in section 12.13.1, which precludes the recovery of profit and overhead on unperformed work, to Defendant's *pre*-GMP termination of Plaintiff for convenience. By limiting this portion of section 12.13.1 to pre-GMP termination, Plaintiff would still recover expected profits if terminated *post*-GMP under section 7.2.4.3. Plaintiff's attempt to harmonize falls flat. The parties limited parts of section 12.13.1 to specifically address

pre- or post-GMP remedies. However, the final sentence of section 12.13.1 prohibiting Plaintiff from recovering anticipated profits or revenues is not limited in this way. Clearly, as evidenced by their extensive negotiations, the parties understood the importance and task of limiting provisions to apply exclusively pre- or post-GMP, but declined to do so in the final sentence of section 12.13.1, indicating that the prohibition on recovery of profit for unperformed work applies regardless of the timing of termination. See Blackhawk Corp. v. Gotham Ins. Co., 54 Cal. App. 4th 1090, 1096–97 (1st Dist. 1997).

The Court disagrees with Plaintiff's argument that section 12.13.1 is a general clause and should be disregarded in favor of section 7.2.4.3, a specific clause. See CAL. CIV. CODE § 1859; Prouty v. Gores Tech. Grp., 121 Cal. App. 4th 1225, 1235 (3d Dist. 2004) (stating that "when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision"). The provisions at issue are better classified as a form and specially drafted provision than a specific and general provision. "The referent of 'general' and 'specific' is subject matter." People v. Weatherill, 215 Cal. App. 3d 1569, 1578 (2d Dist. 1989). While it is true that section 12.13.1 addresses termination pre- and post-GMP whereas section 7.2.4.3 addresses only termination post-GMP, the distinction does not delineate the former provision as general and the latter as specific. Both clauses address the same subject matter—remedies arising from Defendant's termination of the Contract. The fact that section 12.13.1 applies to additional parties is immaterial as the number of parties affected by a provision has no bearing on whether that provision is general or specific. See id. at 1578, n. 8; Arbuckle-College City Fire Prot. Dist. v. County of Colusa, 105 Cal. App. 4th 1155, 1166 (3d Dist. 2003).

The Court further declines to construe section 7.2.4.3 or 12.13.1 against either party as each urges the Court to do. Because the confusion caused by the conflicting provisions can be resolved under section 1651 of California Civil Code, the Court need not resort to section 1654's rule on interpreting ambiguous terms. CAL. CIV. CODE § 1654 ("In cases of uncertainty *not removed by the preceding rules*, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.").

Finally, the Court rejects Plaintiff's argument that section 7.2.4.3 is controlling as established by section 1.3.9 of form A295, which prioritizes parts of the Contract should conflicts arise. Section 1.3.9 prioritizes form A195, which includes section 7.2.4.3, over form A295, which includes section 12.13.1. However, section 1.3.9 states, "Notwithstanding the foregoing, where the terms and conditions of these General Conditions [form A295] are expressly referred to or incorporated in any of the GMP Documents (or in any of the Services Contracts) of higher priority, such incorporated terms and conditions of these General Conditions shall have the same priority as the document into which they are incorporated." Here, sections 7.1.5 and 7.2.4.1 of form A195 reference and incorporate section 12.13.1. See Shaw v. Regents of University of California, 58 Cal. App. 4th 44, 54 (3d Dist. 1997) (internal citations omitted) (stating that "contract need not recite that it 'incorporates' another document, so long as it 'guide[s] the reader to the incorporated document'"). Thus, under section 1.3.9, section 12.13.1 is equally controlling as the provisions in form A195.

In conclusion, sections 12.13.1 and 7.2.4.3 are wholly incompatible. Therefore, section 12.13.1, which was specially drafted by the parties, is given effect, and section 7.2.4.3, form language from AIA's A195 form, is disregarded under California Civil Code § 1651. Because section 12.13.1 explicitly precludes Plaintiff from collecting anticipated profits for work not performed or compensation for economic loss resulting from termination, Defendant has demonstrated that Plaintiff was not entitled to receive payment for expected profit or overhead on unperformed work under the Contract and that Defendant did not breach the Contract by failing to pay Plaintiff those amounts. Furthermore, because the portion of section 12.13.1 precluding Plaintiff from recovering profit and overhead on unperformed work applies to termination at any stage in the Project, the Court need not determine whether the GMP was established. Regardless of whether the GMP was established prior to termination, Plaintiff was not entitled to profit or overhead on unperformed work. By showing there was no breach, Defendant has successfully negated an essential element of Plaintiff's breach of contract claim. Plaintiff failed to demonstrate

the existence of a triable issue of material fact in response. Therefore, Defendant is entitled to judgment as a matter of law in its favor as to this claim.

### B. Quantum Meruit Claim

Next, Defendant seeks summary judgment on Plaintiff's second claim for quantum meruit. Defendant argues that Plaintiff's quantum meruit claim fails because Plaintiff is seeking equitable relief for services subject to and governed by a written contract. (Doc. # 21-1, pg. 21 (citing Hedging Concepts, Inc. v. First Alliance Mortg. Co., 41 Cal. App. 4th 1410, 1419–20 (2d Dist. 1996)). In its response brief, Plaintiff does not address its quantum meruit claim.

"Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." In re De Laurentiis Entm't. Grp. Inc., 963 F.2d 1269, 1272 (9th Cir. 1992) (citation omitted). The elements of a claim based on quantum meruit are: "(1) that the plaintiff performed certain services for the defendant, (2) their reasonable value, (3) that they were rendered at defendant's request, and (4) that they are unpaid." Cedars Sinai Med. Ctr. v. Mid–West Nat'l Life Ins. Co., 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000) (citing Haggerty v. Warner, 115 Cal. App. 2d 468, 475 (2d Dist. 1953)). "When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." Hedging Concepts, Inc., 41 Cal. App. 4th at 1420; see also Wal–Noon Corp. v. Hill, 45 Cal. App. 3d 605, 613 (3d Dist. 1975) ("There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time."). However, California law provides an exception to this rule. "[R]estitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." McBride v. Boughton, 123 Cal. App. 4th 379, 388 (1st Dist. 2004).

Plaintiff's quantum meruit claim fails because the parties' Contract sets forth terms governing the subject matter for which Plaintiff now seeks equitable recovery. See Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1404–05 (9th Cir. 1996). Plaintiff admits that it and Defendant formed and entered into the Contract, which sets forth the terms governing the construction of the Project, including terms governing payment for services that Plaintiff seeks under the guise of its quantum meruit claim. (See Doc. # 1-9, pg. 4; Doc. # 26, pg. 7–12). Plaintiff does not argue that the Contract is fraudulent or ineffective. To the extent Plaintiff seeks to recover lost overhead and reasonable profits for unperformed work, Plaintiff's claim fails because Plaintiff must have performed the services to seek compensation in a quantum meruit claim. See Cedars Sinai Med. Ctr., 118 F. Supp. 2d at 1013.

Lastly, as stated, the Court notes that Plaintiff does not address its quantum meruit claim at all in its response in opposition to Defendant's motion for summary judgment. As such, Plaintiff fails to demonstrate a genuine issue of material fact. Therefore, Defendant is entitled to judgment as a matter of law in its favor as to this claim.

C. Declaratory Relief Claim

Defendant seeks summary judgment on Plaintiff's final claim for declaratory relief. In its FAC, Plaintiff sought a declaration regarding the parties' rights and duties under the Contract. (Doc. # 1-9, pg. 7). Defendant argues that this claim fails because "with the contract claim resolved, there are no further disputes to declare," and declaratory relief does not redress past wrongs. (Doc. # 21-1, pg. 21, n. 5). In its response brief, Plaintiff does not address its claim for declaratory relief.

Declaratory relief is not a separate cause of action; rather, it is simply a remedy. Batt v. City and County of San Francisco, 155 Cal. App. 4th 65, 82 (1st Dist. 2007), *disapproved of on other grounds by* McWilliams v. City of Long Beach, 300 P.3d 886 (2013). When underlying substantive claims fail, dismissal of a declaratory relief request action is appropriate. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1044 (9th Cir. 2010) ("Because we affirm the district court's dismissal of the…claims, we affirm

the dismissal of the claims for declaratory relief on those claims."); see also Hoeck v. City of Portland, 57 F.3d 781, 787 (9th Cir.1995); New.Net, Inc. v. Lavasoft, 356 F.Supp.2d 1090, 1115 (C.D. Cal. 2004). Since the Court has already determined that Defendants is entitled to summary judgment on all of Plaintiff's substantive claims, Defendant is entitled to summary judgment in its favor on Plaintiff's claim for declaratory relief.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Defendant's motion for summary judgment (Doc. # 21) is GRANTED. The Clerk of Court shall enter judgment in favor of Defendant and against Plaintiff.

Dated: August 29, 2016

_____
HON. JOHN A. HOUSTON
United States District Judge